UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L.C., a minor child, by and through her father MASSIMILIANO CALI, <br><br> MASSIMILIANO CALI, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *in his official capacity as President of the United States, et al.* <br><br> *Defendants*. | Civil Action No. 1:26-cv-00688-RJL |

### BRIEF OF AMICUS CURIAE UNITED NATIONS WATCH IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Dated: March 12, 2026

Andrew J. Astuno (DC Bar No. 1028414)
Robert W. Seiden (NY Bar No. 226717)
*pro hac vice pending*
Dov B. Gold (NY Bar No. 5504352)
*pro hac vice pending*
Seiden Law LLP
1701 Pennsylvania Avenue NW
Suite 200
Washington, DC 20006
Tel: (202) 355-9263
astuno@seidenlaw.com
rseiden@seidenlaw.com
dgold@seidenlaw.com

*Attorneys for Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

No amicus curiae have a parent corporation or issues stock.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT .................................................................................. ii
TABLE OF CONTENTS .................................................................................................................. iii
TABLE OF AUTHORITIES ............................................................................................................ iv
INTRODUCTION ............................................................................................................................. 1
INTERESTS OF AMICUS CURIAE ................................................................................................ 2
ARGUMENT .................................................................................................................................... 2
    I.    Albanese's Conduct Constitutes Sanctionable Activity Under Executive Order 14203, Not Protected Speech ........................................................................................................................ 4
    II.    The Factual Record Demonstrates Albanese's Conduct Is Not the Independent Scholarship Plaintiffs Portray ................................................................................................... 5
CONCLUSION ................................................................................................................................. 6
CERTIFICATE OF COMPLIANCE ................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)……………………………………1,3,4

**Executive Orders**

Exec. Order No. 14203……………………………………………………………………1,3,4,6

Pursuant to Local Civil Rule 7(o), by and through undersigned counsel, the amicus curiae ("Amicus") named herein submit this brief in opposition to the Motion for Preliminary Injunction of Plaintiffs on behalf of United Nations Watch.[1]

**INTRODUCTION**

Plaintiffs ask this Court to enjoin the enforcement of Executive Order 14203 as applied to Francesca Albanese ("Albanese"). They present her as an independent scholar sanctioned for her academic opinions. The factual record tells a different story.

As documented in the accompanying Declaration of Hillel Neuer ("Neuer Decl."), Executive Director of United Nations Watch, and the exhibits thereto, Albanese has used her United Nations mandate not merely to express opinions but to actively support, promote, and coordinate with the International Criminal Court's ("ICC") investigation and prosecution of Israeli and American leaders—the precise conduct targeted by Section 1(a)(ii)(A) of Executive Order 14203.[2] Her public statements, official UN reports, and social media advocacy are not disconnected from the ICC proceedings; they are instruments of those proceedings.

This brief presents a documented record of Albanese's conduct and explains why that conduct falls within the category of sanctionable material support that the Supreme Court distinguished from protected independent advocacy in *Holder v. Humanitarian Law Project*, 561

---

[1] Pursuant to Local Civil Rule 7(o)(5), counsel for Amicus certify that no counsel for a party authored this brief in whole or in part, and no person other than Amicus, their members, or their counsel made a monetary contribution to the brief's preparation or submission.
[2] Exec. Order No.14203, 90 Fed. Reg. 9369 § 1(a)(ii)(A) (Feb. 6, 2025) (authorizing sanctions against foreign persons determined "to have directly engaged in any effort by the ICC to investigate, arrest, detain, or prosecute a protected person without consent of that person's country of nationality"); *see also id.* §8(d) (defining "protected person" as "any United States person" or "any foreign person that is a citizen or lawful resident of an ally of the United States that has not consented to ICC jurisdiction over that person or is not a state party to the Rome Statute".

1

U.S. 1 (2010).

## INTERESTS OF AMICUS CURIAE

United Nations Watch is a Geneva-based, independent, non-governmental organization dedicated to monitoring the performance of the United Nations and promoting accountability, transparency, and adherence to the U.N. Charter and universal human-rights standards. Founded in 1993, United Nations Watch holds special consultative status with the United Nations Economic and Social Council (ECOSOC) and regularly engages with U.N. bodies, member states, and civil society on issues relating to international law, human rights, and institutional integrity.

Since her appointment in 2022, United Nations Watch closely monitored the conduct of Albanese in her purported capacity as the United Nations Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967. United Nations Watch has documented her public statements, official UN reports, social media posts, media appearances, and advocacy activities through contemporaneous records maintained in the ordinary course of its monitoring work. Drawing on publicly available materials and its own research, United Nations Watch has documented Albanese's statements and conduct in detail, including instances in which she has urged concrete institutional action against identified actors and sought to mobilize international legal and political processes toward specific enforcement outcomes.

United Nations Watch is uniquely positioned to present this Court with a factual record of Albanese's activities that bears directly on whether the challenged designation rests on sanctionable conduct or mere protected expression.

## ARGUMENT

The Supreme Court has drawn a clear distinction between independent advocacy, which

2

remains constitutionally protected, and coordinated support provided to an external actor, which the government may regulate even when it takes the form of speech. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 25–26 (2010). Although *Holder* addressed material support to designated foreign terrorist organizations, its reasoning is instructive here: the Court emphasized that Congress may prohibit speech undertaken "to, under the direction of, or in coordination with" another entity where the regulation targets concerted activity rather than independent expression. *Id.* at 26.

The question in this case is which side of that line Albanese falls on. The factual record answers that question decisively. Albanese has not merely commented on the ICC or expressed opinions about international law. As the attached Neuer Decl. and Exhibit A demonstrate, Albanese has actively and publicly called on the ICC to investigate and prosecute Israeli leaders and tagged the ICC and its Chief Prosecutor in social media posts urging specific investigative and prosecutorial actions. *See* Neuer Decl. ¶ 9; Exhibit A at 1. She has leveraged her official UN mandate to build the evidentiary and legal case undergirding ICC proceedings against "protected persons" under Executive Order 14203. *See* Neuer Decl. ¶¶ 9, 13; Exhibit A at 1.

This is not independent advocacy "about" the ICC. It is concerted activity—in the form of a "service" as described in *Holder*—directed toward advancing specific ICC prosecutorial outcomes. 561 U.S. at 23-25. The Court in *Holder* explained that "[s]ervice" refers to "concerted activity, not independent advocacy," and that the word "to" in the statute "indicates a connection between the service and the foreign group." *Id.* Albanese's documented pattern of tagging the ICC in social media posts calling for prosecution, issuing official UN reports that supply the factual predicates for ICC proceedings, and publicly campaigning for the execution of ICC arrest warrants establishes precisely the kind of coordination and connection that *Holder* held to be sanctionable.

3

*Id.*

The *Holder* Court further recognized that material support "meant to 'promot[e] peaceable, lawful conduct'" can further the harmful activities of a designated entity because such support "frees up other resources within the organization" and "importantly helps lend legitimacy." 561 U.S. at 30. Albanese's statements—endorsing the ICC's jurisdiction over Israeli leaders, *see* Neuer Decl. ¶ 9; Exhibit A at 1, characterizing Israeli military operations as "genocide," *see* Neuer Decl. ¶ 6; Exhibit A at 4, accusing Israel of "apartheid" from its founding, *see* Exhibit A at 1., calling to "unseat" Israel from the United Nations, *see* Exhibit A at 6, and publicly expressing solidarity with organizations designated by the U.S. Treasury as affiliates of the Popular Front for the Liberation of Palestine, *see* Neuer Decl. ¶ 12; Exhibit A at 3—lend the ICC's proceedings a veneer of scholarly authority and UN endorsement. This is the legitimacy function that *Holder* identified as a mechanism by which material support furthers the objectives of a designated entity. *See* 561 U.S. at 23-25.

I. **Albanese's Conduct Constitutes Sanctionable Activity Under Executive Order 14203, Not Protected Speech**

The record also demonstrates a sustained pattern of conduct continuing into 2026—well after her designation under Executive Order 14203. In January and February 2026, Albanese continued to publicly call on the ICC to issue further indictments, tagged the ICC and ICJ in social media posts demanding accountability, and implicitly accused the United States of apartheid in the context of ICC proceedings. *See* Neuer Decl. ¶ 11; Exhibit A ("Support for ICC Proceedings against U.S. and Israel") at 1. This continuing conduct negates any characterization of her activities as isolated protected expression and confirms the operational nature of her engagement with ICC proceedings.

4

Plaintiffs describe Albanese's advocacy as mere "recommendations." That framing is inconsistent with the record. Albanese's advocacy is instructional and operational. Her statements and writings consistently urge specific prosecutorial and case-related outcomes rather than engage in abstract policy debate. Indeed, that conduct extends beyond public commentary. For example, Albanese sent formal written communications to U.S.-based nonprofit organizations accusing them of involvement in war crimes, crimes against humanity, and related offenses, and warning that they and their executives faced potential criminal liability. *See* Letter from Francesca Albanese to CFOIC Heartland (Apr. 24, 2025) (attached as Ex. A to Complaint ¶¶ 32-34 in *Christian Friends of Israeli Communities v. Albanese*, No. 1:25-cv-02805-PAB (D. Colo. filed Sept. 8, 2025)), attached herein as Exhibit C to the Neuer Decl. Such actions reflect advocacy aimed at specific legal outcomes rather than generalized debate.

## II.     The Factual Record Demonstrates Albanese's Conduct Is Not the Independent Scholarship Plaintiffs Portray

Plaintiffs present Albanese as a dispassionate academic whose designation chills scholarly discourse. The factual record paints an entirely different picture. Albanese has spread conspiracy theories blaming the CIA and Mossad for the 2015 Charlie Hebdo massacre. *See* Neuer Decl. ¶ 7; Exhibit A at 3. She suggested Israel was connected to the Los Angeles wildfires. Exhibit A at 2. She claimed that Hitler's ideology remains "in the DNA of the Western system." *See* Neuer Decl. ¶ 6; Exhibit A at 3. She has accused Israel of using dogs to "torture" and "rape" Palestinians, citing no sources. *See* Neuer Decl. ¶ 8; Exhibit A at 3. She promoted the debunked claim that a misfired Palestinian Islamic Jihad rocket that struck the al-Ahli Hospital parking lot was an Israeli airstrike. *Id.* She endorsed the claim that "Zionists are staging antisemitic incidents." *See* Neuer Decl. ¶ 6; Exhibit A at 3.

5

Albanese has also systematically minimized and denied the October 7, 2023 Hamas atrocities. *See* Neuer Decl. ¶ 6; Exhibit A at 4. On the day of the massacre itself, as it was still unfolding, she posted that the violence "must be put in context." *Id.* She subsequently defended Hamas's killing of soldiers as "not an international crime," questioned whether hostages executed by Hamas were in fact "executed or killed," and repeatedly refused to characterize the massacre as genocide while simultaneously applying that label to Israel's military response. Exhibit A at 2. Even after multiple UN entities confirmed Hamas's sexual violence against Israeli women, Albanese continued to question whether such crimes had occurred. *Id.* at 4.

This is not the profile of an independent scholar engaged in protected academic discourse. It is the profile of an advocate who has systematically deployed her UN mandate to advance a particular political and legal agenda—one that directly serves the ICC's proceedings against protected persons. Designated terrorist organizations have publicly relied on and amplified Albanese's work to legitimize their own activities. *See* Neuer Decl. ¶ 12; Exhibit A ("Terror Groups Use and Rely on Albanese's Reports and Statements") at 7. The designation under Executive Order 14203 targets this pattern of coordinated conduct, not the expression of controversial or dissenting opinions.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Plaintiffs' motion for a preliminary injunction. The factual record demonstrates that Francesca Albanese's designation under Executive Order 14203 rests on documented conduct—coordination with and material support for the ICC's efforts to investigate and prosecute protected persons—not on the expression of unpopular or repugnant opinions.

Dated: March 12, 2026
Washington, D.C.

                                            Respectfully Submitted:

                                            */s/ Andrew J. Astuno*
                                            Andrew J. Astuno (DC Bar No. 1028414)
                                            Robert W. Seiden (NY Bar No. 226717)
                                            *pro hac vice pending*
                                            Dov B. Gold (NY Bar No. 5504352)
                                            *pro hac vice pending*
                                            Seiden Law LLP
                                            1701 Pennsylvania Avenue NW
                                            Suite 200
                                            Washington, DC 20006
                                            Tel:  (202) 355-9263
                                            astuno@seidenlaw.com
                                            rseiden@seidenlaw.com
                                            dgold@seidenlaw.com

                                            *Attorneys for Amicus Curiae*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LCvR 7(o), I hereby certify that this brief conforms to the requirements of LCvR 5.4.

                                                                           */s/ Andrew J. Astuno*
                                                                            Andrew J. Astuno