IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-2805

CHRISTIAN FRIENDS OF ISRAELI
COMMUNITIES, CHRISTIANS FOR
ISRAEL USA,

*Plaintiffs*,

v.

FRANCESCA PAOLA ALBANESE,

*Defendant*.

**COMPLAINT**
**Jury Trial Requested**

## COMPLAINT

Plaintiffs, Christian Friends of Israeli Communities ("CFOIC Heartland") and Christians for Israel USA ("C4I USA") (collectively, "Plaintiffs"), by their undersigned counsel, for their complaint against Defendant Francesca Paola Albanese state as follows:

### INTRODUCTION

1.    This action arises from public statements made by Defendant Francesca P. Albanese in which she falsely, maliciously, and knowingly accused Plaintiffs, which are religious, charitable organizations, of engaging in serious crimes and morally reprehensible conduct. The Plaintiffs' "sin"? Their peaceful, well-intentioned, and lawful support of the Jewish people and the State of Israel.

2.    Defendant's defamatory, derogatory, and hateful statements were made with knowledge, malice, and reckless disregard for their falsity. Defendant's statements, detailed herein,

were made outside the scope of any legitimate authority and targeted private, United States-based, nonprofit organizations.

3.      Defendant has sought to insulate herself from accountability for her spiteful campaign against supporters of Israel by inaccurately claiming that she enjoys immunity for her malicious acts through her position as a Special Rapporteur for the United Nations ("UN"). Not only would Defendant not be immune for an antisemitic crusade falling far outside the scope of her responsibilities and authority as a Special Rapporteur, but at the time of Defendant's statements that are the subject of this Complaint, her mandate had officially ended. Consequently, Defendant is not entitled to any immunity at all.

4.      Indeed, Defendant's attempt to clothe herself with the official authority of the UN does not shield her from liability but rather magnifies the impact of her defamatory, false allegations about Plaintiffs, making her statements that much more devastating.

5.      Remarkably, Defendant made these statements having been forewarned that publication would be defamatory. She went ahead anyway, demonstrating that Defendant made the statements that give rise to this Action knowingly and maliciously, and with intent to disparage and denigrate Plaintiffs.

6.      Defendant's conduct has caused reputational harm to Plaintiffs in the United States and abroad, and places Plaintiffs' organizations, executives, donors, members, and/or volunteers at risk for financial and physical harm.

7.      Plaintiffs seek compensatory and punitive damages, along with injunctive relief, for the harm caused by Defendant's false, defamatory, hateful, and malicious statements.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because there is diversity of citizenship and the amount in controversy exceeds $75,000.

9.      Plaintiff CFOIC Heartland is a Colorado nonprofit corporation, with its principal place of business in Peyton, El Paso County. Plaintiff C4I USA is a Virginia nonprofit corporation, with its principal place of business in Strasburg, Shenandoah County. Upon information and belief, Defendant is a citizen of the Italian Republic, resides permanently in the Republic of Tunisia, and holds assets in the United States ("US").

10.     This Court has personal jurisdiction over Defendant Albanese. Defendant established sufficient minimum contacts for this Court to exercise specific personal jurisdiction, including by Defendant sending a letter to Plaintiff CFOIC Heartland whose principal place of business is located in this jurisdiction; and directing readers of her false claims to Plaintiffs' websites and to Plaintiffs' financial or tax documents, which prominently feature their addresses, including a Colorado address for Plaintiff CFOIC Heartland. Defendant made defamatory, derogatory, and threatening statements publicly to third parties about and directed at Plaintiffs in this jurisdiction.

11.     Defendant cannot claim immunity from being sued in this Court for her defamatory and derogatory statements about Plaintiffs. Defendant previously served as the UN Special Rapporteur "on the situation of human rights in the Palestinian territories occupied since 1967." Special Rapporteurs are only immune for "words spoken or written and acts done by them in the course of the performance of their mission[.]"[1] However, Defendant's malevolent conduct and statements giving rise to this Action fall outside of any reasonable construction of the scope of a Special Rapporteur mandate. Moreover, Defendant's appointment as Special Rapporteur legally expired on April 30, 2025, prior to her publication of the relevant statements.

---

[1] OFF. OF THE U.N. HIGH COMMISS'R FOR HUM. RTS., *Manual of Operations of the Special Procedures of the United Nations Human Rights Council*, Art. 12 (2008), https://www.ohchr.org/sites/default/files/Documents/HRBodies/SP/Manual_Operations2008.pdf.

12.     Furthermore, on or about July 9, 2025, Defendant was placed on the "Specially Designated Nationals and Blocked Persons" list ("SDN") by the United States Department of the Treasury ("US DOT") Office of Foreign Assets Control ("OFAC").[2] The imposition of sanctions by the United States on Defendant confirms that she is not immune under US law and can be brought into this Court for her actions that harmed Plaintiffs.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

<u>**PARTIES**</u>

14.     Plaintiff CFOIC Heartland is a registered 26 U.S.C. § 501(c)(3) nonprofit organization, organized under the laws of Colorado, with its principal place of business at 3090 Angus Ct, Peyton, CO 80831-4727. CFOIC Heartland is dedicated to connecting Christians to Jewish communities in Biblical Israel.

15.     Plaintiff C4I USA is a registered 26 U.S.C. § 501(c)(3) nonprofit organization organized under the laws of Virginia, with its principal place of business at 6435 Strasburg Rd, Strasburg, VA, 22657-5151. The mission of C4I USA is to empower Christians to support the state and people of Israel. C4I USA is an affiliate of C4I International, designated by the Dutch Tax Administration as a Public Benefit Organization.

16.     Upon information and belief, Defendant Francesca Paola Albanese is a citizen of the Italian Republic, resides permanently in Tunis, Tunisia, and holds assets in the United States.

---

[2] *International Criminal Court-related Designation; Issuance of International Criminal Court-related General License*, U.S. DEP'T OF TREASURY, OFF. OF FOREIGN ASSETS CONTROL, https://ofac.treasury.gov/recent-actions/20250709_33 (last visited Aug. 28, 2025).

## FACTS

**A.    Defendant's Demonstrated History of Longstanding Virulent Anti-Jewish Racism**

17.    Defendant has a years-long track record of expressing anti-Jewish racism, hatred, and discrimination, otherwise known as antisemitism, as defined by the International Holocaust Remembrance Alliance, whose definition of antisemitism[3] is the most widely accepted worldwide, including by the United States Department of State.[4]

18.    Defendant's prolific record of expressing anti-Jewish racism includes comments dating back to 2014, when Defendant wrote America is "subjugated by the Jewish lobby," Europe "by the sense of guilt about the Holocaust," and that the BBC, the British broadcaster, has "the Israeli lobby [] clearly inside your veins and system," making it complicit in an "orwellian [sic] nightmare caused . . . by Israel's greed."[5]

19.    Defendant regularly engages in Holocaust denial and distortion, having compared Gaza to the Warsaw Ghetto and Hamas, the US-designated terror organization ruling Gaza since 2007, to Holocaust-era Jewish partisans.[6]

**B.    Defendant's Appointment as a United Nations Special Rapporteur Provided Her with a Global Stage to Promote and Pursue an Agenda of Jew-Hatred**

20.    On or about May 1, 2022, Defendant was appointed the UN Special Rapporteur "on the situation of human rights in the Palestinian territories occupied since 1967."

---

[3]    INT'L HOLOCAUST REMEMBRANCE ALL., *Working definition of antisemitism*, https://holocaustremembrance.com/resources/working-definition-antisemitism (last visited Aug. 28, 2025).

[4]    U.S. DEP'T OF STATE, *Defining Antisemitism*, available at https://www.state.gov/defining-antisemitism (last visited Sept. 5, 2025).

[5]    Luke Tress, *UN Palestinian rights official's social media history reveals antisemitic comments*, TIMES OF ISRAEL (Dec. 14, 2022, 3:00 PM), https://www.timesofisrael.com/un-palestinian-rights-officials-social-media-history-reveals-antisemitic-comments; *Francesca Albanese in Her Own Words*, ANTI-DEFAMATION LEAGUE (July 2, 2025), https://www.adl.org/resources/article/francesca-albanese-her-own-words.

[6]    *AJC Letter to UN Members on Francesca Albanese Serving as Special Rapporteur on Human Rights in Palestinian Territories*, AM. JEWISH COMM. (Mar. 31, 2025), https://www.ajc.org/news/ajc-letter-to-un-members-on-francesca-albanese-serving-as-special-rapporteur-on-human-rights ("AJC Letter").

21.     Since her appointment—which has since officially expired—Defendant has wielded her platform and power to obsessively express her Jew-hatred on a global stage, often based on demonstrably false factual misrepresentations. Indeed, prior to taking the mandate, Defendant admitted that her biased views "could compromise my objectivity."[7]

22.     Defendant misrepresented her credentials in applying for the UN position and has continued to do so in her public statements. She claimed to be a "human rights lawyer" and "international law lawyer," despite never having been barred to practice law in any jurisdiction. Without admission to the bar, Defendant's so-called "expertise," like so many of her claims, is a fiction.

23.     During her term as Special Rapporteur, Defendant repeatedly justified Palestinian violence against the Jewish state,[8] attended at least one conference hosted by US-designated Palestinians terror groups and directed those terrorists to "resist" the Jewish state,[9] mendaciously accused Israel of evil acts without evidence,[10] portrayed the very existence of a Jewish state—in other words, Jewish self-determination—as a racist endeavor, and applied a double standard to Israel not expected of any other country.[11]

---

[7] Wolf in Sheep's Clothing: Why Democracies Should Sanction UN Rapporteur Francesca Albanese for Propagating Antisemitism and Supporting Terrorism, UN Watch, p. 54 (Oct. 23, 2024), https://unwatch.org/wp-content/uploads/2024/10/Wolf-in-Sheeps-Clothing-Report-on-Francesca-Albanese.pdf.

[8] Id. at pp. 5-6; UN envoy to Hamas: "You have the right to fight Israel", JNS (Dec. 1, 2022), https://www.jns.org/un-envoy-to-hamas-you-have-the-right-to-fight-israel; Tress, supra note 5.

[9] AJC Letter, supra note 6; UN envoy to Hamas, supra note 8.

[10] Tress, supra note 5; Francesca Albanese (@FranceskAlbs), X (Mar. 6, 2023, 4:13 PM), https://x.com/FranceskAlbs/status/1632851994841948162.

[11] Francesca Albanese (@FranceskAlbs), X (Aug. 6, 2022, 4:42 AM), https://x.com/FranceskAlbs/status/1555836586985676800.

24.     In pursuing her antisemitic agenda through the corrupt use of her position, Defendant has repeatedly violated the Code of Conduct for Special Procedures Mandate-holders of the Human Rights Council ("Code of Conduct").[12]

25.     As a result of her relentless antisemitism, as early as January 2023, United States officials have been calling for Defendant's removal.[13]

### C.     Defendant's Jew-Hatred Escalates After the October 7 Massacre, Leading to Increased Calls for Her Removal

26.     On October 7, 2023, Hamas and its allies attacked Israel, slaughtering approximately 1,200 people and abducting 251 hostages into Gaza. Hamas and its allies committed unimaginable atrocities, extensive war crimes, and crimes against humanity, including through the use of sexual violence.[14]

27.     Since the October 7 Massacre, Defendant has used her platform to subject Jewish people, the Jewish state, and their supporters to a near-constant antisemitic diatribe, including on her personal social media pages, in interviews with news media around the world, and during in-person speeches.[15]

---

[12] UN HUM. RTS. COUNCIL, CODE OF CONDUCT FOR SPECIAL PROCEDURES MANDATE-HOLDERS OF THE HUMAN RIGHTS COUNCIL    (June    18,    2007), https://www.ohchr.org/sites/default/files/Documents/Issues/Executions/CodeOfConduct.pdf.

[13] *Members of Congress urge UN to fire official over antisemitic comments*, JNS (Jan. 25, 2023), https://www.jns.org/members-of-congress-urge-un-to-fire-official-over-antisemitic-comments.

[14] Emanuel Fabian, *Gaza terrorists launch surprise attack on Israel with Rocket barrages and infiltrations*, TIMES OF ISRAEL (Oct. 7, 2023, 3:17 PM), https://www.timesofisrael.com/incoming-rocket-sirens-sound-across-southern-central-israel/; Emanuel Fabian & TOI Staff, *IDF says 12,000 Hamas fighters killed in Gaza war, double the terror group's claim*, TIMES OF ISRAEL (FEB, 20, 2024), https://www.timesofisrael.com/idf-says-12000-hamas-fighters-killed-in-gaza-war-double-the-terror-groups-claim; Ruth Halperin-Kaddari et al., *A Quest for Justice: October 7 and Beyond* (2025), https://thedinahproject.org/wp-content/uploads/2025/07/The-Dinah-Project-full-report-A4-pages_web.pdf.

[15] *See generally* WOLF IN SHEEP'S CLOTHING, *supra* note 7; *Francesca Albanese: A Comprehensive Review of Misconduct as a UN Special Rapporteur*, ISRAEL NAT'L DIGITAL AGENCY, available at https://govextra.gov.il/mda/francescaalbanese/un-misconduct-review (last viewed Aug. 28, 2025).

28.     Defendant has denied the atrocities of the October 7 Massacre,[16] justified violence against Jews as legitimate resistance,[17] compared the Jewish state to the Nazis for defending itself against terror,[18] and described Hamas as an anodyne political entity.[19] Defendant even went on a speaking tour in November 2023 across Australia and New Zealand funded by pro-Hamas organizations.[20]

29.     Due to her egregious behavior, Defendant has been condemned as antisemitic by the United States, as well as other countries.[21]

30.     Defendant's contradictory positions—for instance, violence against Jews is legitimate but also denying the violence when it occurs—demonstrate that truth is immaterial to Defendant.

**D.     Seeking to Destroy Plaintiffs' Reputations and Economic Wellbeing, Defendant Maliciously and With Cavalier Disregard for Truth, Launched a Smear Campaign Against Them Due to their Support for Jews and Israel**

---

[16] *Francesca Albanese: A Comprehensive Review of Misconduct as a UN Special Rapporteur*, Israeli Ministry of Digital Affairs, https://govextra.gov.il/mda/francescaalbanese/un-misconduct-review/ (last visited Aug. 29, 2025); Francesca Albanese (@FranceskAlbs), X (Feb. 10, 2024, 11:15 AM), https://x.com/FranceskAlbs/status/1756351236909965591 (claiming the Massacre was not an antisemitic attack);

[17] Francesca Albanese (@FranceskAlbs), X (Oct. 7, 2023, 9:46 AM), https://x.com/FranceskAlbs/status/1710652725870874874; Wolf in Sheep's Clothing, *supra* note 7, pp 5-6.

[18] Defendant compared Israel to the Third Reich, Israel's prime minister to Adolf Hitler, Israel's actions of self-defense to the Nazi genocide, and Gaza to Nazi concentration camps. Hillel Neuer, (@HillelNeuer), X (July 25, 2024, 10:18 AM), https://x.com/HillelNeuer/status/1816478017973100714/photo/1; Francesca Albanese (@FranceskAlbs), X (Dec. 4, 2023, 7:07 AM), https://x.com/FranceskAlbs/status/1731646447777427668; Francesca Albanese (@FranceskAlbs), X (Aug. 10, 2024, 4:12 AM), https://x.com/FranceskAlbs/status/1822184214860534271; Wolf in Sheep's Clothing, *supra* note 7, pp 5, 35; Gilead Ini (@GileadIni), X (Mar. 21, 2023, 11:50 AM), https://x.com/GileadIni/status/1638206494020698113/photo/1.

[19] @UNWatch, X (Aug. 15, 025, 6:31 AM), https://x.com/UNWatch/status/1956302771445010478 (urging people to view Hamas not as antisemitic terrorists seeking the extermination of Jews, but as a "political force . . . [that] built schools, public facilities, hospitals," and to "understand, that when you think of Hamas, you should not necessarily think of cut-throats, people armed to the teeth or fighters. It's not like that."); *Rape Denier Francesca Albanese*, UN Watch (July 18, 2025), https://unwatch.org/rape-denier-francesca-albanese/; Gilead Ini, *Rapporteurs Without Principles: Francesca Albanese*, CAMERA (Sept. 9, 2024), https://www.camera.org/article/rapporteurs-without-principles-francesca-albanese; Mike Wagenheim, *Not an international crime to kill soldiers, UN's Francesca Albanese says of Oct. 7*, JNS (Dec. 22, 2023), https://www.jns.org/not-an-international-crime-to-kill-soldiers-uns-francesca-albanese-says-of-oct-7.

[20] UN Watch, *"Nothing to Hide": How the UN and Francesca Albanese Engaged in a Cover-up to Conceal Her Funding by Pro-Hamas Lobby Groups* (May 2025), https://unwatch.org/wp-content/uploads/2025/05/Report-on-UN-Cover-up-of-Francesca-Albaneses-pro-Hamas-funding.pdf.

[21] *Francesca Albanese in Her Own Words*, *supra* note 5.

31.    Just as Defendant intentionally misrepresented her credentials in applying for the UN mandate and purposefully misrepresents facts about Israel to serve her bias, Defendant has knowingly spread malicious lies about Plaintiffs to harm their reputations and financial wellbeing—all because of their support for Jews and the Jewish state.

32.    In or about April 2025, Defendant sent letters to private entities, including Plaintiffs, falsely accusing them of serious crimes due to their support of the Jewish state of Israel.

33.    Defendant sent letters, dated April 24, 2025, to both Plaintiffs falsely stating that their respective support of Israel has given rise to a "reasonable . . . belief" that Plaintiffs have contributed to, been involved in, and/or supported "gross human rights violations," war crimes, crimes against humanity, apartheid, crimes of aggression, willful killing, and willfully causing great suffering. Letter to Plaintiff CFOIC Heartland attached as **Exhibit A**; Letter to Plaintiff C4I USA Parent Organization attached as **Exhibit B**.

34.    Defendant's letters further stated that Plaintiffs were "now on notice of a serious risk of being implicated in international crimes," and that Plaintiffs—the organizations and their executives—were exposed to criminal liability.

35.    On or about May 19, 2025, Plaintiff C4I USA, through its parent organization, responded to Defendant's letter, refuting all Defendant's claims and requesting to know on what basis Defendant had lobbed such astonishing, false accusations. Letter to Defendant attached as **Exhibit C**. Defendant never responded to Plaintiff C4I USA's missive.

36.    In response to the letters Defendant sent Plaintiffs, and similar such letters sent to other entities, the United States Department of Justice ("DOJ"), Civil Rights Division warned Defendant to halt her malicious, defamatory campaign.

37.    In a letter dated May 19, 2025, Leo Terrell, head of the DOJ Task Force to Combat Antisemitism and Senior Counsel to the Assistant Attorney General for Civil Rights, cautioned Defendant, "Your suggestion that these organizations may be criminally liable for aiding and abetting genocide or war crimes is not only legally groundless. **Your actions are defamatory**, dangerous, and a flagrant abuse of your office."[22]

38.    Defendant did not heed the warning. Instead, on or about June 30, 2025, Defendant published online a document titled "From Economy of Occupation to Economy of Genocide" ("Report"), making public her false, derogatory, malicious allegations and improper threats against Plaintiffs.[23]

39.    The Report was published under the guise of a submission to the United Nations Human Rights Council ("UNHRC"), despite Defendant's mandate already having expired.[24] Defendant posted the Report on her X account, as well.[25]

40.    In the Report, Defendant purports to identify corporations and entities she accuses of being "enablers . . . long involved in sustaining the settler-colonial occupation"—her euphemism for the State of Israel.[26]

41.    Defendant accuses these entities of "continu[ing] to support, profit from and normalize an economy operating in genocidal mode."[27]

---

[22]    Leo    Terrell    (@LeoTerrellDOJ),    X    (May    20,    2025,    10:01    AM), https://x.com/LeoTerrellDOJ/status/1924827850898641385 (emphasis added).
[23]    Francesca Albanese, *From economy of occupation to economy of genocide*, (June 30, 2025), available at https://www.un.org/unispal/document/a-hrc-59-23-from-economy-of-occupation-to-economy-of-genocide-report-special-rapporteur-francesca-albanese-palestine-2025.
[24]    *See infra* Section E.
[25]    Francesca    Albanese    (@FranceskAlbs),    X    (July    1,    2025,    8:07    AM), https://x.com/FranceskAlbs/status/1940019396136907227.
[26]    Report, *supra* note 23, at para. 72.
[27]    *Id.*

42.    In a section dedicated to "[f]aith-based charities," Defendant named Plaintiffs on a short-list of alleged evildoers who are "key financial enablers of illegal projects" in Israel.[28]

43.    Defendant also accused Plaintiffs of committing tax fraud by violating regulations governing charitable organizations through their support of Israel.[29]

44.    Defendant specifically named Plaintiffs, writing: "The United States-based Christian Friends of Israeli Communities, Dutch Christians for Israel and global affiliates, sent over $12.25 million in 2023 to various projects that support colonies, including some that train extremist settlers."[30]

45.    In the footnotes of this section, Defendant linked to Plaintiffs' main websites,[31] and CFOIC Heartland's 2023 tax filing, which prominently includes Plaintiff CFOIC Heartland's Colorado address.[32]

46.    Defendant also linked to articles about Plaintiffs that purportedly expose their allegedly nefarious activities.[33] For example, Defendant linked to a webpage titled "Philanthropic Colonialism" that lists Plaintiff CFOIC Heartland and its affiliates among 501(c)(3) organizations conspiratorially accused of being part of a "vast, secret network of tax-deductible US organizations that subsidize illegal Israeli activity." Plaintiff CFOIC Heartland and its affiliates are listed on a drop-down menu categorizing by nonprofit organization the allegedly illegal activities in Israel being funded. Additionally, the page includes an interactive map purporting to expose the funders of these charities. This map includes 21 organizations located in Colorado.[34]

---

[28] *Id.* at 81.
[29] *Id.*
[30] *Id.*
[31] *Id.* at n. 286 (Plaintiff CFOIC Heartland, which features a Colorado address), n. 288 (Plaintiff C4I USA).
[32] *Id.* at n. 289.
[33] *Id.* at nn. 283-290.
[34] *Id.* at n. 283.

47.     Defendant also linked to multiple articles falsely accusing Plaintiffs and their executives of violating international law and the laws of the countries in which they operate.[35]

48.     In a section of the Report entitled "Recommendations," Defendant made a host of serious and direct threats against the entities she had named and those entities' executives, including Plaintiffs. Defendant maliciously encouraged the governments, courts, and "ordinary citizens" in the jurisdictions in which Plaintiffs are located to impose severe and fierce punishment for the nonexistent and falsified crimes and immoral acts of which she had accused Plaintiffs.

49.     *First*, Defendant "urge[d] Member States" of the UN, including the United States, where Plaintiffs are located, to (i) "suspend/prevent all trade agreements and investment relations, – and impose sanctions, including asset freezes, on entities and individuals [including Plaintiffs and their executives] involved in activities that may endanger the Palestinians" and (ii) "enforce accountability, ensuring that corporate entities face legal consequences for their involvement in serious violations of international law."[36]

50.     *Second*, Defendant warned the entities she named, including Plaintiffs, to "promptly cease all business activities and terminate relationships directly linked with, contributing to and causing human rights violations and international crimes against the Palestinian people," and asserted they must "pay reparations to the Palestinian people."[37]

51.     *Third*, Defendant "urge[d] the International Criminal and national judiciaries to investigate and prosecute" the entities she named and their executives, including Plaintiffs, "for their part in the commission of international crimes and laundering of the proceeds from those

---

[35] *Id.* at nn. 286, 290.
[36] *Id.* at para. 94(b), (c).
[37] *Id.* at 95(a), (b).

crimes," of which she falsely accused them.[38] This constitutes a direct appeal to the courts of the United States to prosecute Plaintiffs, including this Court.

52.      *Fourth*, Defendant recommended that Plaintiffs be included in a UNHRC boycott, divestment, and sanctions blacklist that names and shames entities that do business with or support Israel.[39] This blacklist available on the UNHRC-Office of the High Commissioner ("OHCHR") website is accessible for both viewing and submission to those in this jurisdiction.

53.      *Fifth*, Defendant called directly on "trade Unions, lawyers, civil society and ordinary citizens to press for boycotts, divestments, sanctions, justice for Palestine and accountability at international and domestic levels."[40] This call to boycott, divest from, and sanction Plaintiffs based on false charges intentionally sought to injure them.

54.      Defendant concluded her Report with the ominous promise that "[w]hat comes next, depends on all of us."[41]

55.      The Report made public the accusations and threats Defendant had issued in letters sent directly to the Plaintiffs.

### E.      Defendant Cannot Hide Behind Immunity for Her Malicious, Defamatory, and Derogatory Statements

56.      Although Defendant had long abused her platform as Special Rapporteur to spread antisemitic racism, she avoided facing personal liability for her offenses, in part, by claiming immunity.

57.      The Manual of Operations of the Special Procedures of the Human Rights Council ("Manual of Operations"), which provides the official guidance for the scope of Special

---

[38] *Id.* at 96.
[39] *Id.* at 97(b).
[40] *Id.* at 98.
[41] *Id.* at 99.

Rapporteurs mandates, only provides mandate-holders with immunity "[i]n respect of words spoken or written and acts done by them **in the course of the performance of their mission**[.]"[42]

58.    The Code of Conduct requires that Special Rapporteurs "act in an independent capacity," conduct "professional, impartial assessment of facts," and "[u]phold the highest standards of efficiency, competence and integrity, meaning . . . probity, impartiality, equity, honesty and good faith."[43] Special Rapporteurs must also act "free from any kind of extraneous influence."[44]

59.    Thus, there are two independent bases for finding Defendant cannot hide behind the shield of immunity for her false allegations against Plaintiffs. *First*, as described above in Sections B and C, Defendant's Jew-hatred has led her to violate the Code of Conduct repeatedly by taking action falling far outside the proper performance of her mandate. Defendant's antisemitic campaign against Plaintiffs is the latest such violation in her ignominious record. Indeed, Defendant published her defamatory, derogatory statements about Plaintiffs with no illusions about the consequences she would face for doing so, having been specifically warned by the DOJ that her antisemitic campaign against Plaintiffs and other entities could expose her to liability.[45]

60.    *Second*, Defendant published the Report after her mandate had legally come to an end, having disqualified herself for renewal by persistently violating the Code of Conduct through her relentless antisemitism. Ahead of the April 2025 renewal date of Defendant's Special Rapporteur mandate, numerous governmental and non-governmental organizations publicly condemned her reappointment or wrote formal letters to UNHRC President Jürg Lauber and UN

---

[42] Manual of Operations, *supra* note 1, Art. 12 (emphasis added).
[43] Code of Conduct, *supra* note 12, Art. 3.
[44] *Id.*
[45] *See supra* ¶¶ 31-38.

Secretary General António Guterres advising them of Defendant's non-compliance with the Code of Conduct and opposing her reappointment.

61.     Specifically, condemnations or letters opposing renewal of Defendant's mandate due to her clear violations of the Code of Conduct were issued by the US Mission to the UN,[46] seven members of the US House Foreign Affairs Committee,[47] ten members of the European Parliament,[48] the Netherlands, Hungary, Argentina, Israel, as well as current or former parliamentarians or officials in France, Germany, Italy, and the United Kingdom.[49] UN Watch, a non-governmental organization monitoring the UN, also submitted an extensive "dossier documenting [Defendant's] gross and systematic violations" of the Code of Conduct.[50]

62.     Pursuant to HRC Presidential Statement 8/PRST/2, adopted as Article 7 in the Manual of Operations,[51] the President of the UNHRC is obligated to "convey to the Council any information brought to his or her attention . . . concerning cases of persistent non-compliance by a mandate-holder [of the Code of Conduct] . . . especially prior to the renewal of mandate-holders in office."[52] The UNHRC is obligated to "consider such information and act upon it as appropriate," and it is only "[i]n the absence of the above-mentioned information, [that] the terms in office of the mandate-holders shall be extended[.]"[53]

---

[46] US Mission to the UN (@USUN), X (Apr. 2, 2025, 9L39 PM), https://x.com/USUN/status/1907608952415691079.
[47] Letter from House Foreign Affairs Committee members (Mar. 31, 2025), https://foreignaffairs.house.gov/sites/evo-subsites/foreignaffairs.house.gov/files/evo-media-document/march-31-us-congress-letter-to-unhrc-president.pdf.
[48] Letter from members of European Parliament, including from France, Germany, Sweden, Denmark, Czechia, Slovakia, and Bulgaria (Apr. 3, 2025), https://unwatch.org/wp-content/uploads/2025/04/MEP-Letter-to-HRC-President-Lauber.pdf.
[49] A/HRC/59/NGO/331, Submission by UN Watch to the UNHRC Regarding Defendant's Misconduct (May 29, 2025) https://documents.un.org/doc/undoc/gen/g25/105/37/pdf/g2510537.pdf.
[50] Id.; Letter from UN Watch (Apr. 30, 2025), https://unwatch.org/wp-content/uploads/2025/04/30-April-UN-Watch-Letter-to-Sec.-Rubio-on-stripping-immunity-from-Francesca-Albanese-1.pdf.
[51] Manual of Operations, *supra* note 1.
[52] 8/PRST/2 ¶ 3 (June 18, 2008), https://ap.ohchr.org/documents/E/HRC/p_s/A_HRC_PRST_8_2.pdf.
[53] Id.

63.     Inexplicably, Lauber did not follow the required Article 7 procedure regarding these reports of systematic, persistent Code of Conduct violations by a Special Rapporteur. Lauber failed to share these voluminous complaints with the UNHRC for proper consideration prior to the purported extension of Defendant's mandate.[54]

64.     Instead, Lauber merely forwarded complaints to the Coordination Committee, which bears no responsibility for oversight of misconduct by Special Rapporteurs.[55] Thereafter, the UNHRC conducted no formal consideration of the information submitted against Defendant and no official vote was taken concerning renewal of Defendant's mandate.

65.     Rather, on or about April 5, 2025, the purported renewal of Defendant's term was simply announced, suggesting the use of the provision that automatically extends a mandate-holder's term, in direct contravention of the regulatory requirement that formal consideration of complaints be properly handled prior to any term renewal.

66.     Consequently, Defendant's mandate as Special Rapporteur legally expired on April 30, 2025 and she held neither official UN status nor any arguable immunity as of May 1, 2025.

67.     Though published as a supposed official UNHRC document, Defendant's appointment as Special Rapporteur had legally expired prior to the Report's publication in June.

68.     Therefore, the Report was published outside Defendant's mandate and Defendant cannot claim immunity for the malicious, defamatory, false statements she made therein about and directed to Plaintiffs.

69.     In addition to the DOJ letter sent to Defendant prior to the Report's publication, Defendant's exposure to liability for her statements in the Report is supported by a June 20, 2025

---

[54] Letter from UN Watch (Apr. 3, 2025), https://unwatch.org/wp-content/uploads/2025/04/Notice-of-Illegality-as-sent-to-SG.pdf.
[55] *Id.*

letter from Dorothy C. Shea, Acting United States Representative the UN, to UN Secretary-General António Guterres, in which Shea describes the aforementioned procedural deficiencies as fatal to Defendant's reappointment.[56] Shea further wrote that Guterres had confirmed in an April 21, 2025 letter that Defendant "is not a staff member of the United Nations and serves in a personal capacity expressing only personal views."

70.     Shea also stated that Defendant's "misrepresented her qualifications for the role by claiming to be an international lawyer despite admitting publicly that she has not passed a legal bar examination or been licensed to practice law," tendering a further basis for rendering her renewed mandate invalid.

71.     Shea concluded that the position of the United States was that Defendant's "work is illegitimate" and she does not have "immunity for her speech or conduct outside of the course of performance of her mission."

72.     Further demonstrating Defendant's lack of immunity, on July 9, 2025, United States Secretary of State Marco Rubio announced sanctions on Defendant because of her relentless "campaign of political and economic warfare against the United States and Israel," including and specifically through the Report.[57]

73.     In announcing the sanctions, Secretary Rubio decried Defendant's "biased and malicious activities, . . . [her] unabashed antisemitism, . . . support for terrorism, and open contempt for the United States, Israel, and the West."

---

[56] Ambassador's Shea Letter (July 1, 2025), https://unwatch.org/u-s-letter-to-un-chief-calls-to-remove-francesca-albanese.
[57] *Sanctioning Lawfare that Targets U.S. and Israeli Persons*, U.S. Dep't of State (July 9, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/07/sanctioning-lawfare-that-targets-u-s-and-israeli-persons.

74.    Secretary Rubio stated that Defendant was "making extreme and unfounded accusations and recommending the ICC pursue investigations and prosecutions of these companies and their executives. We will not tolerate these campaigns of political and economic warfare, which threaten our national interests and sovereignty."

75.    The United States has continued to voice its vociferous opposition to Defendant. As recently as July 1, 2025, the US Mission to the UN condemned Defendant for her "malignant antisemitism and support for terrorism," as well as her having "misrepresented her qualifications for the role claiming to be an international lawyer despite never having passed a legal bar examination or been licensed to practice law."[58]

76.    Defendant's statements made about Plaintiffs in the Report were made with knowledge of their falsity, malice, or at least reckless disregard for their truth.

77.    Plaintiffs have never engaged in or supported any unlawful conduct in Israel or elsewhere.

78.    Plaintiffs have not engaged in support for war crimes, genocide, apartheid, or crimes against humanity.

79.    Plaintiffs have not funded or profited from Israel's military operations nor have they provided weapons for Israelis.

80.    Plaintiffs are religious, charitable nonprofit organizations that are focused on fostering positive relations between Christians, Jews, and the Jewish state.

81.    Defendant's malicious Report has gained global attention and traction, especially given Defendant's continued use of her expired title as a UN Special Rapporteur as veneer for her

---

[58] US Mission to the UN Statement Opposing Francesca Albanese's Mandate as UN Special Rapporteur (July 1, 2025), https://usun.usmission.gov/u-s-mission-to-the-united-nations-statement-opposing-francesca-albaneses-mandate-as-un-special-rapporteur-2.

defamatory, antisemitic screed.[59] Media outlets have followed the target Defendant placed on Plaintiffs and repeated the false allegations of criminal behavior and immorality of Christian Zionists.[60] Defendant's Report has been used in the university classroom,[61] and blacklists urging boycott of Plaintiffs and other entities defamed in Defendant's Report have been circulated online.[62]

82.    Defendant's statements have directly and proximately caused Plaintiffs reputational harm and mental anguish, and places Plaintiffs at risk of loss of donor confidence, loss of future business opportunities consistent with their respective missions, loss of status as tax-exempt nonprofit organizations, governmental sanctions, travel restrictions on personnel, and debanking.

83.    Defendant's vociferous calls for action against those named in her Report, including Plaintiffs, also put the executives, members, donors, and/or volunteers of Plaintiffs' respective organizations at considerable risk of physical harm. Supporters of Israel have been attacked, grievously injured, and killed since October 7, including Christian Zionists.[63] Through the publication of her Report, Defendant has placed a bullseye on Plaintiffs, their executives, their members, donors, and/or their volunteers.

---

[59] Emma Farge, *UN expert urges states to cut Israel trade ties over 'apocalyptic' Gaza situation*, REUTERS (July 3, 2025, 5:27 AM), https://www.reuters.com/business/aerospace-defense/un-expert-asks-states-cut-trade-ties-with-israel-over-gaza-situation-2025-07-03; Julian Borger, *Global firms 'profiting from genocide' in Gaza, says UN rapporteur*, GUARDIAN (July 3, 2025, 7:48 AM), https://www.theguardian.com/world/2025/jul/03/global-firms-profiting-israel-genocide-gaza-united-nations-rapporteur.

[60] *See e.g.*, Rawan Abdelbaki & Rana Sukarieh, *Zionism or Racism with(out) Borders*, SPECTRE J. (July 25, 2025), https://spectrejournal.com/zionism-or-racism-without-borders; Sharon Zhang, *UN Expert Exposes Companies Aiding Israel's Genocide, Occupation in Palestine*, TRUTHOUT (July 1, 2025), https://truthout.org/articles/un-expert-exposes-companies-aiding-israels-genocide-occupation-in-palestine.

[61] Safe Campus (Aug. 30, 2025), https://www.instagram.com/p/DN82iCxAcEt.

[62] @Natural212, *Action Alert: List of companies involved in the Palestinian genocide according to UN Special Report*, REDDIT, https://www.reddit.com/r/BDS/comments/1lxcnbr/list_of_companies_involved_in_the_palestinian (last visited Sept. 1, 2025); Ariana Del Zotto, *Sponsors of the genocide in Palestine*, INT'L SOCIALIST LEAGUE (July 25, 2025), https://lis-isl.org/en/2025/07/sponsors-of-the-genocide-in-palestine.

[63] *Suspect in killing of Israeli Embassy staffers charged with hate crimes*, Times of Israel (Aug. 7, 2025, 9:36 AM), https://www.timesofisrael.com/suspect-in-killing-of-israeli-embassy-staffers-charged-with-hate-crimes.

**CAUSES OF ACTION**

**COUNT I**

**(Defamation)**

84.     Plaintiffs repeat and reallege the foregoing paragraphs as though fully set forth herein.

85.     Defendant made defamatory statements about Plaintiffs in that Defendant falsely accused Plaintiffs of being criminal organizations guilty of serious violations of American, Dutch, and international law, complicit in genocide, apartheid, crimes against humanity, war crimes, and other heinous crimes and immoral acts.

86.     Plaintiffs are religious, charitable organizations involved in teaching Christians about Biblical Israel and the people of Israel, and fostering positive fellowship between Christians and Jews.

87.     Plaintiffs have never violated any laws, nor have they participated in, supported, or been complicit in genocide, apartheid, or any other alleged violations of law.

88.     Defendant published her statements to third parties through the publication online of her Report and promoting and linking to the Report on her social media knowing that her defamatory accusations would reach millions of people in Colorado, the United States, and internationally. Defendant published her statements intending to cause reputational, financial, and physical harm to Plaintiffs, their executives, members, volunteers, and/or donors.

89.     Prior to publishing her false statements to third parties, Defendant was notified by both Plaintiff C4I USA and the DOJ that her accusations were false, baseless, and defamatory. Defendant nevertheless chose to publicize her false claims.

90.     Defendant defamed Plaintiffs with knowledge, malice, or reckless disregard for the falsity of her statements.

91.     As a direct and proximate result of Defendant's actions, Plaintiffs have been wrongly targeted, humiliated, defamed, and have suffered reputational harm, grievous injuries, and damages as set forth above and in amounts to be determined at trial.

## COUNT II

### (Trade Libel)

92.     Plaintiffs repeat and reallege the foregoing paragraphs as though fully set forth herein.

93.     Defendant made false statements about Plaintiffs, including falsely accusing Plaintiffs of being criminal organizations guilty of serious violations of American, Dutch, and international law, complicit in genocide, apartheid, crimes against humanity, war crimes, and other heinous crimes and immoral acts.

94.     Plaintiffs have never violated any laws, nor have they participated in, supported, or been complicit in genocide, apartheid, or any other alleged violations of law.

95.     Plaintiffs are religious, charitable organizations involved in teaching Christians about Biblical Israel and the people of Israel and fostering positive fellowship between Christians and Jews.

96.     Defendant's highly offensive and denigrating false claims about Plaintiffs specifically attacked and disparaged Plaintiffs' work as religious nonprofits devoted to creating positive relationships between Christians, Jews, and the Jewish state.

97.     Prior to publicizing her false statements, Defendant was notified by both Plaintiff C4I USA and the DOJ that her accusations were false, baseless, and offensive. Defendant nevertheless chose to publicize her false claims.

98.     Defendant acted with actual malice or reckless disregard for the falsity of the statements she made about Plaintiffs.

21

99.     As a direct and proximate result of Defendant's actions, Plaintiffs have been wrongly targeted, humiliated, defamed, and have suffered reputational harm, grievous injuries, and damages as set forth above and in amounts to be determined at trial.

## COUNT III

### (Tortious Interference with Prospective Economic Advantage)

100.    Plaintiffs repeat and reallege the foregoing paragraphs as though fully set forth herein.

101.    Plaintiffs had a valid business expectation or prospective economic relationship.

102.    Plaintiffs had a reasonable expectation of economic benefit through donor relationships, partnerships, and speaking engagements.

103.    Defendant, through her public false statements, intentionally interfered with these relationships.

104.    Defendant demonstrated knowledge of that expectancy or relationship by passionately urging for the interference with Plaintiffs' business, including but not limited to the prosecution of Plaintiffs' executives, and boycott of, divestment from, and sanctions on Plaintiffs.

105.    As a direct and proximate result of Defendant's actions, Plaintiffs have been wrongly targeted, humiliated, defamed, and have suffered reputational harm, grievous injuries, and damages as set forth above and in amounts to be determined at trial.

## **JURY DEMAND**

106.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)  Enter judgment against Defendant and in favor of each Plaintiff for compensatory damages in amounts to be determined at trial;

(b)  Enter declaratory judgment against Defendant and on behalf of Plaintiffs for instances of *defamation per se*;

(c)  Award punitive damages for Defendant's willful and malicious conduct in an amount sufficient to punish the Defendant and to deter similar conduct in the future;

(d)  Issue a permanent injunction ordering Defendant to delete the defamatory statements and refrain from similar conduct in the future;

(e)  Enter judgment against Defendant and in favor of each Plaintiff for any and all relief as appropriate, including damages and attorney fees.

(f)  Grant such further relief as the Court deems just and proper.

Dated: September 8, 2025

Respectfully Submitted,

/s/ Rachel Sebbag
_____
Rachel Sebbag
Mark Goldfeder*
Ben Schlager*
Mark Lebovitch*
NATIONAL JEWISH ADVOCACY
CENTER, INC.
3 TIMES SQUARE
NEW YORK, NY 10036
rachel@njaclaw.org
mark@njaclaw.org
ben@njaclaw.org
mlebovitch@njaclaw.org
Phone: 332.278.1100

Dan Ernst
ERNST LEGAL GROUP, LLC
217 EAST 7TH AVE.
DENVER, CO 80203
dan@ernstlegalgroup.com
Phone: 720.798.3667

Lawrence Marc Zell
ZELL & ASSOCIATES INTERNATIONAL
ADVOCATES LLC
800 CONNECTICUT AVE. NW
SUITE 300
WASHINGTON, DC 20006
mzell@fandz.com
Phone: 202.615.1615
Fax: 212.253.4030

David I. Schoen
Simon J. Schoen
SCHOEN LAW FIRM, LLC
3151 MAPLE DRIVE, NE
ATLANTA, GA 30305
schoenlawfirm@gmail.com
Phone: 404.365.5042
Fax: 917.591.7586

*Attorneys for Plaintiffs*

*admission forthcoming