UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| L.C., a minor child, by and through her father MASSIMILIANO CALI, <br><br> MASSIMILIANO CALI, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, President of the United States, *et al.*, <br><br> *Defendants*. | No. 1:26-cv-00688 (RJL) <br><br> **CERTIFICATION OF LAWRENCE S. LUSTBERG, ESQ.** |

**LAWRENCE S. LUSTBERG, ESQ.**, of full age, hereby certifies as follows:

1. I am an attorney-at-law of the States of New Jersey and New York, Partner at FBT Gibbons LLP, and Director Emeritus of the John J. Gibbons Fellowship in Public Interest and Constitutional Law. I respectfully submit this certification in support of Proposed *Amici*'s Motion for Leave to Participate as *Amici Curiae* in the above-captioned matter.

2. "District courts have inherent authority to appoint or deny *amici* which is derived from Rule 29 of the Federal Rules of Appellate Procedure." *Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008) (quoting *Smith v. Chrysler Fin. Co., L.L.C.,* 2003 WL 328719, at *8 (D.N.J. Jan. 15, 2003)). Under FRAP 29, motions to appear as amicus should be granted where the movant has shown (1) an adequate "interest" in the case; (2) that their proposed *amicus* brief is "desirable"; and (3) that their proposed *amicus* brief is "relevant to the disposition of the case." Fed. R. App. P. 29(a)(3); *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 131 (3d

Cir. 2002) (Alito, J.) (quoting language currently in Fed. R. App. P. 29(a)(3)). This Court's Local Civil Rule 7(o) likewise permits parties to file *amicus* briefs with leave of the Court, incorporating FRAP 29. *See* Local Civ. R. 7(o)(4).

3. Courts in this District have accepted *amicus* briefs in multiple circumstances: "when a party is not represented competently or is not represented at all"; "when the *amicus* has an interest in some other case that may be affected by the decision in the present case"; and "when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Jin*, 557 F. Supp. 2d at 137 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997)); *accord Hard Drive Productions, Inc. v. Does 1-1, 495*, 892 F. Supp. 2d 334, 337 (D.D.C. 2012). In short, *amicus* briefs are desirable where they are "helpful" to the Court. *Neonatology Assocs.*, 293 F.3d at 132-33; *see, e.g.*, *Las Americas Immigrant Advocacy Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 404 (D.D.C. 2025) ("Texas . . . can help the court" through amicus brief); *Hard Drive Productions*, 892 F. Supp. 2d at 338 ("EFF's proposed brief is helpful because it raises . . . an issue not developed fully in the motions to quash"). *Amici* can also participate when their "interests may be implicated by the Court's decision in th[e] case." *United States v. Sutton*, 2023 WL 3478484, at *2 (D.D.C. 2023). In this case, the *amicus* brief of *Amici Curiae* International Human Rights Law Scholars and Teachers In Support Of Plaintiffs' Motion For A Preliminary Injunction, filed herewith, satisfies these standards.

4. *Amicus* **Sandra L. Babcock** is a Clinical Professor at Cornell Law School, where she directs the International Human Rights Clinic. She has engaged in human rights advocacy, research, and litigation in thirteen countries around the world, including Israel and Palestine. Together with her students, she represents victims of human rights violations in state, federal, and

regional human rights tribunals. She also advocates before United Nations mechanisms such as the U.N. Human Rights Council, the U.N. Treaty Bodies, and U.N. Special Procedures, including thematic and country-specific Special Rapporteurs. In 2025, Professor Babcock's clinic co-authored a human rights report entitled "Apartheid in Israel: An Analysis of Israel's Laws and Policies and the Responsibilities of U.S. Academic and Other Institutions." This report contained numerous recommendations directed to institutional actors, including university administrators, the U.S. Government, the Government of Israel, and the United Nations and human rights bodies. In the months following the publication of the report, Professor Babcock and her co-authors sent the report to a number of international human rights experts and scholars. In August 2025, Professor Babcock considered sending the report to United Nations Special Rapporteur Francesca Albanese given its relevance to her mandate, but was advised that doing so could violate EO 14203. Because of her uncertainty as to the scope of prohibited conduct under EO 14203, Professor Babcock refrained from sending the report to Ms. Albanese, and has had no contact with her since the issuance of the Executive Order. Since the designation of Ms. Albanese as a specially designated national under EO 14203, Professor Babcock has continued to provide information to other UNSRs, notably on human rights violations in Uganda, Tanzania, and the United States.

5. *Amicus* **Susan M. Akram** is a Clinical Professor and the Director of the International Human Rights Clinic at Boston University School of Law. Professor Akram and her clinic students work with multiple U.N. and regional human rights mechanisms, collaborating with non-governmental organizations and other groups around the world to conduct research and advocate for issues on behalf of client communities. She and her students have submitted reports and briefs on international human rights issues relating to forced displacement, refugees, asylum seekers and stateless persons to U.S. courts, regional courts, and U.N. human rights bodies.

3

Professor Akram's clinic also works extensively with U.N. Special Procedures, including U.N. Special Rapporteurs such as the U.N. Special Rapporteur on Migrants and the U.N. Special Rapporteur on the Situation of Human Rights in the Occupied Palestinian Territories. Professor Akram has also submitted information in connection with the U.N. Commission of Inquiry on the Occupied Palestinian Territory, including East Jerusalem and Israel.

6.     *Amici* **James Cavallaro** and **Thomas Becker** are the Executive Director and Legal and Policy Director, respectively, of the University Network for Human Rights (UNHR). Cavallaro is also Visiting Professor at Yale Jackson School of Global Affairs and the founder and former director of the human rights clinics at Harvard Law School and Stanford Law School. Becker is a Lecturer in Law at Columbia Law School and previously taught at Harvard Law School's human rights clinic. UNHR engages in teaching students from an array of U.S. schools, including Brown, Columbia, Harvard, Trinity, University of California, Vanderbilt, Wesleyan, Wellesley, and Yale, among others. It also runs a master's program in human rights at the NOVA School of Law in Portugal. UNHR facilitates supervised student engagement in the practice of human rights at colleges and universities in the United States and across the globe.

7.     *Amicus* **Asli U. Bali** is Howard M. Holtzmann Professor of Law at Yale Law School. Her research and teaching interests include public international law, particularly human rights law, and comparative constitutional law with a focus on the Middle East. She teaches International Law and International Human Rights Law as doctrinal courses at Yale Law. As a scholar she has written on human rights law issues in the Middle East including in the occupied Palestinian territories. Professor Bali completed her two-year term as President of the Middle East Studies Association of North America ("MESA") in November 2025. She currently serves on MESA's National Board as Past-President through November 2026. Professor Bali has interacted

4

with MESA members who conduct research in the Occupied Palestinian Territories and publish scholarship based on their fieldwork and archival work in the region. Professor Bali's own scholarship has also brought her into meetings, workshops, conferences and webinars that include United Nations and regional human rights institutions, experts and officials. She has previously served as a consultant to the U.N. Special Rapporteur on the Situation of Human Rights in the Occupied Palestinian Territories when that position was held by Professor Richard Falk.

8. *Amici* and their students partner with advocacy organizations and communities affected or threatened by abusive state, corporate, or private conduct to advance human rights at home and abroad; teach and learn about interdisciplinary human rights protections and advocacy; and collaborate with academics and human rights practitioners in other parts of the world to foster the creation of practical, interdisciplinary programs in human rights. Students have engaged with numerous treaty- and charter-based mechanisms of the United Nations, including the Office of the United Nations High Commissioner for Human Rights; United Nations Economic and Social Council Commissions; Commissions of Inquiry; Special Rapporteurs; Working Groups, and Treaty-Based Subcommittees. A key component of *Amici*'s pedagogy includes students engaging with special rapporteurs and other U.N. mandate holders. The unique role of special rapporteurs has allowed students to raise urgent issues and interact directly with U.N. representatives.

9. This case challenges the imposition of sanctions against Francesca Albanese, who is the United Nations Special Rapporteur on the situation of human rights in the Palestinian territory occupied since 1967. Proposed *Amici*, who also work in the field of international human rights and have interacted professionally with Special Rapporteur Albanese, are well-situated to assist the Court and represent their interests, and the interests of others similarly situated to them, in the Court's consideration of the Complaint and Motion for Preliminary Injunction.

10. In May 2024, *Amici* Sandra Babcock, Thomas Becker, Susan Akram, and James Cavallaro, on behalf of their respective law clinics and non-governmental organizations co-authored a report concluding that Israel's actions met the international definition of genocide. *See* International Human Rights Clinic, Cornell Law School and International Human Rights Clinic, Boston University School of Law, *Apartheid in Israel: An Analysis of Israel's Law and Policies and the Responsibilities of U.S. Academic and Other Institutions,* University Network for Human Rights (May 15, 2025), https://www.humanrightsnetwork.org/publications/apartheid-in-israel-gaza-west-bank-universities. That report relied in substantial part on the work of Special Rapporteur Albanese. In the months following the publication of the report, *Amici* sent the report to a number of international human rights experts and scholars. As discussed above, in August 2025, Babcock considered sending the report to Ms. Albanese given its relevance to her mandate, but was advised that doing so could violate EO 14203. Because of her uncertainty as to the scope of prohibited conduct under EO 14203, however, Professor Babcock refrained from sending the report to Ms. Albanese, and has had no contact with her since the issuance of the Executive Order. Indeed, *Amici* worry that even assigning Special Rapporteur Albanese's work to their students violates the sanctions that are challenged here.

11. Because of the sanctions placed on Special Rapporteur Albanese, the ICC (and its staff), and the three most prominent Palestinian human rights organizations, Professor Akram has had to terminate the clinic's engagement with them and silence all public advocacy on the issues upon which they worked together. The sanctions on Special Rapporteur Albanese have also affected Professor Akram's professional engagements and ability to speak about her work. For example, Professor Akram was scheduled to speak at a conference at the University of Southern Maine on February 28, 2026. (https://www.mvprights.org/conference). One of the invited

speakers at the conference was Special Rapporteur Albanese, who was scheduled to participate by zoom. After learning of Special Rapporteur Albanese's planned participation—even though she would not be physically present—the University of Southern Maine stated it would not be possible to hold the conference on campus. Although the conference organizers, faced with the last minute cancellation, were eventually able to find an alternate venue at a local church, the change of venue made it more difficult for students and faculty from the university to attend, and communicated that Special Rapporteur Albanese would not be welcome at academic events.

12. *Amici* James Cavallaro and Thomas Becker have shared UNHR's work on Israel and the Occupied Palestinian Territories with UN representatives, including Special Rapporteur Albanese. Because of the sanctions, however, they have stopped sending materials to Albanese, and have been reserved about how to engage other U.N. officials. This has a chilling effect on UNHR's work and impacts the educational experience of its students.

13. Because of the sanctions placed on Special Rapporteur Francesca Albanese and the three prominent Palestinian human rights organizations that were also designated by the U.S. government, Professor Bali has had to advise members of MESA concerning their ability to continue to engage in research and scholarship involving engagement with Special Rapporteur Albanese. She has also had to advise colleagues teaching in legal clinics at law schools across the U.S. concerning the potential liability they might incur if they continue engaging in public advocacy on issues together with Special Rapporteur Albanese. In her own work, Professor Bali was advised that participating in a conference overseas that included Special Rapporteur Albanese in October 2025 might expose her to liability and discouraged from attending. Professor Bali was compelled to seek legal advice in planning a public event on behalf of MESA to be attended virtually by Special Rapporteur Albanese in 2025. The purpose of that event was, among other

things, to enable MESA members to contribute to the work of Special Rapporteur Albanese's mandate by giving presentations to her based on their own fieldwork and research in the Occupied Palestinian Territories. The event remains postponed as a consequence of legal concerns that were raised in fall 2025. The sanctions on Special Rapporteur Albanese have also affected Professor Bali's ability to plan research projects that would have involved an invitation to Special Rapporteur Albanese. As one example, Professor Bali has been organizing a special issue of an international law journal addressing the human rights crisis in the Middle East, for which she was expecting to solicit a contribution from Special Rapporteur Albanese. The invitation to Special Rapporteur Albanese to make a written contribution to the special issue has been placed on hold due to concerns among journal editors about legal liability.

14. As argued in their proposed brief, *Amici* are deeply troubled by EO 14203 and the resulting designation against Special Rapporteur Albanese. By targeting controversial political speech on matters of public concern, including litigation, academic engagement, and advocacy related to governmental policy, the sanctions operate as retaliatory and viewpoint-discriminatory measures that strike at the heart of the First Amendment. The EO is substantially overbroad, posing a non-speculative threat to protected expression and sweeping far beyond any permissible scope. The EO also produces severe and objectively measurable chilling effects: its unclear boundaries foster objectively reasonable self-censorship, its punitive sanctions amplify deterrence, and its consequences substantially hinder academic freedom and the marketplace of ideas within the university context. Proposed *Amici* therefore urge the Court to grant Plaintiffs' Motion for a Preliminary Injunction and enjoin Defendants from enforcing civil or criminal penalties under EO 14203 and IEEPA.

15. For the foregoing reasons, Proposed *Amici* request that they be permitted to

participate as *amici curiae* in this matter. Their proposed brief in support of Plaintiffs' Motion for a Preliminary Injunction (ECF No. 3) is submitted herewith.

| | |
|---|---|
| Dated: March 13, 2026<br>Newark, New Jersey | Respectfully submitted,<br><br>By:  s/ Lawrence S. Lustberg<br>**FBT GIBBONS LLP**<br>John J. Gibbons Fellowship in Public Interest and Constitutional Law<br>One Gateway Center<br>Newark, NJ 07102<br>llustberg@fbtgibbons.com |