**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

L.C., a minor child, by and through her father
MASSIMILIANO CALI,

MASSIMILIANO CALI,

     *Plaintiffs,*

     v.

DONALD J. TRUMP, *in his official capacity as
President of the United States, et al.*

     *Defendants.*

Civil Action No. 1:26-cv-00688-RJL

**DEFENDANTS' MOTION FOR STAY PENDING APPEAL OR, IN THE
ALTERNATIVE, FOR A TEMPORARY ADMINISTRATIVE STAY**

**INTRODUCTION**

Defendants respectfully move, pursuant to Federal Rule of Appellate Procedure 8(a), for a stay pending appeal of the Court's May 13, 2026 preliminary injunction order. The preliminary injunction bars the Executive Branch from implementing and enforcing sanctions imposed pursuant to Executive Order 14203 against Francesca Albanese, a foreign national residing abroad whom the U.S. Secretary of State designated pursuant to authorities delegated by the President under the International Emergency Economic Powers Act ("IEEPA"). In doing so, the preliminary injunction restrains the Executive Branch's administration of a sanctions regime grounded in national security and foreign policy determinations expressly authorized by Congress.

A stay is warranted because Defendants are likely to succeed on appeal and will suffer immediate and irreparable harm absent relief. Defendants are likely to succeed on appeal because the injunction extends First Amendment protection to a foreign national residing abroad and grants relief exceeding what is necessary to redress Plaintiffs' alleged injuries, thereby restraining the Executive

Branch's administration of congressionally authorized sanctions authorities. Preliminary injunctions interfering with the Executive Branch's exercise of national security and foreign affairs authority inflict irreparable sovereign injury by "t[ying] the government's hands" and effecting an improper "transfer of control, from the Executive to the Judiciary." *Nat'l Treasury Emps. Union v. Trump,* No. 25-5157, 2025 WL 1441563, at \*2-3 (D.C. Cir. May 16, 2025). The Supreme Court likewise explained that injunctions preventing the Government from enforcing federal policies against nonparties improperly intrude upon "a coordinate branch of the Government" and may inflict irreparable harm where the injunction likely exceeds the court's equitable authority. *Trump v. CASA*, Inc., 606 U.S. 831, 859-61 (2025) (quoting *Immigr. & Naturalization Serv. v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993)). Those concerns are especially acute here because the preliminary injunction extends beyond Plaintiffs' alleged injuries and restrains enforcement of sanctions imposed against a nonparty foreign national residing abroad.

The balance of equities and public interest also strongly favors a stay. The injunction substantially interferes with the Executive Branch's implementation of sanctions measures directed at what the President determined to be "an unusual and extraordinary threat to the national security and foreign policy of the United States" involving ICC conduct that the President found was "directly endangering current and former United States personnel . . . by exposing them to harassment, abuse, and possible arrest." Imposing Sanctions on the International Criminal Court, Exec. Order No. 14203, pmbl., 90 Fed. Reg. 9369, 9369-70 (Feb. 6, 2025) ("E.O. 14203"). Further, rather than limiting relief to Plaintiffs, the preliminary injunction exceeds the scope of redressing Plaintiffs' alleged injuries by barring implementation and enforcement of Albanese's designation. *See CASA*, 606 U.S. at 859-61.

At minimum, even if the Court declines to enter a full stay pending appeal, Defendants respectfully request a temporary administrative stay of fourteen days to permit Defendants to seek emergency relief from the United States Court of Appeals for the District of Columbia Circuit and preserve meaningful appellate review of these significant constitutional and national security questions.

## BACKGROUND

On February 6, 2025, the President issued Executive Order 14203 (the "Order"), entitled "Imposing Sanctions on the International Criminal Court," pursuant to IEEPA. E.O. 14203, pmbl., 90 Fed. Reg. at 9369. In the Order, the President determined that efforts by the International Criminal Court ("ICC") to "investigate, arrest, detain, or prosecute" United States nationals and nationals of certain U.S. allies constituted "an unusual and extraordinary threat to the national security and foreign policy of the United States[.]" *Id.* at 9370. The Order specifically referenced ICC actions directed at Israeli officials in connection with the Israeli-Palestinian conflict. *Id.* at 9369. Pursuant to the President's IEEPA authorities, Executive Order 14203 authorizes sanctions against foreign persons determined to have "directly engaged in" or who have materially assisted ICC efforts to investigate, arrest, detain, or prosecute protected persons, among other categories of foreign persons. *Id.* at 9370 (§ 1). The Order further prohibits U.S. persons from providing "funds, goods, or services by, to, or for the benefit of" blocked persons and authorizes civil and criminal penalties for violations. *Id.* at 9370 (§ 3).

On July 9, 2025, the U.S. Secretary of State designated Albanese pursuant to Executive Order 14203 after determining that she had "directly engaged with the [ICC] in efforts to investigate, arrest, detain, or prosecute nationals of the United States or Israel." Sec'y of State Marco Rubio, U.S. Dep't of State, Press Statement, *Sanctioning Lawfare that Targets U.S. and Israeli Persons* (July 9, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/07/sanctioning-lawfare-that-

targets-u-s-and-israeli-persons ("Sec'y Rubio Press Statement"). The Secretary specifically cited Albanese's actions, including recommendations that the ICC pursue arrest warrants and investigations targeting Israeli officials, American companies, and their executives. *See id.* The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") subsequently added Albanese to the Specially Designated Nationals and Blocked Persons List ("SDN List") and implemented the sanctions measures arising from that designation.

On February 25, 2026, Plaintiffs L.C. and Massimiliano Cali filed this action challenging Albanese's designation and simultaneously moved for a preliminary injunction. Compl., ECF No. 1; Mot. for a Prelim. Inj., ECF No. 3. Following briefing and a hearing, this Court granted Plaintiffs' motion for a preliminary injunction on May 13, 2026, and enjoined Defendants from implementing or enforcing Albanese's designation pursuant to Executive Order 14203. Order at 1, ECF No. 49. The Court further enjoined Defendants from taking "any action" against Plaintiffs pursuant to Albanese's designation and waived the Federal Rule of Civil Procedure 65(c) security requirement. Order at 2.

In its accompanying memorandum opinion, the Court concluded that Albanese possessed sufficient "substantial connections" to the United States to invoke constitutional protections despite residing abroad as a foreign national. Mem. Op. at 15-18, ECF No. 48. The Court further held that Executive Order 14203, as applied to Albanese, constituted a content-based regulation of speech likely prohibited by the First Amendment. *Id.* at 18-22.

## LEGAL STANDARD

A stay pending appeal is "an exercise of judicial discretion," and the party seeking a stay bears the burden of showing that the circumstances justify that relief. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). In exercising that discretion, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors, likelihood of success and irreparable injury, are "the most critical." *Id.* When the Government is the opposing party, the final two factors, the balance of harms and the public interest, merge. *Id.* at 435.

## ARGUMENT

### I.     Defendants Are Likely to Succeed on Appeal.

#### A.  The First Amendment Does Not Apply to a Foreign Citizen Residing Abroad.

Albanese is not entitled to the protections of the First Amendment because she is a foreign national residing abroad. Supreme Court precedent makes clear that "foreign citizens outside U. S. territory do not possess rights under the U. S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020). Constitutional protections generally extend to foreign nationals only when they have "come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). Albanese cannot satisfy either of the two parts of this conjunctive test because she resides outside the United States and the expression for which she was sanctioned occurred abroad. Compl. ¶¶ 17-20, 31, 66.

Albanese is an Italian citizen residing in Tunisia; she has not lived in the United States since 2015; and the activity Plaintiffs seek to protect occurred abroad in connection with international advocacy concerning ICC proceedings. *Id.* The Court nevertheless held that Albanese had sufficient U.S. connections because she previously lived in the United States, has a U.S.-citizen child, owns property here, and maintains certain professional relationships with U.S.-based entities. Mem. Op. at 16-18. But those contacts do not justify extending First Amendment protection to a foreign national who resides abroad and whose relevant expression occurred abroad. Compl. ¶¶ 20, 31, 66. *Verdugo-Urquidez* requires substantial voluntary connections to the United States as opposed to historical

residence, attenuated professional affiliations, or property ownership unrelated to the speech at issue. *See* 494 U.S. at 271-75.

Further, *Agency for International Development* makes clear that foreign actors operating abroad generally may not invoke the First Amendment to constrain the Executive Branch's foreign affairs authority. *See* 591 U.S. at 433-38. There, the Supreme Court rejected an effort to extend First Amendment protections to foreign organizations operating abroad and warned that doing so would "throw a constitutional wrench into American foreign policy." *Id.* at 436. That concern is relevant here given that the challenged sanctions arise from the Executive Branch's exercise of congressionally authorized national security and foreign affairs authorities under IEEPA.

Defendants are therefore likely to succeed in demonstrating that Albanese is not entitled to protection under the First Amendment.

### B. The Preliminary Injunction Raises Significant Separation of Powers Concerns in the Areas of National Security and Foreign Affairs.

The President expressly determined in Executive Order 14203 that certain efforts by the ICC to investigate, arrest, detain, or prosecute United States nationals and nationals of allied countries constitute "an unusual and extraordinary threat to the national security and foreign policy of the United States." E.O. 14203, pmbl., 90 Fed. Reg. at 9370. Congress likewise authorized the President, through IEEPA, to respond to such threats through economic sanctions and related measures. *See* 50 U.S.C. §§ 1701-02. Accordingly, the preliminary injunction restrains the Executive Branch's use of the very sanctions authority Congress made available to address foreign threats implicating national security and foreign policy.

That restraint prevents the Executive Branch from implementing national security and foreign affairs determinations made pursuant to congressionally delegated sanctions authority. The D.C. Circuit recently held that injunctions restraining Executive Branch action in areas implicating national

security inflict irreparable sovereign harm because they impede the President's ability to respond to evolving circumstances and improperly transfer decision making authority "from the Executive to the Judiciary." *Nat'l Treasury Emps. Union*, 2025 WL 1441563, at \*2. Further, the Supreme Court recently reiterated similar principles in *CASA*, explaining that injunctions preventing the Government from enforcing federal policies against nonparties improperly intrude upon "a coordinate branch of the Government." 606 U.S. at 859-60 (quoting *Immigr. & Naturalization Serv.*, 510 U.S. at 1306). The Court explained that the Government suffers irreparable harm when injunctions likely exceed the proper scope of equitable relief and prevent the Executive Branch from implementing federal policy against persons who are not parties before the Court. *Id.* at 859-61.

The Court's order broadly restrains implementation and enforcement of sanctions imposed pursuant to Executive Order 14203, notwithstanding the Executive Branch's determination that such measures are necessary to address threats to the national security and foreign policy interests of the United States. That relief substantially interferes with the Executive Branch's administration of sanctions policy and foreign affairs authorities delegated by Congress under IEEPA. *See Regan v. Wald*, 468 U.S. 222, 223, 242 (1984) (emphasizing the "traditional deference to executive judgment in the realm of foreign policy").

### C. The Preliminary Injunction Is Overbroad and Extends Beyond Any Injuries Alleged by Plaintiffs.

Defendants are also likely to succeed because the preliminary injunction exceeds the permissible scope of equitable relief. Even assuming Plaintiffs could establish a likelihood of success on some portion of their claims, the relief entered extends well beyond what would be necessary to redress the alleged injuries of the named Plaintiffs. The Supreme Court recently reaffirmed that equitable relief must be tailored to remedy the injuries of the parties before the Court. *See, e.g., CASA*, 606 U.S. at 852, 859-61; *Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored

to redress the plaintiff's particular injury."); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[T]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). Plaintiffs likewise "must demonstrate standing . . . for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

Here, however, the Court broadly enjoined Defendants from "implementing or enforcing" Albanese's designation in full, notwithstanding that Albanese herself is not a plaintiff. Order at 1. Plaintiffs sought sweeping relief directed at Albanese's designation itself: removal of Albanese from the SDN List and a broad prohibition on enforcement of her designation under Executive Order 14203. *See* Mot. for a Prelim. Inj. at 1. But Plaintiffs' alleged injuries are derivative of sanctions imposed on Albanese and concern alleged downstream effects on Plaintiffs themselves. *See* Defs.' Opp'n to Mot. for Prelim. Inj. at 44-45, ECF No. 26.

Defendants are therefore likely to succeed in showing that relief should have been limited to Plaintiffs' alleged injuries, rather than extended to prohibit enforcement of sanctions imposed on a nonparty foreign national residing abroad.

## II.    Defendants Will Suffer Irreparable Harm Absent a Stay.

The Supreme Court has recognized that injunctions preventing the Government from enforcing federal policies against nonparties improperly intrude upon "a coordinate branch of the Government" and inflict irreparable harm if the injunction likely exceeds the court's equitable authority. *CASA*, 606 U.S. at 859-61 (citation omitted). The D.C. Circuit likewise held that injunctions restraining Executive Branch action in areas implicating national security inflict irreparable sovereign injury because they "tie[] the government's hands" and effect a transfer of control "from the Executive to the Judiciary[.]" *Nat'l Treasury Emps. Union*, 2025 WL 1441563, at *2. Those concerns are directly implicated here because the preliminary injunction restrains the Executive Branch's implementation of sanctions imposed pursuant to presidential national security and foreign policy determinations under IEEPA.

The preliminary injunction immediately prevents the Executive Branch from exercising congressionally authorized sanctions authorities in response to what the President determined to be "an unusual and extraordinary threat to the national security and foreign policy of the United States[.]" E.O. 14203, pmbl., 90 Fed. Reg. at 9369-70. That interference constitutes irreparable sovereign harm because it limits the Executive Branch's ability to administer sanctions measures directed at foreign nationals residing abroad in furtherance of sensitive foreign policy and national security objectives. *See Regan*, 468 U.S. at 223, 242 (emphasizing the "traditional deference to executive judgment in the realm of foreign policy").

The D.C. Circuit further emphasized that such judicial interference is especially problematic in the national security context, where the President possesses "unique responsibility." *Nat'l Treasury Emps. Union*, 2025 WL 1441563, at *5-6 (citation omitted). Absent a stay, the injunction risks ongoing interference with the Executive Branch's administration of sanctions programs involving foreign nationals residing abroad and undermines the Government's foreign policy interests concerning ICC-related activity. This factor therefore strongly favors preserving the Executive Branch's ability to implement congressionally authorized sanctions authorities pending appellate review.

### III.    The Balance of Equities and Public Interest Favor a Stay.

The third and fourth stay factors require the Court to consider whether a stay will substantially injure the other parties and where the public interest lies. Those factors merge when the Government is the movant. *Nken*, 556 U.S. at 434-35. They strongly favor a stay here. The Supreme Court has emphasized that the interest in preserving national security is "an urgent objective of the highest order[,]" and that preventing the Government from pursuing that objective against foreign nationals abroad "would appreciably injure its interests[.]" *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 581-82 (2017) (citation omitted). That principle applies here because the injunction restrains

9

implementation of sanctions imposed pursuant to the President's national security and foreign policy determination under IEEPA.

Plaintiffs' alleged harms, by contrast, are largely derivative of sanctions imposed on Albanese, a nonparty foreign national residing abroad, and primarily concern economic, travel, property, and family related burdens that OFAC has already addressed through specific licenses. *See* Defs.' Opp'n to Mot. for Prelim. Inj. at 41-44. Plaintiffs' allegations further undermine any claim of imminent irreparable harm. Plaintiffs acknowledge that OFAC issued licenses authorizing transactions ordinarily incident and necessary to Albanese's role as L.C.'s parent and legal guardian, as well as transactions relating to the upkeep or sale of jointly owned property. *Id.* at 43. Plaintiffs also failed to identify any frozen account belonging to the named Plaintiffs, any denied transaction, or any imminent enforcement action directed at them. *Id.* at 22-24. And many of the asserted burdens concern alleged downstream effects on Albanese herself even though she is not a plaintiff. *Id.* at 22-23, 42-44. The equities therefore favor preserving the Executive Branch's ability to administer congressionally authorized sanctions while appellate review proceeds. *See Regan*, 468 U.S. at 242.

## IV.    In the Alternative, the Court Should Enter a Temporary Administrative Stay.

Even if the Court declines to enter a full stay pending appeal, Defendants respectfully request a temporary administrative stay of fourteen days to permit them to seek emergency relief from the D.C. Circuit. A stay preserves the status quo long enough to permit meaningful appellate review and prevent irreparable harm pending appeal. *Nken*, 556 U.S. at 427. That limited relief is warranted here. The preliminary injunction interferes with ongoing Executive Branch sanctions administration in matters implicating national security and foreign affairs. Defendants are likely to succeed on appeal for the reasons explained above and intend to seek appellate review expeditiously.

A fourteen-day administrative stay would not decide the merits or deprive Plaintiffs of meaningful relief. It would simply preserve the existing posture long enough for the D.C. Circuit to consider Defendants' emergency application. Courts in this District routinely grant temporary administrative stays to permit orderly appellate review of significant legal questions. *See, e.g.*, *Nat'l Tr. for Historic Pres. in the U.S. v. Nat'l Park Serv.*, No. 25-cv-4316 (RJL) (D.D.C. Apr. 16, 2026), Order at 3, ECF No. 73 (Leon, J.) (granting a seven-day administrative stay pending appellate proceedings); *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025) (staying a preliminary injunction "for fourteen days so that the parties may seek review in the Court of Appeals"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 111 (D.D.C. 2025) (Moss, J.) (granting summary judgment but "postpon[ing] the effective date of its class-wide order for fourteen days to permit Defendants to seek a stay pending appeal from the Court of Appeals"); *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 784 F. Supp. 3d 1316, 1359 (N.D. Cal. 2025) (Illston, J.) (staying "two components of retrospective relief for the duration of any appeal of this injunctive order" (citation omitted)); *Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. & Budget*, 791 F. Supp. 3d 29, 60 (D.D.C. 2025) (Sullivan, J.) (granting summary judgment to plaintiffs but entering an administrative stay). The Supreme Court has likewise recognized that courts may tailor interim stay relief to the circumstances of the case by granting relief in part where necessary to balance the equities while appellate review proceeds. *Int'l Refugee Assistance Project*, 582 U.S. at 580-82. A brief administrative stay is especially appropriate here given that the preliminary injunction restrains Executive Branch action grounded in national security and foreign policy determinations, and the Government seeks only a short period to obtain appellate review. *See Nken*, 556 U.S. at 433-34.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court stay the preliminary injunction pending appeal. In the alternative, Defendants respectfully request that the Court enter a

temporary administrative stay of fourteen days to permit Defendants to seek emergency relief from the D.C. Circuit.

May 15, 2026                              *Respectfully submitted,*

                                         BRETT A. SHUMATE
                                         Assistant Attorney General
                                         Civil Division

                                         YAAKOV M. ROTH
                                         Principal Deputy Assistant Attorney General
                                         Civil Division

                                         ERIC J. HAMILTON
                                         Deputy Assistant Attorney General

                                         ELIZABETH HEDGES
                                         Counsel to the Assistant Attorney General
                                         Civil Division

                                         STEPHEN M. ELLIOTT
                                         Assistant Branch Director

                                         */s/ Kian K. Azimpoor*
                                         KIAN K. AZIMPOOR (DC Bar No. 90024613)
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20005
                                         Tel: (202) 598-0860
                                         Fax: (202) 616-8470
                                         Email: kian.k.azimpoor@usdoj.gov

                                         *Counsel for Defendants*