**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| L.C., a minor child, by and through her father MASSIMILIANO CALI, | ) ) ) ) | CIVIL ACTION |
| MASSIMILIANO CALI, *Plaintiffs*, | ) ) ) ) | No. 1:26-cv-00688-RJL |
| *v.* | ) ) | DATE: May 19, 2026 |
| DONALD J. TRUMP, *et al.*, *Defendants*. | ) ) ) ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL OR, IN THE ALTERNATIVE, FOR A TEMPORARY ADMINISTRATIVE STAY**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 1

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT ............................................................................................................................. 4

I.      Defendants Are Not Likely to Succeed on Appeal. ........................................................ 4

        A.      Francesca's designation clearly violates the First Amendment. ............................ 5

        B.      This Court should reject Defendants' attempt to relitigate the "substantial
                connections" test. .................................................................................................. 6

        C.      Defendants' reliance on vague assertions of national security do not alter the
                correctness of this Court's decision on the merits. ............................................... 8

        D.      The preliminary injunction is appropriately tailored and is not "overbroad." ...... 10

II.     Defendants' alleged harms are regurgitations of complaints already addressed and do not
        present any concrete issues that would call this Court's decision into question ............... 12

III.    The equities and public interest sit squarely with Plaintiffs, as this Court already found in
        issuing the preliminary injunction. .................................................................................. 13

IV.     An administrative stay is not warranted ........................................................................... 14

CONCLUSION ........................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Aqeel v. Paulson*,
  568 F. Supp. 2d 64 (D.D.C. 2008) ........................................................................................6

*Al-Aulaqi v. Obama*,
  727 F. Supp. 2d 1 (D.D.C. 2010) .......................................................................................10

*Bhd. of Ry. & S.S. Clerks v. Nat'l Mediation Bd.*,
  374 F.2d 269 (D.C. Cir. 1966) ............................................................................................3

*Carpenters Indus. Council v. Zinke*,
  854 F.3d 1 (D.C. Cir. 2017) ..............................................................................................14

*CREW v. FEC*,
  904 F.3d 1014 (D.C. Cir. 2018) ..........................................................................................4

*Fed. Educ. Ass'n v. Trump*,
  No. 25-5303, 2025 WL 2738626 (D.C. Cir. Sept. 25, 2025) .............................................13

*Global Health Council v. Trump*,
  153 F.4th 1 (D.C. Cir. 2025) ..............................................................................................11

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) ...................................................................................1, 8, 14

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) .............................................................................................................4

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) .................................................................................................................8

*Ibrahim v. DHS*,
  669 F.3d 983 (9th Cir. 2012) ...............................................................................................7

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012) ...........................................................................................7

*Karem v. Trump*,
  960 F.3d 656 (D.C. Cir. 2020) ...........................................................................................13

*Learning Resources, Inc. v. Trump*,
  784 F. Supp. 3d 209 (D.D.C. 2025), *vacated & remanded*, 146 S. Ct. 628
  (2026) ..................................................................................................................................15

*Lopez Bello v. Smith*,
    651 F. Supp. 3d 20 (D.D.C. 2022), *aff'd sub nom. Bello v. Gacki*, 94 F.4th
    1067 (D.C. Cir. 2024) .................................................................................................6, 7

*Miot v. Trump*,
    No. 26-5050, 2026 WL 659420 (D.C. Cir. Mar. 3 2026) ........................................................13

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001) .................................................................................................6, 7

*National Treasury Employees Union v. Trump*,
    2025 WL 1441563, No. 25-5157 (D.C. Cir. May 16, 2025) .........................................8, 9, 12

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................................4, 15

*NRA v. Vullo*,
    602 U.S. 175 (2024) .................................................................................................5

*Olenga v. Gacki*,
    507 F. Supp. 3d 260 (D.D.C. 2020) .................................................................................................6

*People's Mojahedin Org. of Iran v. Dep't of State*,
    327 F.3d 1238 (D.C. Cir. 2003) .................................................................................................6, 7

*PETA v. Gittens*,
    215 F. Supp. 2d 120 (D.D.C. 2002) .................................................................................................8

*Pursuing America's Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) .................................................................................................1

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .................................................................................................5

*Refugee & Immigrant Center for Education & Legal Services v. Noem*,
    793 F. Supp. 3d 19 (D.D.C. 2025), *aff'd*, No. 25-5243, 2026 WL 1110616
    (D.C. Cir. Apr 24, 2026) .................................................................................................15

*Rona v. Trump*,
    797 F. Supp. 3d 278 (S.D.N.Y. 2025) .................................................................................................13

*Russian Volunteer Fleet v. United States*,
    282 U.S. 481 (1931) .................................................................................................7

*Slaughter v. Trump*,
    No. 25-5261, 2025 WL 2551247 (D.C. Cir. Sept. 2, 2025) .................................................4

*Smith v. Trump*,
   791 F. Supp. 3d 90 (D. Me. 2025) ........................................................................................13

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)................................................................................................10, 11, 12

*Turner v. U.S. Agency for Glob. Media*,
   502 F. Supp. 3d 333 (D.D.C. 2020).....................................................................................10

*United States v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 988 (D.D.C. 2006) .......................................................................................3

*United States v. Robel*,
   389 U.S. 258 (1967)...........................................................................................................8, 9

*United States v. Texas*,
   144 S. Ct. 797 (2024) (Barrett, J., concurring) ...............................................................14, 15

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990)...............................................................................................................6

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*,
   784 F. Supp. 3d 127 (D.D.C. 2025) .....................................................................................10

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985)................................................................................................4

**Other Authorities**

OFAC, International Criminal Court-Related Sanctions (May 15, 2026),
   https://ofac.treasury.gov/sanctions-programs-and-country-
   information/international-criminal-court-related-sanctions......................................................3

OFAC, Sanctions List Search,
   https://sanctionssearch.ofac.treas.gov/Details.aspx?id=54707 (last updated
   May 19, 2026)........................................................................................................................3

## INTRODUCTION

Defendants ask this Court to undo, pending appeal, a carefully crafted preliminary injunction that protects an American child and her family from ongoing constitutional, personal, and economic harms. They recycle the same arguments this Court rejected without even attempting to engage with the reasons this Court rejected them. They give this Court no reason to reconsider its judgments that the particular, material, and constitutional harms Plaintiffs have suffered and continue to suffer constitute irreparable harm. And Defendants identify no concrete irreparable harm that they will suffer if Francesca remains off the OFAC list for the duration of an appeal.

The equities and public interest overwhelmingly favor Plaintiffs. Every day of a stayed injunction would be another day that an American child is barred from her own country, that she and her parents face potential felony liability for ordinary acts of family life, that the rights of American property holders over their property are forfeited, that free association is frustrated, and that protected speech is chilled by a sanctions designation that this Court correctly held nakedly violates the First Amendment. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citation omitted). And "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). Defendants' motion for a stay pending appeal should be denied.

## BACKGROUND

Plaintiffs L.C. and Massimiliano Cali ("Max") are the minor daughter and husband of Francesca Albanese ("Francesca"), a well-known scholar and expert in areas of human rights and the Middle East. Mem. Op. (Dkt. 48) at 2. L.C. is a U.S. citizen, while Max and Francesca are Italian citizens. *Id.* On July 9, 2025, Defendant Marco Rubio designated Francesca for sanctions under Executive Order ("EO") 14203, which invokes the President's authority under the

1

International Emergency Economic Powers Act ("IEEPA") to sanction foreign persons the Administration decides have "directly engaged in" or assisted "any effort by the [International Criminal Court ("ICC")] to investigate, arrest, detain, or prosecute" nationals of the United States or its allies, including Israel. Mem. Op. at 4 (citing EO 14203). As Defendant Rubio publicly acknowledged, the putative bases for the designation of Francesca were her public recommendations to the ICC and written correspondence to entities that included American companies. *Id.* at 5. Notably, Francesca, a United Nations special rapporteur, does not work for the ICC or have any ability to direct its activity. *Id.* at 3, 19. Nonetheless, Defendants sanctioned her for, as this Court noted, "offering her non-binding *opinion and recommendation*." *Id.* at 19.

The effects of the sanctions on Plaintiffs and Francesca have been severe and include the blocking of their home, which is located in this district; the inability, either legally or practically, to enter the United States (including for U.S. citizen L.C.); the total severance or severe degradation of deep, standing professional ties and opportunities at institutions such as Georgetown and Columbia; the barring of Max from his employer's headquarters and his suspension from existing positions due to pressures brought on by the sanctions; the debanking of Francesca and the revocation of her health care coverage; and perhaps most damningly, the full invasion of the family's relationships under the sweeping scope of the sanctions and their threat of civil or criminal liability. *See id.* at 6-7. The reason for this? As this Court put it in its May 13 order: "Albanese has done nothing more than speak!" *Id.* at 26.

On May 13, this Court enjoined Defendants "from implementing or enforcing the designation," May 13, 2026 Order (Dkt. 49), and in support of its conclusions, issued a 26-page opinion thoroughly assessing all the legal issues and objections raised by the parties, Mem. Op.. This Court did not grant a temporary stay of its order, or grant Defendants' request to deny

2

Plaintiffs complete relief, finding that "Albanese's designation as an SDN is the source of plaintiffs' harm. So long as she is designated as such, the familial relationship between Albanese, Cali, and L.C. will be burdened." Mem. Op. at 25 n.5.

On May 15, 2026, Defendants filed a notice of appeal and moved this Court to stay its preliminary injunction. Not. of App. (Dkt. 50); Mot. to Stay (Dkt. 51). As of the time of this filing, Defendants have taken no steps to comply with this Court's order, save for a public notice stating:

> Alert: Ongoing Litigation - *L.C. et al. v. Trump et al., No. 1:26-cv-688 (D.D.C.)*. On May 13, 2026, in *L.C. et al. v. Trump et al.*, No. 1:26-cv-688 (D.D.C.), the U.S. District Court for the District of Columbia issued an order enjoining the U.S. Department of State, U.S. Department of the Treasury, and U.S. Department of Justice, as well as their "officers, agents, servants, employees, attorneys, and all other persons in active concert" with them, from, among other things, implementing or enforcing the designation of Francesca Albanese as a designated foreign national under Section 1(a)(ii)(A) of Executive Order 14203. The designation of Francesca Albanese is not being implemented or enforced while this order remains in effect.

OFAC, International Criminal Court-Related Sanctions (May 15, 2026).[1] Critically, however, as of the time of this filing, Francesca remains on the OFAC Sanctions List,[2] and anyone who searches for her on the list or uses standard database queries for sanctions compliance would likely not, as a practical matter, be aware of the injunction against implementing her designation.

<b>LEGAL STANDARD</b>

"[A] stay pending appeal is always an extraordinary remedy." *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988, 990 (D.D.C. 2006) (quoting *Bhd. of Ry. & S.S. Clerks v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966)). The moving party thus faces a "heavy

---

[1]https://ofac.treasury.gov/sanctions-programs-and-country-information/international-criminal-court-related-sanctions.

[2] OFAC, Sanctions List Search, https://sanctionssearch.ofac.treas.gov/Details.aspx?id=54707 (last updated May 19, 2026).

3

burden" to justify its request. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "A stay is an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). The familiar four-factor *Nken* test requires Defendants to (1) make a "strong showing" of likelihood of success on the merits; (2) demonstrate irreparable injury absent a stay; (3) show the stay would not substantially injure other parties; and (4) establish that the public interest favors a stay. 556 U.S. at 433–34; *see also Slaughter v. Trump*, No. 25-5261, 2025 WL 2551247 (D.C. Cir. Sept. 2, 2025) (denying stay where government failed to make required showings). The first two *Nken* factors (*i.e.*, likelihood of success on the merits and irreparable harm) are the "most critical," *Nken*, 556 U.S. at 434.

## ARGUMENT

### I.    Defendants Are Not Likely to Succeed on Appeal.

A failure to make a "strong showing" that the district court erred is "an arguably fatal flaw" when seeking to stay an order pending appeal. *CREW v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018). In its May 13 opinion, this Court explicitly found "that plaintiffs are likely to succeed on their First Amendment claim," that "Albanese's designation under E.O. 14203 . . . violates the First Amendment," that Plaintiffs have endured and continue to endure irreparable harm, and that the balance of equities and public interest favor Plaintiffs over the government. Mem. Op. at 15, 21–26. The Court also explicitly rejected Defendants' contentions that Francesca lacks First Amendment rights, that Defendants' putative national security and foreign relations concerns warranted a content-based regulation of speech, and that enjoining Francesca's designation is beyond what is necessary to afford Plaintiffs complete relief. *Id.* at 15–18, 20–22, 25 n.5. Undeterred, the government presses this Court to ignore its holdings on these *same* arguments and

4

to stay its injunction precisely for the reasons this Court just rejected. The government has made no showing, let alone a "strong showing," that it is likely to prevail on the merits.

### A.   Francesca's designation clearly violates the First Amendment.

Defendants have never hidden their reasons for targeting Francesca. Their own press release explains that she was sanctioned for "recommending that the ICC" take action with respect to certain Israeli officials, "writing threatening letters," "making extreme and unfounded accusations and recommending the ICC pursue investigations and prosecutions," Compl., Ex. B (Dkt. 10-1). Tellingly, Defendants' opposition to Plaintiffs' motion for a preliminary injunction used no less than eleven synonyms for "speech" to describe Francesca's actions for which she was sanctioned. Opp'n to Mot. for PI at 8-10 (Dkt. 26). And as EO 14203 makes clear on its face, it is a content-based restriction: the only speech it attacks is that which benefits the ICC. This Court had no trouble concluding in its May 13 opinion that "Secretary Rubio's designation of Albanese under E.O. 14203 plainly regulates Albanese's speech" and that the "effect of Albanese's designation is to 'punish' and thereby 'suppress disfavored expression.'" Mem. Op. at 19–20 (citing *NRA v. Vullo*, 602 U.S. 175, 188 (2024)).

Because of this, this Court rightfully scrutinized the designation to see if it was "narrowly tailored to serve compelling state interests." *Id.* at 21 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). The Court correctly concluded it was not: "even assuming the validity of defendants' stated [foreign policy] interests, the sanctioning of Albanese under E.O. 14203 is hardly 'narrowly tailored' to further those ends . . . defendants are punishing Albanese for merely *recommending* that the ICC prosecute certain individuals—a non-binding opinion that does not compel any action on the part of the ICC." *Id.* at 21. By designating Francesca, Defendants have effectively staked a claim that they can sanction anyone whose opinion about the ICC they disagree with. Such an expansive censorial power is offensive to core American values and traditions. This

Court's holding is well within settled precedent, and Defendants have made no showing, let alone a strong showing, that they are likely to prevail in having this Court's decision overturned.

       **B.      This Court should reject Defendants' attempt to relitigate the "substantial connections" test.**

This Circuit's established framework to determine whether a non-citizen is entitled to the protections of the constitution is whether the individual has "developed substantial connections with this country." *Lopez Bello v. Smith*, 651 F. Supp. 3d 20, 37 (D.D.C. 2022), *aff'd sub nom. Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024). This inquiry is a "fact-dependent, case-by-case" test. *Olenga v. Gacki*, 507 F. Supp. 3d 260, 274 (D.D.C. 2020). This Court should reject Defendants' oft repeated but incorrect chant that Francesca has no First Amendment rights because she is a foreign national who resides abroad. Mot. at 1, 2, 4, 5, 8, 9, 10. The entire array of one's voluntary connections to the United States matters, and as this Court held, Max and Francesca have more than enough.

The "substantial connections" test looks beyond citizenship and physical residence to "presence *or* property," *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1241 (D.C. Cir. 2003) (citing *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 201–02 (D.C. Cir. 2001) ("NCOR")) (emphasis added), as well as other forms of "voluntary connection" to the United States, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). Courts in this district have found other such connections in ties as varied as having a U.S. citizen child, residence in the United States, a spouse with residence and work in the United States, holding a U.S. visa, *Lopez Bello*, 651 F. Supp. 3d 20 at 38; routine travel to the United States, acquiring U.S. property, being an officer of a U.S. company, *Al-Aqeel v. Paulson*, 568 F. Supp. 2d

64, 70 (D.D.C. 2008); and even having "an interest in a small bank account," *NCOR*, 251 F.3d at 201.

In the case of Francesca and Max, this Court found that they had "substantial connections" because they own a home in this district, pay their taxes,[3] have a U.S.-citizen daughter born in this district, and maintain ongoing professional and academic ties to U.S. institutions in this district, among other lifelong community ties. Mem. Op. 16–17. These connections meet and exceed the connections that have sufficed in other cases. *See NCOR*, 251 F.3d at 201; *Lopez Bello*, 651 F. Supp. 3d at 38; *Kadi v. Geithner*, 42 F. Supp. 3d 1, 25–26 (D.D.C. 2012).

Defendants' argument to the contrary depends on a misreading of *NCOR* as requiring contemporaneous physical presence. Mot. at 5–6. But the D.C. Circuit in *NCOR* expressly declined to set per se thresholds for "substantial connections," 251 F.3d at 202, and subsequent cases have made clear that property and other voluntary ties to the United States suffice, *see People's Mojahedin*, 327 F.3d at 1241. *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 491–92 (1931) and *Ibrahim v. DHS*, 669 F.3d 983, 994–97 (9th Cir. 2012) further confirm that physical presence is not a prerequisite where the government has reached out to burden a foreign national's interests in U.S. property. This Court's holding is therefore well within settled precedent, and

---

[3] This Court also stated that Francesca is continuing to pay a mortgage on this home. Mem. Op. at 16–17. While it is true that Max and Francesca had a mortgage with a U.S. bank on this home, that mortgage has since been fully paid and they are the 100% owners of their property. Counsel can further represent that they continue to pay the HOA fees on their home, and their continued payment of property taxes (most recently a few months ago) is a matter of public record.

Defendants have made no showing, let alone a strong showing, that they are likely to prevail in having this Court's decision overturned.

### C.    Defendants' reliance on vague assertions of national security do not alter the correctness of this Court's decision on the merits.

Defendants protest that "the preliminary injunction restrains the Executive Branch's use of the very sanctions authority Congress made available to address foreign threats implicating national security and foreign policy" and thus "raises significant separation of powers concerns in the areas of national security and foreign affairs." Mot. at 6 (cleaned up). Setting aside Plaintiffs' position that Defendants' abuse of IEEPA to sanction Francesca is both a violation of the plain wording of IEEPA and the Berman Amendments, "no deference is warranted, in foreign affairs or otherwise, when Defendants act in violation of [the constitution]. And given that the only concrete interest Defendants seek to vindicate is their interest in suppressing political speech, 'the public interest favors a preliminary injunction whenever First Amendment rights have been violated.'" PI Mot. Reply at 9 (quoting *PETA v. Gittens*, 215 F. Supp. 2d 120, 128 (D.D.C. 2002)). This Court found that enforcement of EO 14203 against Francesca is likely unconstitutional, and "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon*, 721 F.3d at 653.

As convenient as it would be for Defendants, talismanic invocations of "national security" do not handwave away constitutional protections. *See United States v. Robel*, 389 U.S. 258, 263–64 (1967). As the Supreme Court has admonished, and this Court has emphasized, "concerns of national security and foreign relations do not warrant abdication of the judicial role." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010).

Defendants invoke *National Treasury Employees Union v. Trump*, 2025 WL 1441563, No. 25-5157 (D.C. Cir. May 16, 2025) ("*NTEU*") as support for their position that an injunction in the

8

national security context is forbidden. Mot. at 6–7. But in *NTEU*, the Circuit stayed the preliminary injunction that enjoined the federal government from taking national security-based personnel actions against millions of federal employees. Unlike here, the preliminary injunction in *NTEU* enjoined an executive order *in toto*, including "the *entire* implementation process, including preparatory work," and "the President's control over the decision to pause implementation of the Executive Order and, by consequence, his flexibility to respond to future developments, at least without returning to the district court. In other words, the preliminary injunction ties the government's hands." *NTEU*, 2025 WL 1441563, at *2. The Circuit did not blindly defer to "incantations" of national security. *Robel*, 389 U.S. at 263. It granted a stay because the government marshalled logic and evidence to show that the injunction was overbroad in ways that impaired core national security staffing decisions.

This Court's preliminary injunction, by contrast, does not enjoin, or even take a position on, EO 14203 itself. All this Court reached, and all this Court enjoined, was the illegal application of that executive order in this specific case. The preliminary injunction does not prevent, or even contemplate, any preparatory work done by the government or any decisions by the Executive to use the order to implement sanctions in response to future developments. Instead, all the preliminary injunction prohibits is Defendants' use of EO 14203 to violate Francesca's constitutional rights and irreparably harm her family. And Defendants have come forward with no logic or evidence to show how this Court's injunction actually impairs the nation's national security needs. This Court's holding is therefore well within settled precedent, and Defendants

9

have made no showing, let alone a strong showing, that they are likely to prevail in having this Court's decision overturned.

**D.        The preliminary injunction is appropriately tailored and is not "overbroad."**

Defendants' argument that the preliminary injunction is "overbroad" is premised on the contention that, though the Court enjoined Francesca's designation, "[Francesca] herself is not a plaintiff." Mot. at 8. Defendants, in other words, continue to press this Court to hold that third-party standing as a doctrine does not exist, and argue by assertion against this Court's finding of third-party standing with no legal support.

As Courts in this district have repeatedly recognized, a third party whose rights and claims are at issue via third-party standing is a "real party in interest." *See*, *e.g.*, *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 145 (D.D.C. 2025) (*Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 31 (D.D.C. 2010)); *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 362 (D.D.C. 2020) (also citing *Al-Aulaqi*). Francesca is not the "nonparty" stranger to this litigation that Defendants portray.

Defendants rest their "overbreadth" argument on *CASA*. But this is not a case about "universal injunctions" and Defendants' reliance on *CASA* is misplaced to the point of uncandor. As the Supreme Court put it, a "universal injunction prohibits the Government from enforcing the law against *anyone*, *anywhere*." *Trump v. CASA, Inc.*, 606 U.S. 831, 838 n.1 (2025). Here, this Court's injunction reaches *three* people, who are all members of the same family. Defendants' only complaint is that *one* of those people (Francesca) should not matter because she is not a named plaintiff. But, as this Court held, her claims are properly before the Court via the well-established doctrine of third-party standing.

Third-party standing was not at issue in *CASA*. And Defendants do not even attempt to explain why this Court erred in finding third-party standing on the facts of this case. The phrase

"third-party standing" does not appear once anywhere in Defendants' motion. But Defendants cannot make third-party standing go away by pretending it does not exist. In fact, in *CASA*, the Supreme Court went out of its way to differentiate cases such as this one from the circumstances of prohibited "universal injunctions." In walking through the history of the injunctive power and the Court's "early refusals to grant relief to non-parties," the Court specifically distinguished non-party relief from proper grants of injunctive relief in which a party was *constructively* present. *CASA*, 606 U.S. at 844 ("It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it. This principle is fundamental.") (citation omitted). By virtue of third-party standing, Francesca is at the very least "constructively" before the Court.

Defendants also fail to reckon with the ways in which *CASA* reaffirmed the importance of "complete relief," *i.e.*, the need for injunctive relief to vindicate the rights of the parties. 606 U.S. at 852. Even if the Court accepted Defendants' mistaken assertion that Francesca's rights and causes of action should be ignored entirely, this Court squarely held that the injunction was both necessary and appropriate because, "Albanese's designation as an SDN is the source of plaintiffs' harm." Mem. Op. at 25 n.5. Defendants offered no workable alternative to the relief Plaintiffs sought. Defendants cannot, for example, explain how the government could continue "implementing or enforcing" Francesca's designation while simultaneously sparing her U.S.-citizen daughter from the criminal exposure, family separation, and travel restrictions that flow from that designation. *CASA* forbids universal relief that binds and benefits non-parties. It does not require courts to enter incomplete relief that fails to remedy the parties' actual injuries. *See Global Health Council v. Trump*, 153 F.4th 1, 45 n.10 (D.C. Cir. 2025) (Pann, J., dissenting)

11

(affirming injunction "no broader than necessary to provide complete relief to the plaintiffs")

(citation omitted).

> This Court even cited *CASA* for these principles in the May 13 order:

> > It is unclear how defendants could limit the impact of Albanese's designation as to plaintiffs while otherwise enforcing the designation. . . . So long as she is designated as such, the familial relationship between Albanese, Cali, and L.C. will be burdened. Thus, to provide 'complete relief to the plaintiffs before the court,' *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025), I must enjoin Albanese's designation in full.

Mem. Op. at 25 n.5. Enjoining Francesca's designation is not relief to a "non-party," much less a

"universal injunction." Francesca is before this Court along with her family and enjoining her

designation is the only relief that completely addresses the Plaintiffs' unrebutted injuries. This

Court's holding is therefore well within settled precedent, and Defendants have made no showing,

let alone a strong showing, that they are likely to prevail in having this Court's decision overturned.

**II.     Defendants' alleged harms are regurgitations of complaints already addressed and do not present any concrete issues that would call this Court's decision into question.**

If Defendants prevail on appeal, they can return Francesca to the OFAC List with just a

few mouse clicks. Whatever harm this Court's injunction imposes upon them, in other words, can

be *repaired* should they ultimately prevail on the merits of their appeal. Defendants will suffer no

harm if Francesca's return to the OFAC List must await the ordinary course of appellate review.

Defendants fail to present a single concrete harm that will befall the government if the

injunction remains in place during the pendency of their appeal for one simple reason: there are

none. Defendants repackage their argument that *CASA* and *NTEU,* coupled with abstract claims of

"national security," permit them to continue to violate the constitution, and not being able to violate

the constitution irreparably harms them right now. But "when faced with requests for emergency

stays of considered lower-court orders, we have been appropriately skeptical of the idea that the

government is irreparably injured 'any time' it is enjoined by a court." *Miot v. Trump*, No. 26-5050, 2026 WL 659420, at \*2 (D.C. Cir. Mar. 3 2026) (per curiam) (order denying motion for stay pending appeal). Defendants' "generalized assertions of injury," in short, are insufficient to support a stay pending appeal. *Fed. Educ. Ass'n v. Trump*, No. 25-5303, 2025 WL 2738626, at \*3 (D.C. Cir. Sept. 25, 2025) (per curiam).

Nor does the government explain why the "sovereign injury" it now suffers from a preliminary injunction against a single designation under EO 14203 is greater, more urgent, and more irreparable than the injury it suffered after EO 14203's enforcement was enjoined entirely on First Amendment grounds in *Rona v. Trump*, 797 F. Supp. 3d 278 (S.D.N.Y. 2025) (permanent injunction) and *Smith v. Trump*, 791 F. Supp. 3d 90 (D. Me. 2025) (preliminary injunction). The government did not seek a stay pending appeal in those cases, despite the injunctions being far broader than the injunction entered by this Court. Indeed, the government did not appeal.

Francesca's designation has always been an exercise in punishing a speaker Defendants do not like. There is no "sovereign injury," let alone an irreparable one, from being enjoined from violating the First Amendment. This preliminary injunction has "tied the government's hands" only to the extent that the government wants to engage in unconstitutional conduct.

## III.   The equities and public interest sit squarely with Plaintiffs, as this Court already found in issuing the preliminary injunction.

Defendants' claims about Plaintiffs' harms and their efforts to mitigate them are untrue. As this Court held, their harms are not "largely derivative" of Francesca's harms. They are their own. This Court issued an injunction because Francesca's unlawful designation imposes concrete, particularized harms on Plaintiffs' freedom of travel, property rights, and their constitutionally protected familial relations. Mem. Op. at 22–23. Unlike the abstract harms Defendants claim, each of those harms to Plaintiffs is "ongoing" and "concrete." *Karem v. Trump*, 960 F.3d 656, 667 (D.C.

13

Cir. 2020) ("[V]iolation of a constitutional right, whether ongoing or prospective, constitutes irreparable injury for purposes of seeking equitable relief.") (cleaned up).

OFAC's specific licenses do nothing to mitigate these harms, and in many respects make them worse. The specific licenses do not contemplate travel at all. And for the other two matters, this Court said it best:

> Undaunted, defendants point to the two limited licenses—the Property License and the Parental License—to argue that Cali and L.C. remain unharmed! Opp'n at 18-21. But these licenses apply only to "U.S. persons," so they do not excuse Cali from the ramifications of Albanese's designation. And there is no dispute that the Property License acts to freeze all proceeds from the sale of Cali's property in Washington, DC by placing those proceeds in a "blocked account." Property License § II; Cali Decl. ¶ 13. Even apart from the burdening of Cali's property interests, that bare "economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017).

Mem. Op. at 11.

Lastly, Defendants argue that the public interest favors a stay because of "national security." But they cannot escape the fact, and do not even attempt to, that "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon*, 721 F.3d st 653. That Defendants remain undaunted does not warrant a stay pending appeal.

## IV.    An administrative stay is not warranted.

Defendants alternatively request a fourteen-day administrative stay. Mot. 10–11. They have not justified one. Administrative stays are docket management devices used to minimize harm to the parties while the Court requires additional time to deliberate. *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). Courts sometimes describe the goals of an administrative stay as that of maintaining the "status quo," which is what Defendants posit here. As Justice Barret has pointed out, however, the better articulation is that administrative stays are meant "to minimize harm" and that, in practice, such stays effectively "reflect[] a first-blush judgment about the

14

relative consequences of staying the . . . judgment versus allowing it go into effect" and are influenced by the *Nken* factors even if not explicitly controlled by them. *Id.* Generic invocations of the "status quo" and Defendants' interests are insufficient. *Id*. at 798 n.2 (Barrett, J., concurring). And Defendants point to no authority requiring this Court to grant administrative relief that the Circuit is capable of granting if and when Defendants file a proper motion.

Defendants' cited cases involved different procedural postures. *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *vacated & remanded*, 146 S. Ct. 628 (2026), and *Refugee & Immigrant Center for Education & Legal Services v. Noem*, 793 F. Supp. 3d 19 (D.D.C. 2025), *aff'd*, No. 25-5243, 2026 WL 1110616 (D.C. Cir. Apr 24, 2026), both involved sweeping nationwide policy injunctions, where short administrative stays helped manage the orderly transition of large-scale enforcement programs. This case involves narrowly tailored relief protecting two specific Plaintiffs from continuing constitutional injury to their family. Each day of additional delay inflicts further irreparable harm on those Plaintiffs while serving no demonstrated government interest.

If Defendants believe the equities favor a stay, they may seek one from the D.C. Circuit, which has well-established procedures for ruling on emergency motions promptly. There is no reason for this Court to prolong Plaintiffs' well established constitutional injury in the meantime.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion for Stay Pending Appeal or, in the Alternative, for a Temporary Administrative Stay.

May 19, 2026
Washington, D.C.

/s/ *Michel Paradis*
Michel Paradis (D.C. Bar No. 499690)
Jason Wright (D.C. Bar No. 1029983)
Patrick Fields (Texas Bar No. 24146721)*
Scott Johnston (D.C. Bar No. 90019285)*

15

STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
mparadis@steptoe.com
jwright@steptoe.com
pfields@steptoe.com
scjohnston@steptoe.com
Telephone: (212) 506-3900
Facsimile: (202) 429-3902

*Attorneys for Plaintiffs*

*admitted *pro hac vice*

16