APPEAL,TYPE−D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:26−cv−00688−RJL</u>

L.C. et al v. TRUMP et al
Assigned to: Judge Richard J. Leon
Cause: 28:1331 Fed. Question

Date Filed: 02/25/2026
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**L.C.**
*a minor child, by and through her father*
*MASSIMILIANO CALI*

represented by **Jason D. Wright**
STEPTOE LLP
1114 Avenue of the Americas
35th Floor
New York, NY 10036
212−508−8844
Email: <u>jwright@steptoe.com</u>
*ATTORNEY TO BE NOTICED*

**Patrick Fields**
STEPTOE LLP
717 Texas Avenue
Ste 2800
Houston, TX 77002
713−221−2300
Email: <u>pfields@steptoe.com</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Johnston**
STEPTOE LLC
1330 Connecticut Avenue NW
Washington, DC 20036
202−429−1379
Email: <u>scjohnston@steptoe.com</u>
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michel Paradis**
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
212−506−3900
Email: <u>michel.paradis.esq@gmail.com</u>
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**MASSIMILIANO CALI**

represented by **Jason D. Wright**
(See above for address)

1

*ATTORNEY TO BE NOTICED*

**Patrick Fields**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Johnston**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michel Paradis**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **DONALD J. TRUMP**<br>*President of the United States* | represented by | **Elizabeth Themins Hedges**<br>DOJ−Civ<br>950 Pennsylvania Ave NW<br>Washington, DC 20530<br>771−209−1978<br>Email: elizabeth.t.hedges@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Stephen McCoy Elliott**
U.S. DEPARTMENT OF JUSTICE
1100 L Street, N.W.
Washington, DC 20530
(202) 353−0889
Fax: (202) 616−8470
Email: stephen.m.elliott@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Hamilton**
U.S. DEPARTMENT OF JUSTICE
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530
202−514−2000
Email: eric.hamilton@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Kian Kevin Azimpoor**
DOJ−Civ
1100 L Street NW
Washington, DC 20005

202−598−0860
Email: kian.k.azimpoor@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA BONDI**                    represented by    **Elizabeth Themins Hedges**
*United States Attorney General*                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen McCoy Elliott**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Eric Hamilton**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kian Kevin Azimpoor**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**SCOTT BESSENT**                    represented by    **Elizabeth Themins Hedges**
*Secretary of the Treasury*                           (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen McCoy Elliott**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Eric Hamilton**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Kian Kevin Azimpoor**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**MARCO RUBIO**                    represented by    **Elizabeth Themins Hedges**
*Secretary of State*                                  (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Stephen McCoy Elliott**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*

3

*ATTORNEY TO BE NOTICED*

**Eric Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kian Kevin Azimpoor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**NANCY HOLLANDER**                represented by   **Nancy Hollander**
                                                   FREEDMAN BOYD HOLLANDER
                                                   GOLDBERG URIAS & WARD, P.A.
                                                   20 First Plaza Center, NW
                                                   Suite 700
                                                   Albuquerque, NM 87102
                                                   505−842−9960
                                                   Fax: 505−842−9960
                                                   Email: nh@fbdlaw.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Movant**

**UNITED NATIONS WATCH**           represented by   **Andrew Astuno**
                                                   SEIDEN LAW LLP
                                                   1701 Pennsylvania Avenue
                                                   NW−200
                                                   Washington, DC 20006
                                                   202−773−0401
                                                   Email: aastuno@seidenlaw.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Movant**

**SUSAN M. AKRAM**                 represented by   **Lawrence S. Lustberg**
                                                   FBT GIBBONS LLP
                                                   One Gateway Center
                                                   Newark, NJ 07102
                                                   973−596−4731
                                                   Email: llustberg@fbtgibbons.com
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Richard Randolph Renner**
                                                   THE NOBLE LAW
                                                   700 Spring Forest Road, Suite 205
                                                   Ste 205
                                                   Raleigh, NC 27609
                                                   919−736−6381

4

Email: rrenner@igc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael R. Noveck**
FBT GIBBONS LLP
One Gateway Center
Newark, NJ 07102
973−596−4837
Fax: 973−639−6399
Email: mnoveck@fbtgibbons.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**SANDRA L. BABCOCK**                    represented by    **Lawrence S. Lustberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard Randolph Renner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael R. Noveck**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**ASLI U. BALI**                    represented by    **Lawrence S. Lustberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard Randolph Renner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael R. Noveck**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**THOMAS BECKER**                    represented by    **Lawrence S. Lustberg**
(See above for address)

5

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard Randolph Renner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael R. Noveck**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**JAMES CAVALLARO**                    represented by    **Lawrence S. Lustberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard Randolph Renner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael R. Noveck**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**DEMOCRACY FOR THE ARAB**            represented by    **Laura G. Ferguson**
**WORLD NOW, INC.**                                       MILLER & CHEVALIER, CHARTERED
900 Sixteenth Street, NW
Washington, DC 20006
(202) 626−5567
Fax: (202) 626−5801
Email: lferguson@milchev.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**FOUNDATION FOR MIDDLE EAST**        represented by    **Laura G. Ferguson**
**PEACE**                                                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

represented by

**AMERICAN CENTER FOR LAW**
**AND JUSTICE**
201 Maryland Ave NE
Washington, DC 20001

**Nathan Jeremiah Moelker**
ACLJ
201 Maryland Ave NE
Washington, DC 20002
724−987−8477
Email: nmoelker@aclj.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**JVP ACTION**                    represented by   **Bina Ahmad**
HADSELL STORMER RENICK & DAI
128 N. Fair Oaks Ave.
Pasadena, CA 91103
608−658−4228
Email: bahmad@hadsellstormer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/25/2026 | 1 | COMPLAINT against SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP ( Filing fee $ 405 receipt number BDCDC−12265643) filed by L.C., MASSIMILIANO CALI. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Donald J. Trump, # 3 Summons Pamela Bondi, # 4 Summons Scott Bessent, # 5 Summons Marco Rubio, # 6 Summons U.S. Attorney's Office for the District of Columbia, # 7 Summons Attorney General for the United States, # 8 Exhibit Table of Exhibits, # 9 Exhibit A, # 10 Exhibit B, # 11 Exhibit C, # 12 Exhibit D, # 13 Exhibit E)(Paradis, Michel) (Entered: 02/25/2026) |
| 02/25/2026 | 2 | SEALED DOCUMENT filed by MASSIMILIANO CALI, L.C. re 1 Complaint,, (This document is SEALED and only available to authorized persons.)(Paradis, Michel) (Entered: 02/25/2026) |
| 02/25/2026 | 3 | MOTION for Preliminary Injunction by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit A (Sidoti Decl.), # 4 Certificate of Service)(Paradis, Michel) (Entered: 02/25/2026) |
| 02/25/2026 | 4 | NOTICE of Appearance by Jason D. Wright on behalf of All Plaintiffs (Wright, Jason) (Entered: 02/25/2026) |
| 02/25/2026 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Patrick Fields, Filing fee $ 100, receipt number ADCDC−12265667. Fee Status: Fee Paid. by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Paradis, Michel) (Entered: 02/25/2026) |
| 02/25/2026 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Scott Johnston, Filing fee $ 100, receipt number ADCDC−12265669. Fee Status: Fee Paid. by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Paradis, Michel) (Entered: 02/25/2026) |
| 02/26/2026 |  | Case Assigned to Judge Richard J. Leon. (znmw) (Entered: 02/26/2026) |

7

| 02/26/2026 | 7 | SUMMONS (5) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 02/26/2026) |
|---|---|---|
| 02/27/2026 | | MINUTE ORDER. Regarding plaintiffs' 3 Motion for Preliminary Injunction, the parties are hereby ORDERED to file a joint status report proposing a briefing schedule to govern the preliminary injunction proceedings. The parties should also propose three possible dates for a preliminary injunction hearing. The report shall be filed by March 4, 2026, at 5:00pm. SO ORDERED. Signed by Judge Richard J. Leon on 2/27/2026. (lcrjl3) (Entered: 02/27/2026) |
| 02/27/2026 | 8 | NOTICE of Appearance by Elizabeth Themins Hedges on behalf of All Defendants (Hedges, Elizabeth) (Entered: 02/27/2026) |
| 03/02/2026 | 9 | NOTICE of Appearance by Kian Kevin Azimpoor on behalf of All Defendants (Azimpoor, Kian) (Entered: 03/02/2026) |
| 03/03/2026 | | MINUTE ORDER. Upon consideration of plaintiffs' 5 and 6 Motions for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the motions are GRANTED. It is further ORDERED that Patrick Fields and Scott Johnston be, and hereby are, admitted pro hac vice in this case. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 3/3/2026. (lcrjl3) (Entered: 03/03/2026) |
| 03/03/2026 | 10 | Joint STATUS REPORT by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP. (Azimpoor, Kian) (Entered: 03/03/2026) |
| 03/04/2026 | 11 | NOTICE of Appearance by Patrick Fields on behalf of MASSIMILIANO CALI, L.C. (Fields, Patrick) (Entered: 03/04/2026) |
| 03/04/2026 | | MINUTE ORDER. Upon consideration of the parties' 10 Joint Status Report, the Court will adopt the parties' briefing schedule. Accordingly, defendants' opposition to plaintiffs' Motion for a Preliminary Injunction is due March 18, 2026; plaintiffs' reply in support of their Motion for Preliminary Injunction is due March 25, 2026; and amicus curiae briefs, if any, shall be filed by March 13, 2026. The Court will hold a preliminary injunction hearing on April 1, 2026, at 3:30PM in Courtroom 18 (in person). SO ORDERED. Signed by Judge Richard J. Leon on 3/4/2026. (lcrjl3) (Entered: 03/04/2026) |
| 03/05/2026 | | Set/Reset Deadlines: Amicus Curiae Brief due by 3/13/2026. (zljn) (Entered: 03/05/2026) |
| 03/10/2026 | 12 | NOTICE of Appearance by Scott Johnston on behalf of MASSIMILIANO CALI, L.C. (Johnston, Scott) (Entered: 03/10/2026) |
| 03/12/2026 | 13 | Unopposed MOTION for Leave to File Amicus Brief by Nancy Hollander. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order Proposed Order)(Hollander, Nancy) (Entered: 03/12/2026) |
| 03/12/2026 | 14 | Unopposed MOTION for Leave to File Amicus Brief by UNITED NATIONS WATCH. (Attachments: # 1 Exhibit Brief of Amicus Curiae, # 2 Exhibit Declaration of Hillel Neuer in Support of Amicus Curiae Brief, # 3 Exhibit Exhibit A − Statements by Francesca Albanese, # 4 Exhibit Exhibit B − Complaint in Christian Friends of Israeli Communities v. Albanese, # 5 Exhibit Exhibit C − Exhibits to Complaint in Christian Friends of Israeli Communities v. Albanese, # 6 Text of Proposed Order |

| | | |
|---|---|---|
| | | Proposed Order Granting Leave to File Brief of Amicus Curiae)(Astuno, Andrew) (Entered: 03/12/2026) |
| 03/13/2026 | 15 | ERRATA by UNITED NATIONS WATCH re 14 Motion for Leave to File Amicus Brief,,. (Attachments: # 1 Errata Declaration of Hillel Neuer in Support of Brief of Amicus Curiae of United Nations Watch in Opposition to Plaintiffs Motion for Preliminary Injunction)(Astuno, Andrew) (Entered: 03/13/2026) |
| 03/13/2026 | 16 | MOTION for Leave to File Amicus Brief by Susan M Akram, Sandra L Babcock, Asli U Bali, THOMAS BECKER, JAMES CAVALLARO. (Attachments: # 1 Declaration Certification, # 2 Exhibit Amici Brief, # 3 Text of Proposed Order, # 4 Exhibit Application for PHV for LSL, # 5 Declaration of LSL, # 6 Exhibit Certificate of Good Standing, # 7 Text of Proposed Order, # 8 Exhibit Application for PHV for MRN, # 9 Declaration of MRN, # 10 Exhibit Certificate of Good Standing, # 11 Text of Proposed Order)(Renner, Richard) (Entered: 03/13/2026) |
| 03/13/2026 | 17 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence S. Lustberg, Filing fee $ 100, receipt number ADCDC−12297656. Fee Status: Fee Paid. by Susan M Akram, THOMAS BECKER, Sandra L Babcock, Asli U Bali, JAMES CAVALLARO. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Renner, Richard) (Entered: 03/13/2026) |
| 03/13/2026 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Michael R. Noveck, Filing fee $ 100, receipt number ADCDC−12297684. Fee Status: Fee Paid. by Susan M Akram, THOMAS BECKER, Sandra L Babcock, Asli U Bali, JAMES CAVALLARO. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Renner, Richard) (Entered: 03/13/2026) |
| 03/13/2026 | 19 | Unopposed MOTION for Leave to File Amicus Brief by DEMOCRACY FOR THE ARAB WORLD NOW, INC., FOUNDATION FOR MIDDLE EAST PEACE. (Attachments: # 1 Exhibit A − Brief of Amicus Curiae, # 2 Text of Proposed Order)(Ferguson, Laura) (Entered: 03/13/2026) |
| 03/13/2026 | 20 | Unopposed MOTION for Leave to File Amicus Brief*in Support of Defendants* by AMERICAN CENTER FOR LAW AND JUSTICE. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order)(Moelker, Nathan) (Entered: 03/13/2026) |
| 03/13/2026 | 21 | MOTION for Leave to File Amicus Brief by JVP ACTION. (Attachments: # 1 Declaration of Stefanie Fox, Executive Director of JVP Action iso Brief of Amicus Curiae JVP Action, # 2 Text of Proposed Order Granting JVP Action to Participate as Amicus Curiae)(Ahmad, Bina) (Entered: 03/13/2026) |
| 03/16/2026 | | NOTICE OF ERROR regarding 17 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence S. Lustberg, Filing fee $ 100, receipt number ADCDC−12297656. Fee Status: Fee Paid., 18 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Michael R. Noveck, Filing fee $ 100, receipt number ADCDC−12297684. Fee Status: Fee Paid.. The following error(s) need correction: Other− Please refile DECLARATION with the DECLARATION LINK. https://www.dcd.uscourts.gov/sites/dcd/files/PHV%20Declaration%20and%20Attorney%20Certification−20230412.pdf. (mg) (Entered: 03/16/2026) |
| 03/16/2026 | 22 | ENTERED IN ERROR.....Supplemental MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence S. Lustberg, Fee Status: No Fee Paid. by Susan M Akram, THOMAS BECKER, Sandra L Babcock, Asli U Bali, JAMES CAVALLARO. |

| | | |
|---|---|---|
| | | (Renner, Richard) Modified on 3/17/2026 (mg). (Entered: 03/16/2026) |
| 03/16/2026 | 23 | ENTERED IN ERROR.....Supplemental MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Michael R. Noveck, Fee Status: No Fee Paid. by Susan M Akram, THOMAS BECKER, Sandra L Babcock, Asli U Bali, JAMES CAVALLARO. (Renner, Richard) Modified on 3/17/2026 (mg). (Entered: 03/16/2026) |
| 03/17/2026 | | NOTICE OF ERROR regarding 22 Supplemental MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence S. Lustberg, Fee Status: No Fee Paid., 23 Supplemental MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Michael R. Noveck, Fee Status: No Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 03/17/2026) |
| 03/17/2026 | 24 | DECLARATION *of Lawrence S. Lustberg* by SUSAN M. AKRAM, SANDRA L. BABCOCK, ASLI U. BALI, THOMAS BECKER, JAMES CAVALLARO re 17 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Lawrence S. Lustberg, Filing fee $ 100, receipt number ADCDC−12297656. Fee Status: Fee Paid.. (Attachments: # 1 Supplement Notice as to fee paid)(Renner, Richard) (Entered: 03/17/2026) |
| 03/17/2026 | 25 | DECLARATION *of Michael R. Noveck* by SUSAN M. AKRAM, SANDRA L. BABCOCK, ASLI U. BALI, THOMAS BECKER, JAMES CAVALLARO re 18 MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Michael R. Noveck, Filing fee $ 100, receipt number ADCDC−12297684. Fee Status: Fee Paid.. (Attachments: # 1 Supplement Notice as to fee paid)(Renner, Richard) (Entered: 03/17/2026) |
| 03/18/2026 | | MINUTE ORDER. Upon consideration of the 13 Unopposed Motion of Lawyers for the Rule of Law, Inc. for Leave to File an Amicus Brief, it is hereby ORDERED that the motion is GRANTED and that the amicus brief attached as Exhibit 1 to the 13 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 3/18/2026. (lcrjl3) (Entered: 03/18/2026) |
| 03/18/2026 | | MINUTE ORDER. Upon consideration of the 14 Unopposed Motion by United Nations Watch for Leave to File Amicus Brief, it is hereby ORDERED that the motion is GRANTED and that the amicus brief attached as Exhibit 1 to the 14 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 3/18/2026. (lcrjl3) (Entered: 03/18/2026) |
| 03/18/2026 | | MINUTE ORDER. Upon consideration of the 16 Unopposed Motion by International Human Rights Law Scholars and Teachers for Leave to File Amicus Brief, it is hereby ORDERED that the motion is GRANTED and that the amici brief attached as Exhibit 2 to the 16 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 3/18/2026. (lcrjl3) (Entered: 03/18/2026) |
| 03/18/2026 | | MINUTE ORDER. Upon consideration of the 19 Unopposed Motion by Democracy for the Arab World Now, Inc. and Foundation for Middle East Peace for Leave to File Amicus Brief, it is hereby ORDERED that the motion is GRANTED and that the amicus brief attached as Exhibit 1 to the 19 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 3/18/2026. (lcrjl3) (Entered: 03/18/2026) |

10

| 03/18/2026 |    | MINUTE ORDER. Upon consideration of the 20 Unopposed Motion by American Center for Law and Justice for Leave to File Amicus Brief, it is hereby ORDERED that the motion is GRANTED and that the amicus brief attached as Exhibit 1 to the 20 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 3/18/2026. (lcrjl3) (Entered: 03/18/2026) |
|------------|----|---|
| 03/18/2026 |    | MINUTE ORDER. Upon consideration of the 21 Unopposed Motion by JVP Action for Leave to File Amicus Brief, it is hereby ORDERED that the motion is GRANTED and that the amicus brief labeled as Exhibit 1 to the 21 Motion is deemed filed with this Court upon entry of this Minute Order. SO ORDERED. Signed by Judge Richard J. Leon on 3/18/2026. (lcrjl3) (Entered: 03/18/2026) |
| 03/18/2026 | 26 | Memorandum in opposition to re 3 MOTION for Preliminary Injunction filed by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP. (Attachments: # 1 Declaration)(Azimpoor, Kian) (Entered: 03/18/2026) |
| 03/19/2026 | 27 | NOTICE of Proposed Order by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP re 26 Memorandum in Opposition (Attachments: # 1 Text of Proposed Order)(Azimpoor, Kian) (Entered: 03/19/2026) |
| 03/19/2026 |    | MINUTE ORDER. Upon consideration of the 17 and 18 Motions for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the motions are GRANTED. It is further ORDERED that Lawrence Lustberg and Michael Noveck be, and hereby are, admitted pro hac vice. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 3/19/2026. (lcrjl3) (Entered: 03/19/2026) |
| 03/20/2026 | 28 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PAMELA BONDI served on 3/5/2026; MARCO RUBIO served on 3/9/2026 (Attachments: # 1 Exhibit A)(Paradis, Michel) (Entered: 03/20/2026) |
| 03/20/2026 | 29 | NOTICE of Appearance by Lawrence S. Lustberg on behalf of SUSAN M. AKRAM, SANDRA L. BABCOCK, ASLI U. BALI, THOMAS BECKER, JAMES CAVALLARO (Lustberg, Lawrence) (Entered: 03/20/2026) |
| 03/24/2026 | 30 | MOTION for Leave to File − *Submit Supplemental Declaration* by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Exhibit − Exhibit 1 − Declaration of Massimiliano Cali, # 2 Text of Proposed Order − Exhibit 2 − Proposed Order − Motion for Leave to Submit Declaration)(Paradis, Michel) (Entered: 03/24/2026) |
| 03/25/2026 | 31 | NOTICE of Appearance by Michael R. Noveck on behalf of SUSAN M. AKRAM, SANDRA L. BABCOCK, ASLI U. BALI, THOMAS BECKER, JAMES CAVALLARO (Noveck, Michael) (Entered: 03/25/2026) |
| 03/25/2026 | 32 | REPLY to opposition to motion re 3 Motion for Preliminary Injunction filed by MASSIMILIANO CALI, L.C.. (Paradis, Michel) (Entered: 03/25/2026) |
| 03/30/2026 |    | MINUTE ORDER. Upon consideration of plaintiffs' 30 Motion for Leave to File Supplemental Declaration, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the Declaration attached as Exhibit 1 is deemed filed with this Court upon entry of this order. SO ORDERED. Signed by Judge Richard J. Leon on 3/30/2026. (lcrjl3) (Entered: 03/30/2026) |
| 03/31/2026 | 33 | NOTICE of Appearance by Eric Hamilton on behalf of All Defendants (Hamilton, Eric) (Entered: 03/31/2026) |

| 03/31/2026 | | MINUTE ORDER. The preliminary injunction hearing currently set for April 1, 2026, at 3:30PM is hereby VACATED and CONTINUED to April 1, 2026, at 4:00PM in Courtroom 18 − In Person before Judge Richard J. Leon (same day, just 30 minutes later). The Court will allow only one attorney per side to argue. SO ORDERED. Signed by Judge Richard J. Leon on 3/31/2026. (lcrjl3) (Entered: 03/31/2026) |
|---|---|---|
| 04/01/2026 | 34 | NOTICE of Appearance by Stephen McCoy Elliott on behalf of All Defendants (Elliott, Stephen) (Entered: 04/01/2026) |
| 04/01/2026 | | Minute Entry for Preliminary Injunction Hearing held before Judge Richard J. Leon on April 1, 2026. Oral arguments submitted on the Plaintiffs' Motion 3 for Preliminary Injunction. The Court takes the matter under advisement. Forthcoming order. Court Reporter: Lorraine Herman. (zljn) (Entered: 04/01/2026) |
| 04/03/2026 | 35 | TRANSCRIPT OF PRELIMINARY INJUNCTION PROCEEDINGS before Judge Richard J. Leon, held on April 1, 2026. Page Numbers: 1−34. Date of Issuance: April 3, 2026. Court Reporter: Lorraine Herman. Email: lorraine_herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 4/24/2026. Redacted Transcript Deadline set for 5/4/2026. Release of Transcript Restriction set for 7/2/2026.(Herman, Lorraine) (Entered: 04/03/2026) |
| 04/08/2026 | 36 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. SCOTT BESSENT served on 3/10/2026; DONALD J. TRUMP served on 3/6/2026 (Attachments: # 1 Exhibit A)(Paradis, Michel) (Entered: 04/08/2026) |
| 04/08/2026 | 37 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 3/2/2026. Answer due for ALL FEDERAL DEFENDANTS by 5/1/2026. (See docket entry 36 to view document)(mg) (Entered: 04/10/2026) |
| 04/20/2026 | 38 | MOTION Supplement Record with New Information in Support of Plaintiffs' Motion for a Preliminary Injunction by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Exhibit 1 (Affidavit of B. Brooks−Rubin with Exs. A−D), # 2 Text of Proposed Order)(Paradis, Michel) (Entered: 04/20/2026) |
| 04/22/2026 | | MINUTE ORDER. Regarding plaintiff's 38 MOTION to Supplement Record, it is hereby ORDERED that defendants shall file their response, if any, no later than Monday, April 27, 2026. SO ORDERED. Signed by Judge Richard J. Leon on 4/22/2026. (lcrjl1) (Entered: 04/22/2026) |

| 04/27/2026 | 39 | Unopposed MOTION for Extension of Time re 1 to Respond to the Complaint by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Azimpoor, Kian). Added MOTION to Vacate on 4/27/2026 (mg). Modified on 4/27/2026 to add link (mg). (Entered: 04/27/2026) |
|---|---|---|
| 04/27/2026 | 40 | Unopposed MOTION to Amend/Correct *Dkt. 38−1* by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Declaration Brad Brooks−Rubin, # 2 Exhibit Corrected Exhibit, # 3 Text of Proposed Order)(Paradis, Michel) (Entered: 04/27/2026) |
| 04/27/2026 | 41 | Memorandum in opposition to re 38 MOTION Supplement Record with New Information in Support of Plaintiffs' Motion for a Preliminary Injunction filed by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Azimpoor, Kian) (Entered: 04/27/2026) |
| 04/28/2026 | | MINUTE ORDER. Upon consideration of defendants' 39 Unopposed Motion to Vacate Rule 12 Deadline and for an Extension of Time to Respond to the Complaint, it is hereby ORDERED that the motion is GRANTED. The current deadline for defendants to respond to the complaint is VACATED. Defendants shall respond to the complaint no later than 30 days after the Court issues its ruling on plaintiffs' motion for preliminary injunction. SO ORDERED. Signed by Judge Richard J. Leon on 4/28/2026. (lcrjl1) (Entered: 04/28/2026) |
| 04/28/2026 | 42 | Consent MOTION to Supplement the Record by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Paradis, Michel) (Entered: 04/28/2026) |
| 04/29/2026 | 43 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MASSIMILIANO CALI, L.C. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A (Sealed Decl. of B. Brooks−Rubin, Apr. 27, 2026)−initially filed at Dkt. 40−1, # 2 Exhibit A (Sealed Decl. of B. Brooks−Rubin, Apr. 20, 2026)−initially filed at Dkt. 40−2, # 3 Text of Proposed Order)(Paradis, Michel) (Entered: 04/29/2026) |
| 04/29/2026 | 44 | REDACTED DOCUMENT− Ex. A (Decl. of B. Brooks−Rubin Apr. 27, 2026)− initially filed at Dkt. 40−1 to 43 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MASSIMILIANO CALI, L.C. (This document is SEALED and only available to authorized persons.) by MASSIMILIANO CALI, L.C.. (Attachments: # 1 B (Decl. of B. Brooks−Rubin Apr. 20, 2026)− initially filed at Dkt. 40−2)(Paradis, Michel) (Entered: 04/29/2026) |
| 05/01/2026 | 45 | MOTION for Leave to File *Reply in Support of Plaintiffs' Motion to Supplement The Record with New Information* by MASSIMILIANO CALI, L.C.. (Attachments: # 1 Proposed Reply in Support of Plaintiffs' Motion to Supplement The Record with New Information, # 2 Text of Proposed Order)(Paradis, Michel) (Entered: 05/01/2026) |
| 05/06/2026 | 46 | ENTERED IN ERROR.....TRANSCRIPT OF PRELIMINARY INJUNCTION PROCEEDINGS before Judge Richard J. Leon, held on April 1, 2026. Page Numbers: 1−34. Date of Issuance: May 6, 2026. Court Reporter: Lorraine Herman. Email: lorraine_herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, |

|  |  |  |
|---|---|---|
|  |  | (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/27/2026. Redacted Transcript Deadline set for 6/6/2026. Release of Transcript Restriction set for 8/4/2026.(Herman, Lorraine) Modified on 5/6/2026; duplicate (znmw). (Entered: 05/06/2026) |
| 05/08/2026 | 47 | Unopposed MOTION for Leave to File *Sur−Reply in Opposition to Plaintiffs Motion to Supplement the Record with New Information in Support of Plaintiffs Motion for a Preliminary Injunction* by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Azimpoor, Kian) (Entered: 05/08/2026) |
| 05/13/2026 | 48 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 5/13/2026. (lcrjl1) (Entered: 05/13/2026) |
| 05/13/2026 | 49 | ORDER. Consistent with the attached, plaintiff's 3 Motion for Preliminary Injunction is GRANTED. See Order for details. Signed by Judge Richard J. Leon on 5/13/2026. (lcrjl1) (Entered: 05/13/2026) |
| 05/15/2026 | 50 | ENTERED IN ERROR.....NOTICE *OF APPEAL TO DC CIRCUIT* by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP re 49 Order on Motion for Preliminary Injunction, Order on Motion for Miscellaneous Relief, Order on Motion to Amend/Correct,, Order on Sealed Motion for Leave to File Document Under Seal, Order on Motion for Leave to File, 48 Memorandum & Opinion (Azimpoor, Kian) Modified on 5/20/2026 (mg). (Entered: 05/15/2026) |
| 05/15/2026 | 51 | MOTION to Stay *Pending Appeal or, in the Alternative, for a Temporary Administrative Stay* by SCOTT BESSENT, PAMELA BONDI, MARCO RUBIO, DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Azimpoor, Kian) (Entered: 05/15/2026) |
| 05/19/2026 | 52 | RESPONSE re 51 MOTION to Stay *Pending Appeal or, in the Alternative, for a Temporary Administrative Stay* filed by MASSIMILIANO CALI. (Attachments: # 1 Text of Proposed Order)(Paradis, Michel) (Entered: 05/19/2026) |
| 05/20/2026 |  | NOTICE OF ERROR regarding 50 Notice (Other),. The following error(s) need correction: Incorrect event. Please refile as NOTICE OF Appeal to the DC Circuit, under Appeal Documents event. (mg) (Entered: 05/20/2026) |
| 05/20/2026 | 53 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 49 Order on Motion for Preliminary Injunction, Order on Motion for Miscellaneous Relief, Order on Motion to Amend/Correct,, Order on Sealed Motion for Leave to File Document Under Seal, Order on Motion for Leave to File, 48 Memorandum & Opinion by MARCO RUBIO, DONALD J. TRUMP, PAMELA BONDI, SCOTT BESSENT. Fee Status: No Fee Paid. (Azimpoor, Kian) (Entered: 05/20/2026) |

14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

L.C., a minor child, by and through her father
MASSIMILIANO CALI,

MASSIMILIANO CALI,

*Plaintiffs,*

v.

DONALD J. TRUMP, *in his official capacity as
President of the United States, et al.*

*Defendants.*

Civil Action No. 1:26-cv-00688-RJL

## NOTICE OF APPEAL

Please take notice that Defendants hereby appeal to the United States Court of Appeals for

the District of Columbia Circuit from this Court's May 13, 2026 Memorandum Opinion (ECF No.

48) and Order (ECF No. 49) granting Plaintiffs' motion for a preliminary injunction.


Dated:  May 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ELIZABETH HEDGES
Counsel to the Assistant Attorney General

STEPHEN M. ELLIOTT
Assistant Branch Director

15

/s/ Kian K. Azimpoor
KIAN K. AZIMPOOR (DC Bar No. 90024613)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel:  (202) 598-0860;  Fax:  (202) 616-8470
Email:  kian.k.azimpoor@usdoj.gov

*Counsel for Defendants*

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

L.C., *a minor child, by and through
her father* MASSIMILIANO CALI,       )
                                      )
MASSIMILIANO CALI,                    )
                                      )
       Plaintiffs,       )    Civil Case No. 26-688 (RJL)
                                      )
   v.                              )
                                      )
DONALD J. TRUMP, *et al.*,            )
                                      )
       Defendants.       )
                                      )

**ORDER**
May __13__, 2026 [Dkt. #3, 38, 40, 42, 43, 45, 47]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Dkt. #3] is **GRANTED**; and it is further

**ORDERED** that Defendants Attorney General Pamela Bondi, Secretary of the Treasury Scott Bessent, and Secretary of State Marco Rubio (collectively, "Defendants"), along with their officers, agents, servants, employees, attorneys, and all other persons in active concert with Defendants, are enjoined from implementing or enforcing the designation of Francesca Albanese as a designated foreign national under Section 1(a)(ii)(A) of Executive Order 14203; and it is further

1

**ORDERED** that Defendants, along with their officers, agents, servants, employees, attorneys, and all other persons in active concert with Defendants, are enjoined from taking any action against Plaintiffs L.C. or Massimiliano Cali, including the imposition of any civil or criminal penalties, pursuant to the designation of Francesca Albanese as a designated foreign national under Section 1(a)(ii)(A) of Executive Order 14203; and it is further

**ORDERED** that the parties shall file a status report apprising the Court of the status of Defendants' compliance with this Order and proposing next steps no later than thirty (30) days after the issuance of this Order; and it is further

**ORDERED** that the security requirement is hereby waived, *see* Fed. R. Civ. P. 65(c); and it is further

**ORDERED** that Plaintiffs' [Dkt. #38, 42] Motions to Supplement the Record are **GRANTED**; and it is further

**ORDERED** that Plaintiffs' [Dkt. #40] Unopposed Motion to Correct is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' [Dkt. #43] Sealed Motion for Leave to File Document Under Seal is **GRANTED**; and it is further

**ORDERED** that [Dkt. #40-1] Exhibit A to Plaintiffs' Unopposed Motion to Correct and [Dkt. #40-2] Exhibit B to Plaintiffs' Unopposed Motion to Correct shall be **SEALED**; and it is further

**ORDERED** that Plaintiffs' [Dkt. #45] Motion for Leave to File Reply is **GRANTED**; and it is further

2

**ORDERED** that Defendants' [Dkt. #47] Unopposed Motion for Leave to File Sur-Reply is **GRANTED.**

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| L.C., *a minor child, by and through her father* MASSIMILIANO CALI,<br><br>MASSIMILIANO CALI,<br><br>        Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>        Defendants. | Civil Case No. 26-688 (RJL) |

**MEMORANDUM OPINION**
May _13_, 2026 [Dkt. #3]

Plaintiffs L.C., a minor, and her father Massimiliano Cali bring suit against various federal defendants challenging the designation and sanctioning of Francesca Albanese, their mother and wife, respectively. Albanese is a scholar and author who has published widely on human rights issues, including on the Israeli-Palestinian conflict. Plaintiffs allege that defendants are sanctioning Albanese because of her speech—namely, Albanese's non-binding recommendation to the International Criminal Court to pursue war-crimes prosecutions against Israeli and American nationals. Plaintiffs allege that they are harmed by defendants' sanctioning of Albanese and seek a preliminary injunction. For the following reasons, I will **GRANT** plaintiffs' motion.

1

**BACKGROUND**

**I.      Factual Background**

**A.      *Francesca Albanese and the Cali Family***

Plaintiffs L.C. and Massimiliano Cali are the daughter and husband, respectively, of Francesca Albanese, an Italian citizen.  Compl. [Dkt. #1] ¶ 1.  Albanese is an "international legal scholar and recognized expert in areas of human rights and the Middle East."  *Id.* ¶ 17.  Albanese's husband, Cali, is an economist with the World Bank and an Italian citizen. *Id.*  Albanese's minor daughter, L.C., is a United States citizen.  *Id.* ¶ 11.

The family lived in the United States from 2012 to 2015 while Cali was stationed at the World Bank headquarters in Washington, D.C.  *Id.* ¶ 18.  During that time, they purchased a home, opened a U.S. bank account, and took out a mortgage.  *Id.*  L.C. was born in Washington, D.C. in 2013.  *Id.* ¶ 18.  The family left the United States in 2015 when the World Bank relocated Cali outside the United States, but they kept their D.C. residence and routinely travel to the United States.  *Id.* ¶ 20.  The family currently resides in Tunisia. *Id.*

As a public intellectual and scholar, Albanese has written and spoken widely on controversial human rights issues, including most notably the Israeli-Palestinian conflict. Mem. in Supp. of Mot. for Prelim. Inj. ("P.I. Br.") [Dkt. #3-1] at 6–9.  In April 2022, the United Nations Human Rights Council ("UNHRC") appointed Albanese as the "Special Rapporteur on the situation of human rights in the Palestinian territory occupied since 1967."  *Id.* at 7; Compl. ¶ 21.  In this position, Albanese reports to the UNHRC and the United Nations General Assembly on human rights issues in the Palestinian territory and

2

engages in independent scholarship and advocacy. *Id.* at 7. She has spoken at universities in the United States and Europe and has appeared on a wide range of media outlets. Compl. ¶ 23. Since 2022, she has also published two books on the Israeli-Palestinian conflict. *Id.* ¶ 24. According to U.S. Secretary of State Marco Rubio, Albanese has "spewed unabashed antisemitism, expressed support for terrorism, and open contempt for the United States, Israel, and the West." Compl., Ex. B. ("Rubio Statement") [Dkt. #1-10] at 1.

In her role as a Special Rapporteur, Albanese has authored recommendations to the International Criminal Court ("ICC") regarding possible war crimes charges stemming from the Israeli-Palestinian conflict. The ICC is an international institution located in the Netherlands that provides its member states a forum for the prosecution of international crimes, including genocide, crimes against humanity, and war crimes. Compl. ¶¶ 26, 29. The ICC was created by the 1998 Rome Statute. *Id.* ¶ 26. The United States signed the Rome Statute, but the Senate never ratified it. *Id.* ¶ 28.

Albanese has *no* formal role with the ICC. *Id.* ¶ 31. However, the United Nations and the ICC have agreed to "cooperate closely . . . and consult each other on matters of mutual interest." Opp'n to Mot. for Prelim. Inj. ("Opp'n") [Dkt. #26] at 10 (quoting United Nations Office of Legal Affairs, "Negotiated Relationship Agreement between the International Criminal Court and the United Nations," https://perma.cc/23M4-DY4J). In July 2025, Albanese authored a report in which she "urge[d] the [ICC] and national judiciaries to investigate and prosecute corporate executives and/or corporate entities" for their role in alleged war crimes in the Middle East. *Id.* at 9 (quoting F. Albanese, *From economy of occupation to economy of genocide*, ¶ 96, U.N. Doc. A/HRC/59/23 (July 2,

3

2025), https://docs.un.org/en/A/HRC/59/23).   The report specifically mentions U.S. companies—including Lockheed Martin, Caterpillar Inc., and Chevron—and accuses them of furthering "apartheid" and "settler-colonial destruction." *Id.* at 9–10 (quoting Albanese, *From economy of occupation,* ¶¶ 32, 36, 43–45).

**B.    *Executive Order 14203***

On February 6, 2025, President Donald J. Trump issued Executive Order No. 14203 ("E.O. 14203" or "the Order"), entitled "Imposing Sanctions on the International Criminal Court." 90 Fed. Reg. 9369 (Feb. 6, 2025); *see also* Compl., Ex. A [Dkt. #1-9]. Promulgated pursuant to the President's authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.,* E.O. 14203 declares that "any effort by the ICC to investigate, arrest, detain, or prosecute" nationals of the United States or other major allies "constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States." E.O. 14203 at 1.  The Order specifically references the ICC's actions against Israeli government officials over alleged war crimes in the Middle East. *Id.*

Pursuant to the President's authority under IEEPA, E.O. 14203 authorizes extensive sanctions against foreign persons who have "directly engaged in" or assisted the ICC in these efforts. *Id.* § 1(a)(ii)(A). Absent an applicable exception, E.O. 14203 prohibits U.S. persons from providing "funds, goods, or services by, to, or for the benefit of" any foreign person designated under the Order. *Id.* §§ 3(a), (b). Individuals who engage in transactions with designated persons are subject to civil fines and criminal penalties under IEEPA. *See* 50 U.S.C. § 1705; 31 C.F.R. § 510.701.

## C.    *The Designation of Albanese*

On July 9, 2025, Secretary of State Rubio designated Albanese, pursuant to E.O. 14203, as a foreign national who has "directly engaged with the [ICC] in efforts to investigate, arrest, detain, or prosecute nationals of the United States or Israel, without the consent of those two countries." Rubio Statement. Secretary Rubio cited Albanese's service as a U.N. Special Rapporteur, including her "recommend[ation] that the ICC, without a legitimate basis, issue arrest warrants targeting Israeli Prime Minister Benjamin Netanyahu and former Defense Minister Yoav Gallant," as well as her "writing threatening letters to dozens of entities worldwide, including major American companies" and "recommending the ICC pursue investigations and prosecutions of these companies and their executives." *Id.* at 1–2.

The U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") subsequently implemented the designation by adding Albanese to OFAC's Specially Designated National ("SDN") List. Opp'n at 11 (citing U.S. Dep't of Treasury, Off. Of Foreign Assets Control, "International Criminal Court-related Designation," https://perma.cc/QEP3-VWB8). As a result of her designation, U.S. persons may not, at risk of civil and criminal liability, engage in any transaction of funds, goods, or services with or for the benefit of Albanese. E.O. 14203 § 3. The Order also bars "immigrant [or] nonimmigrant entry into the United States" by Albanese and her "immediate family members." *Id.* § 4.

On August 22, 2025, OFAC issued two licenses limiting the impact of Albanese's designation. The first permits certain transactions "ordinarily incident and necessary to"

5

the upkeep or sale of the family's residence in the United States, while restricting all proceeds of any sale to an "interest-bearing blocked account." Compl., Ex. C ("Property License") [Dkt. #1-11] § I–II. The second permits transactions "ordinarily incident and necessary to . . . Albanese's role as the parent and legal guardian of [L.C.]" Compl., Ex. D ("Parental License") [Dkt. #1-12] § I; *see also* Decl. of M. Rasmussen [Dkt. #26-1] at ¶¶ 5–9 (discussing scope of Parental License).

### D.    *The Aftermath of Albanese's Designation*

As a result of her designation, Albanese has suffered severe ramifications. She is barred from entering the United States, which prevents her from traveling to the headquarters of the United Nations. Compl. ¶ 69. Albanese has also been "fully unbanked and cannot make or receive payments through the financial system." *Id.* ¶ 68. Soon after her designation, Albanese was removed from her joint U.S. bank account with her husband, Decl. of M. Cali [Dkt. #30-1] ¶ 7, and she has subsequently been denied bank accounts at several European banks, *Id.* ¶ 12. Moreover, due to Albanese's designation, her husband's employer-sponsored health insurer has "refused to pay [her] health expenses." *Id.* ¶ 23. Several U.S. universities severed their longstanding ties with Albanese, including Georgetown and Columbia. Compl. ¶ 70.

Plaintiffs allege they too have suffered harms because of Albanese's designation. As an "immediate family member[]" of an SDN, Cali is barred from entering the United States. E.O. 14203 § IV. He therefore cannot travel to the headquarters of his employer, the World Bank. Compl. ¶ 69. Indeed, due to his travel restrictions and "ongoing external pressure resulting from the sanctions," Cali Decl. ¶ 18, Cali has been suspended from

existing positions at the World Bank and faces "severely constrained" options for future positions within the organization, *id.* Cali also cannot travel to Washington, D.C. to supervise the upkeep or sale of his and his wife's property. Compl. ¶ 71. Prior to the issuance of the Property License, OFAC blocked an attempted sale of the residence. Cali Decl. ¶ 10. While Cali may now try to sell the residence, the proceeds of any sale will remain frozen. Property License § II.

As to L.C., she is effectively barred from returning to her native country given the travel restrictions on her parents. Compl. ¶ 69. As a U.S. citizen, L.C. also faces per se civil or criminal liability under the Order for "any contribution or provision of funds, goods, or services by, to, or for the benefit of" her mother, *Id.* ¶ 72; E.O. 14203 § 3(a), subject to the exclusions listed in the Parental License. Plaintiffs allege these restrictions "impose an enormous chilling effect on L.C.'s mental well-being and constitutional rights." Compl. ¶ 73.

Following her designation in July 2025, Albanese and Cali sought assistance from the United Nations in challenging defendants' actions. *See* Cali Decl. ¶¶ 5–6, 9. Ultimately, however, the United Nations chose not to challenge Albanese's designation through administrative or judicial process. *Id.* ¶ 25. Albanese also requested authorization to litigate the designation in her personal capacity. *Id.* ¶¶ 22, 25. The United Nations responded on January 14, 2026 that it was "not in a position to authorize [Albanese] to file suit in a United States court contesting the imposition of those sanctions." Compl., Ex. E ("U.N. Letter") [Dkt. #1-13]. One week later, plaintiffs authorized their attorneys to prepare this lawsuit. Cali Decl. ¶ 30.

7

## II.    This Lawsuit

On February 25, 2026, L.C., proceeding by and through her father, Cali, and Cali himself (collectively, "plaintiffs") filed this lawsuit against President Trump, Attorney General Pamela Bondi, Secretary of the Treasury Scott Bessent, and Secretary of State Rubio (collectively, "defendants"). Compl. ¶¶ 11–16. Plaintiffs raise claims under the First Amendment, IEEPA, the Fourth Amendment, the Fifth Amendment, and the Administrative Procedure Act. *Id.* ¶¶ 75–101. The same day, plaintiffs filed a motion for a preliminary injunction. *See* Mot. for Prelim. Inj. [Dkt. #3]. Plaintiffs moved for preliminary injunctive relief, however, on their First Amendment and IEEPA claims alone. P.I. Br. at 3–4.

Following entry of a briefing schedule, *see* Minute Order (Mar. 4, 2026), defendants filed their opposition to plaintiffs' motion on March 18, 2026, *see* Opp'n. Plaintiffs filed a motion for leave to file a supplemental declaration on March 24, 2026, *see* Mot. for Leave to File [Dkt. #30], which I granted, *see* Minute Order (Mar. 30, 2026). Plaintiffs filed their reply in support of their motion on March 25, 2026. *See* Reply in Supp. of Mot. for Prelim. Inj. ("Reply") [Dkt. #32]. I held a hearing on April 1, 2026. *See* Tr. of Prelim. Inj. H'rg ("H'rg Tr.") [Dkt. #35]. Plaintiffs' motion for preliminary injunction is now ripe for decision.[1]

---

[1] Following the hearing, plaintiffs sought to supplement the record with additional declarations, *see* Mot. to Suppl. Record [Dkt. #38]; Unopposed Mot. to Amend/Correct [Dkt. #40]; Consent Mot. to Suppl. Record [Dkt. #42], and later sought to file those supplemental declarations under seal, *see* Sealed Mot. for Leave to File Under Seal [Dkt. #43]. Defendants opposed the motion to supplement the record, *see* Mem. in Opp'n to Mot. to Suppl. Record [Dkt. #41], but consent to the sealing of the record, *see* Sealed Mot. for Leave to File Under Seal [Dkt. #43]. Both parties have sought leave to file replies and sur-replies in support

8

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

## ANALYSIS

### I. Standing

Before addressing the merits of the preliminary injunction, I must first decide whether plaintiffs have standing to sue—a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiffs assert they have Article III standing and prudential standing to assert the First Amendment rights of Albanese. Defendants, not surprisingly, challenge plaintiffs' standing on both grounds. I will discuss each in turn.

#### A.   *Article III Standing*

To establish standing to sue, plaintiffs must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [defendants], and (3) that is

---

of their respective positions. *See* Mot. for Leave to File Reply in Supp. of Mot. to Suppl. Record [Dkt. #45]; Unopposed Mot. for Leave to File Sur-Reply in Opp'n to Mot. to Suppl. Record [Dkt. #47]. These filings chiefly relate to plaintiffs' efforts to clarify whether OFAC will permit plaintiffs to seek litigation funding from U.S. persons. Plaintiffs argue that OFAC's determination supports their theory of Article III injury and irreparable harm. Ultimately, I need not reach this theory of harm to find in plaintiffs' favor at this stage of the litigation. But in the interest of justice and for good cause shown, I will grant all motions to supplement and to file additional pleadings in support of or opposition to the same. I will also grant the motion to seal.

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs must establish each element "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, on a motion for a preliminary injunction, plaintiffs must show a "substantial likelihood of standing." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

As to injury in fact, both plaintiffs—Cali and L.C.—suffer "concrete and particularized" harms as a result of Albanese's designation under E.O. 14203. *Lujan*, 504 U.S. at 560. Common injuries sufficient for standing include "monetary injury," "an injury to one's property," and "an injury to one's constitutional rights." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Plaintiffs here, in one way or another, have demonstrated all three kinds of harm. How so?

For starters, Cali has suffered concrete harms to his property interest in his condominium in Washington, D.C. While OFAC has issued a narrow license permitting the upkeep and sale of the property, *see* Property License, the license allows only "U.S. persons" to care for the property—not Cali himself, *id.* § I. And the License requires all proceeds from any sale to be placed in an "interest-bearing blocked account," *id.* § II, barring Cali from realizing his property's economic value. These "impairment[s]" of Cali's "property rights" are tangible legal injuries. *Children's Health Def. v. FCC*, 25 F.4th 1045, 1049 (D.C. Cir. 2022).

L.C., an American citizen, has suffered "injury to [her] constitutional rights." *All. for Hippocratic Med.*, 602 U.S. at 381. Since Cali and Albanese are barred from entering

10

the United States, *see* E.O. 14203 § 4, L.C., a minor, is effectively unable to travel to the United States. Reply at 15–16 (citing "strict, near universal regulatory restrictions on international travel by an unaccompanied minor"). As an American citizen, L.C. also faces potential criminal liability for any transactions with her mother. *See* E.O. 14203 § 3. The designation of her mother thus burdens L.C.'s "freedom of travel" as an American citizen, *Aptheker v. Sec'y of State*, 378 U.S. 500, 517 (1964), and burdens L.C.'s constitutional liberty interest in her familial relations, *see Franz v. United States*, 707 F.2d 582, 595 (D.C. Cir. 1983) (recognizing that "the freedom of a parent and child to maintain, cultivate, and mold their ongoing relationship" is "[a]mong the most important of the liberties" protected by the Constitution).

Undaunted, defendants point to the two limited licenses—the Property License and the Parental License—to argue that Cali and L.C. remain unharmed! Opp'n at 18–21. But these licenses apply only to "U.S. persons," so they do not excuse Cali from the ramifications of Albanese's designation. And there is no dispute that the Property License acts to freeze all proceeds from the sale of Cali's property in Washington, DC by placing those proceeds in a "blocked account." Property License § II; Cali Decl. ¶ 13. Even apart from the burdening of Cali's property interests, that bare "economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017).

As for the Parental License, it is limited to transactions "ordinarily incident *and necessary to* [Albanese's] role" as L.C.'s parent and guardian. Parental License § I (emphasis added). Defendants say the License helps "ensure that sanctions do not impede

11

Albanese in her role as parent," Rasmussen Decl. ¶ 9, and OFAC claims it would *"generally view"* incidental activities like Christmas gift exchanges or family travel as "authorized" by the License, *id* (emphasis added). Please! The existence of such a licensing scheme in the first place infringes the "constitutionally protected" "relationship between parent and child." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (quoting *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978)). Further, the Parental License on its face prohibits transactions that are incident *but unnecessary to* the parent-child relationship, and it is not clear from the record before me how plaintiffs would distinguish between necessary and unnecessary transactions in the context of their family relationships. To say the least, such "'subtle . . . interference' with protected liberties" is a cognizable injury no less than a "heavy-handed frontal attack[]." *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. ---, 2026 WL 1153029, at *11 (2026) (quoting *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960)).[2]

These concrete harms are all "traceable" to defendants' challenged action—the designation of Albanese under E.O. 14203—and "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Defendants do not dispute these elements of

---

[2] Defendants point out, correctly, that plaintiffs have not sought clarification from OFAC as to the scope of the Parental License. *See* Opp'n at 19. But as defendants' own submissions demonstrate, obtaining guidance from OFAC regarding specific transactions is no simple process. *See* Rasmussen Decl. ¶¶ 4, 7. Plaintiffs' filings regarding their counsel's repeated requests for clarification from OFAC regarding litigation funding prove the point. *See* Decl. of B. Brooks-Rubin [Dkt. #38-1] at ¶¶ 5–10 (describing weeks-long process of seeking clarification from OFAC regarding scope of general license before preparing application for specific license). L.C. should not have to retain a lawyer to determine whether she can buy her mother a gift.

12

the standing analysis. Indeed, a court order enjoining the designation of Albanese would remedy plaintiffs' harms. Accordingly, both plaintiffs have Article III standing to sue.

### B.    *Third Party Standing*

Though they have Article III standing, plaintiffs ground their First Amendment claims in alleged violations of Albanese's rights, not their own. A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004) (quoting *Warth*, 422 U.S. at 499). Under some circumstances, however, third parties may have "standing to assert the rights of another." *Id.* at 129–30.

Courts weigh three prudential considerations in assessing third-party standing: "1) the plaintiff 'must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute'; 2) the plaintiff 'must have a close relation to the third party'; and 3) 'there must exist some hindrance to the third party's ability to protect his or her own interests.'" *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 34 (D.D.C. 2020) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Plaintiffs satisfy each requirement. First, plaintiffs themselves have suffered constitutional and economic injuries of their own, as described above. Second, there is a "close relation" and "identity of interests" between plaintiffs and Albanese such that plaintiffs can "act as . . . effective advocate[s]" for Albanese's rights. *Lepelletier v. FDIC*, 164 F.3d 37, 44 (D.C. Cir. 1999). There can be no dispute as to the closeness of the relationship; Albanese is Cali's husband and L.C.'s mother. Indeed, defendants

13

acknowledge that "much of [plaintiffs'] requested relief would run directly to Albanese's benefit." Opp'n at 16.

Finally, Albanese is hindered in her ability to challenge her designation. To satisfy this requirement, plaintiffs "need only show that 'there is some impediment to [Albanese]'s ability to assert [her] own legal rights.'" *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 362 (D.D.C. 2020) (quoting *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 31 (D.D.C. 2010)). Already a "lenient standard," *id.*, the hindrance threshold is even more "relaxed" in First Amendment cases, *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 146 (D.D.C. 2025). Its purpose is merely "to ensure 'that the rightholder did not simply decline to bring the claim on his own behalf, but could not in fact do so.'" *Al-Aulaqi*, 727 F. Supp. 2d at 32 (quoting *Miller v. Albright*, 523 U.S. 420, 450 (1998) (O'Connor, J., concurring)).

Given her position as a U.N. Special Rapporteur and because she is subject to institutional immunity, Albanese must obtain explicit permission from the U.N. before bringing lawsuits in her own name. *See* Reply at 23; U.N. Letter at 2 (noting that the Secretary-General has the sole "right" to "waive the immunity" of U.N. experts like Albanese). Albanese sought permission from the U.N. to challenge her designation but was denied. Compl. ¶ 74; U.N. Letter at 2. Courts have found the hindrance requirement satisfied by far less concrete barriers, including a "financial disincentive to litigate" and "a party's desire to protect her personal privacy." *Al-Aulaqi*, 727 F. Supp. 2d at 31 (citing cases). In First Amendment cases especially, a "serious risk" to "career[s] and professional li[ves]" and a mere "danger of chilled speech" have been enough. *Turner*, 502 F. Supp. 3d

14

at 362 (citations omitted). This however is not, as defendants claim, a case where the party "could have brought suit on [her] own behalf, but . . . simply declined to do so." *Al-Aulaqi*, 727 F. Supp. 2d at 32. Instead, plaintiffs have demonstrated that Albanese's ability to assert her rights in court was sufficiently impeded.

Accordingly, plaintiffs have standing in their own right and standing to assert the First Amendment rights of Albanese. I now turn to plaintiffs' arguments on the merits.

## II.    Likelihood of Success on the Merits

To obtain a preliminary injunction, plaintiffs must demonstrate a strong likelihood of success on the merits. Plaintiffs raise three grounds in their motion: (1) E.O. 14203 violates the First Amendment on its face and as applied to Albanese; (2) E.O. 14203 violates the Berman Amendments to IEEPA; and (3) E.O. 14203 violates IEEPA's statutory limits on the President's sanctions authority. P.I. Br. at 3–4. Because I find that plaintiffs are likely to succeed on their First Amendment claim, I need not reach their statutory claims.

### A.    *Applicability of the First Amendment*

I must first consider whether the First Amendment protects the speech of Albanese, a non-citizen, while speaking outside the United States. Foreign nationals outside the territory of the United States do not, as a general matter, "possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020). Things change, however, when a foreign national "come[s] within the territory of the United States and develop[s] substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). Whether a foreign national has sufficient

15

connections to the United States to garner protection under our Constitution is, in the final analysis, a "fact-dependent, case-by-case assessment." *Olenga v. Gacki*, 507 F. Supp. 3d 260, 274 (D.D.C. 2020).

Though it has never articulated any "definitive" criteria, our Circuit has often "looked to the presence of property as the benchmark for satisfying the 'substantial connections' test." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 25–26 (D.D.C. 2012). For example, our Circuit found sufficient connections when a foreign organization had an "overt presence" in a D.C. office building and a "small bank account" in the United States. *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 201 (D.C. Cir. 2001) ("*NCOR*") (citation omitted). Courts have also found substantial connections where a noncitizen held U.S. visas, maintained a residence in the United States, owned companies in the United States, and owned property in the United States that was blocked as a result of the challenged designation. *López Bello v. Smith*, 651 F. Supp. 3d 20, 38 (D.D.C. 2022), *aff'd sub nom.*, *Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024). On the other hand, our Circuit found insufficient connections where two foreign organizations did not "possess[] any controlling interest in property located within the United States." *32 Cnty. Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002).

Here, Albanese has "substantial connections" to the United States. *Verdugo-Urquidez*, 494 U.S. at 271. From 2012 to 2015, Albanese lived in the United States. Compl. ¶¶ 18–20. During that time, she bought—and she still owns—property in the United States. *Id.*; *Kadi*, 42 F. Supp. 3d at 26 ("presence of property" is the "benchmark"). As a property owner, Albanese has a mortgage with a U.S. financial institution and pays

16

U.S. property taxes. Compl. ¶ 18; Reply at 7. In addition, Albanese has a U.S. citizen daughter, was affiliated with several U.S. universities before the imposition of sanctions, and frequently travels to the United States for professional obligations and speaking engagements—including professional engagements that were cancelled as a result of Albanese's designation. Reply at 7–8. These connections are substantial enough to grant Albanese "at least *some*" protections under our Constitution. *Kadi*, 42 F. Supp. 3d at 26.

Defendants' arguments to the contrary are, to say the least, unpersuasive! Defendants point out that Albanese is not physically present in the United States and that none of Albanese's "relevant expression took place in the United States." Opp'n at 26. Defendants chiefly rely on *NCOR*, which relied, in part, on a foreign organization's "overt presence" in a D.C. office building to conclude that the organization had substantial connections. 251 F.3d at 201–02. But the organization's physical presence was not the only factor considered by the *NCOR* court. *Id.*[3] And, as other cases teach, physical presence within the United States is *not* a necessary condition for constitutional protections. *See Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489, 491 (1931) (foreign corporation with property in the United States was protected by Fifth Amendment); *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 994–97 (9th Cir. 2012) (foreign national

---

[3] The reasoning in *NCOR* was also based on "classified information" that confirmed the organization's substantial connections to the United States. 251 F.3d at 202. Moreover, *NCOR* did not purport to announce strict requirements for what counts as "substantial." *See id.* ("In any event, we are not undertaking to determine, as a general matter, how 'substantial' an alien's connections with this country must be to merit the protections of the Due Process Clause or any other part of the Constitution. Rather, we have reviewed the entire record including the classified information and determine that NCRI can rightly lay claim to having come within the territory of the United States and developed substantial connections with this country.").

17

with substantial connections could bring First Amendment challenge to No-Fly List designation despite not being physically present in United States). Rather, our Circuit has looked to a foreign national's "presence *or property*" in the United States to determine the scope of that foreign national's rights. *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1241 (D.C. Cir. 2003) (emphasis added) (citing *NCOR*, 251 F.3d at 201–02); *see also 32 Cnty. Sovereignty Comm.*, 292 F.3d at 799.

Here, while the speech at issue occurred outside the United States, defendants have responded by taking action against Albanese's extensive connections *to* the United States—including Albanese's property within the United States and her ability to maintain professional and personal connections within the United States—*because of* her speech. Accordingly, Albanese (or plaintiffs standing in her shoes) may claim the protection of the First Amendment to challenge defendants' actions. *Kadi*, 42 F. Supp. 3d at 26.

**B.   *First Amendment Analysis***

The First Amendment forbids the Government from "abridging the freedom of speech." U.S. Const. amend. I. In evaluating whether a government regulation of speech violates the First Amendment, courts distinguish between regulations that are "content based" and those that are "content neutral." *Reed v. Town of Gilbert*, 576 U.S. 155, 165–66 (2015). A regulation of speech is "content based" if it targets speech "based on its communicative content" or "because of the topic discussed or the idea or message expressed." *Id.* at 163. Content-neutral regulations, by contrast, "serve[] purposes unrelated to the content of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Where a regulation targets speech based on its content, the regulation is

18

"presumptively unconstitutional" and will survive First Amendment scrutiny only if it is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

Plaintiffs challenge E.O. 14203 as unconstitutional on its face and as applied to Albanese. I will first consider whether the order is "valid as applied" to avoid addressing "an overbreadth issue unnecessarily." *Renne v. Geary*, 501 U.S. 312, 324 (1991) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989)); *see also Sandvig v. Sessions*, 315 F. Supp. 3d 1, 28 (D.D.C. 2018) ("[F]acial challenges are disfavored when a case 'may be disposed of on narrower grounds.'" (quoting *Texas v. Johnson*, 491 U.S. 397, 403 n.3 (1989)).

To begin, Secretary Rubio's designation of Albanese under E.O. 14203 plainly regulates Albanese's speech. Secretary Rubio's statement asserts that Albanese "directly engaged with the [ICC] in efforts to investigate, arrest, detain, or prosecute nationals of the United States or Israel" by "*recommending* that the ICC . . . issue arrest warrants targeting" Israeli officials and by "*recommending* the ICC pursue investigation and prosecutions" of American companies. Rubio Statement at 1–2 (emphasis added). Albanese does not work for the ICC, nor does she have any ability to direct action by the ICC. Compl. ¶ 31; Hr'g Tr. at 19:7–20. As such, the only way Albanese has engaged in any ICC effort to "investigate, arrest, detain, or prosecute a protected person," E.O. 14203 § I(a)(ii)(A), is by offering her non-binding *opinion* and *recommendation*—in other words, by speaking!

Not only do defendants seek to regulate Albanese's speech, they want to regulate her speech because of the "idea or message expressed," *Reed*, 576 U.S. at 163, as well as because of "its function or purpose," *TikTok Inc. v. Garland*, 604 U.S. 56, 71 (2025). As a

19

Southern District of New York colleague held in enjoining the predecessor to E.O. 14203, the Order restricts speech "if, and only if, it has the function or purpose of benefitting [the ICC]. This is content-based restriction." *Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 211 (S.D.N.Y. 2021).

Defendants argue that E.O. 14203 as applied to Albanese is a regulation of conduct, not speech. Opp'n at 32; Hr'g Tr. at 25:19–20 (Albanese designated as SDN "because of her conduct"). E.O. 14203 penalizes anyone who "directly engaged" in ICC efforts to "investigate, arrest, detain, or prosecute" protected persons. E.O. 14203 § I(a)(ii)(A). Even if E.O. 14203 "*generally* functions as a regulation of conduct," it "was directed at [Albanese] because of what [her] speech communicated." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 27–28 (2010) (citing *Cohen v. California*, 403 U.S. 15, 18–19 (1971)). Put differently, the "conduct triggering" the application of E.O. 14203 to Albanese was her nonbinding recommendation that the ICC take action against U.S. and Israeli nationals— nothing more than "communicating a message" with which defendants disagree. *Id.* at 28.

Nor can it be argued that E.O. 14203 as applied to Albanese has a mere "incidental effect on speech." Opp'n at 32. Albanese's designation does not "serve[] purposes unrelated to the content of expression." *Ward*, 491 U.S. at 791. Rather, the "principle justification" for her designation, *id.* at 791, is to "respond" to the expression of opinions that defendants think "extreme," Rubio Statement at 2. If Albanese instead *opposed* ICC action against U.S. and Israeli nationals, she would not have been designated under E.O. 14203. Thus, the effect of Albanese's designation is to "punish" and thereby "suppress disfavored expression." *NRA v. Vullo*, 602 U.S. 175, 188 (2024).

20

Because E.O. 14203 as applied to Albanese is a content-based regulation of speech, it is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. To be narrowly tailored, defendants must "demonstrate that [their actions] do[] not 'unnecessarily circumscrib[e] protected expression.'" *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002) (third alteration in original) (quoting *Brown v. Hartlage*, 456 U.S. 45, 54 (1982)).

Defendants' asserted compelling interest is "upholding the sovereignty of the United States" and safeguarding the foreign policy interests of the United States and its allies by protecting them from "investigation, arrest, detention, and prosecution by the ICC." Opp'n at 29. Of course, "concerns of national security and foreign relations do not warrant abdication of the judicial role." *Holder*, 561 U.S. at 34. But even assuming the validity of defendants' stated interests, the sanctioning of Albanese under E.O. 14203 is hardly "narrowly tailored" to further those ends. *Reed*, 576 U.S. at 163.

By sanctioning Albanese under E.O. 14203, defendants are punishing Albanese for merely *recommending* that the ICC prosecute certain individuals—a non-binding opinion that does not compel any action on the part of the ICC. As the Supreme Court put it when distinguishing speech from non-speech, "independently advocating for a cause is different from providing a service." *Holder*, 561 U.S. at 24. Defendants' own statements demonstrate that independent advocacy is at the heart of the sanctions against Albanese! Because Albanese's designation under E.O. 14203 "unnecessarily circumscribe[es]" her

21

"protected expression," it violates the First Amendment. *White*, 536 U.S. at 775 (quoting *Brown*, 456 U.S. at 54).

## III.    Irreparable Harm

Plaintiffs must also demonstrate irreparable harm.    To warrant a preliminary injunction, the risk of injury must be "both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up).    Though sufficient to convey standing, "economic loss does not, in and of itself, constitute irreparable harm" because it may be remedied by compensatory relief at a later date. *Id.* (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).    But the "violation of a constitutional right," whether ongoing or prospective, "constitutes irreparable injury for purposes of seeking equitable relief." *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (cleaned up) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).

As a result of Defendants' actions, Plaintiffs are and will be irreparably harmed in the absence of an injunction.    To begin, defendants' actions burden L.C.'s "freedom of travel" as an American citizen, a constitutionally protected liberty interest. *Aptheker*, 378 U.S. at 517. E.O. 14203 bars "immigrant and nonimmigrant entry" to the United States by "immediate family members" of SDNs, E.O. 14203 § 4, including a "spouse or child" of an SDN, *id.* § 8(f). That restriction plainly applies to Cali, who is not a U.S. citizen. And while not expressly forbidden by E.O. 14203, L.C. is effectively barred from entering her country of citizenship and native birth because of the strict travel restrictions on her father

22

and mother. Such restrictions irreparably burden her constitutional rights as an American! *Aptheker*, 378 U.S. at 517.

Further, the designation impairs the Cali family's property rights in their D.C. home, as described above. *See supra* part I.A. While purely monetary harms are compensable by damages and typically not irreparable, "unauthorized interference with a real property interest constitutes irreparable harm as a matter of law" since real property is a "unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." *Watson v. Perdue*, 410 F. Supp. 3d 122, 131 (D.D.C. 2019) (quoting *Shvartser v. Lekser*, 308 F. Supp. 3d 260, 267 (D.D.C. 2018)). As such, defendants' interference with Cali's rights in real property also inflicts irreparable harm.

Further still, defendants' actions burden L.C.'s constitutionally protected interests in familial relations. *See supra* part I.A; *Franz*, 707 F.2d at 595. Cali and L.C. face potential felony liability for interacting with or transacting business with Albanese, in violation of the "constitutional protection" afforded the "creation and sustenance of a family," including "the raising and education of children." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984); *see also Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 499 (D.D.C. 2018) (discussing "fundamental liberty interest in family integrity"). The existence of a limited license does not cure that harm. The Parental License applies only to "U.S. Persons," not Albanese herself, and covers only transactions "ordinarily incident and necessary" to Albanese's role as "parent and legal guardian" of L.C, *see* Parental License § I, not all interactions between Albanese and her daughter. The

23

burdening of L.C.'s constitutional right to "maintain, cultivate, and mold [her] ongoing relationship" with her mother is irreparable harm. *Franz*, 707 F.2d at 595.

Defendants argue that plaintiffs cannot satisfy this element because they have not submitted any evidence to support their alleged harms. *See* Opp'n at 13, 23. While the movant for a preliminary injunction bears the burden of establishing each element by a "clear showing," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004), the Court may accept as true any "factual averments" that defendants "do not contest," *Pantoja v. Martinez*, 567 F. Supp. 3d 76, 78 n.1 (D.D.C. 2021). And as to plaintiffs' allegations about how E.O. 14203 and Albanese's designation affects them—by burdening L.C.'s entry into the United States, freezing the family's property assets, and chilling their familial relations—defendants do not contest a thing. Defendants offer differing interpretations of how OFAC may "generally view" certain hypothetical scenarios, *see* Rasmussen Decl. ¶ 9, but they offer no response to plaintiffs' specific factual allegations of harm, *see* Cali Decl. ¶¶ 10, 13 18 (alleging harms due to property and travel restrictions). I will not deny plaintiffs' motion on the sole basis that they did not submit an affidavit in support of their asserted harms.[4]

Defendants further argue that plaintiffs' delay in seeking a preliminary injunction undermines their claims of irreparable harm. Opp'n at 13–15. To be sure, a plaintiff's lengthy delay in seeking court intervention may "undercut[] its asserted harms." *Fla. EB5*

---

[4] Defendants also point out that the asserted First Amendment injuries are harms to Albanese, not to plaintiffs. *See* Opp'n at 22. Because, as described above, plaintiffs show other irreparable harms to themselves, I need not consider the alleged First Amendment harms to Albanese to grant plaintiffs' motion.

24

*Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 13 (D.D.C. 2020). But a delay in filing, standing alone, "is not a proper basis" for denying a preliminary injunction. *Gordon*, 632 F.3d at 724. Here, any delay is minimal and excusable! Defendants designated Albanese in July 2025, *see* Rubio Statement, and plaintiffs immediately sought assistance from the United Nations in challenging the designation, *see* Cali Decl. ¶¶ 4–6. In January 2026, the United Nations advised that it would not permit Albanese to file suit individually. U.N. Letter. Plaintiffs filed this lawsuit roughly a month later. Cali Decl. ¶ 33; Compl. (filed on February 25, 2026). Since plaintiffs were in "diligent pursuit" of other avenues of redress, *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014), their modest delay in turning to the federal courts does not undercut their asserted harms.[5]

## IV.  The Balance of the Equities and the Public Interest

The balance of the equities and the public interest cut in plaintiffs' favor. Where the Government is the opposing party, these factors merge and the court "weigh[s] the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined." *Doe v. Mattis*, 928 F.3d 1, 23 (D.C. Cir. 2019).

On one side of the ledger, plaintiffs face real, tangible harms as a result of Albanese's designation. *See supra* part III. On the other hand, defendants' sanctioning of Albanese for her speech is overbroad. The stated purpose of E.O. 14207 is to meet the "extraordinary

---

[5] Defendants argue that any injunction should not enjoin Albanese's designation in general but only as applied to plaintiffs. *See* Opp'n at 44–45. I disagree. It is unclear how defendants could limit the impact of Albanese's designation as to plaintiffs while otherwise enforcing the designation. More fundamentally, Albanese's designation as an SDN is the source of plaintiffs' harm. So long as she is designated as such, the familial relationship between Albanese, Cali, and L.C. will be burdened. Thus, to provide "complete relief to the plaintiffs before the court," *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025), I must enjoin Albanese's designation in full.

threat" posed by the ICC's efforts to "investigate, arrest, detain, or prosecute protected persons" by sanctioning foreign nationals who have "directly engaged" in those efforts. E.O. 14207 § 1(a)(ii)(A). But Albanese has done nothing more than *speak*! It is undisputed that her recommendations have no binding effect on the ICC's actions—they are nothing more than her opinion. Enjoining such a "vastly overinclusive" sanctions policy does defendants no harm. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 804 (2011).

Finally, protecting the freedom of speech is "always" in the public interest. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). That is so even when an individual's views are "hurtful," "caustic," or "even outrageous," *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (citations omitted), as defendants clearly believe Albanese's speech to be, *see* Rubio Statement at 1–2 (labeling Albanese's speech as "biased and malicious," "antisemiti[c]," and "extreme"). Indeed, the "proudest boast" of our First Amendment is that it protects the freedom to express even "the thought that we hate." *Matal v. Tam*, 582 U.S. 218, 246 (2017) (quoting *United States v. Schwimmer*, 279 U.S. 644, 655 (1929) (Holmes, J., dissenting)). Enough said.

<u>CONCLUSION</u>

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for a Preliminary Injunction [Dkt. #3] is **GRANTED**. An accompanying order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge

26