# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| L.C., a minor child, by and through her father MASSIMILIANO CALI, | ) ) ) | CIVIL ACTION |
| MASSIMILIANO CALI, | ) | |
| *Plaintiffs*, | ) ) | No. 1:26-cv-00688-RJL |
| *v.* | ) ) | |
| DONALD J. TRUMP, *et al.*, | ) | DATE: June 30, 2026 |
| *Defendants*. | ) ) ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISSOLVE THE COURT'S MAY 13, 2026 PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTS AND PROCEDURAL HISTORY ............................................................................... 2

ARGUMENT ............................................................................................................................. 5

I.   The Preliminary Injunction Should Be Dissolved Because It Can No Longer Provide Meaningful Interim Relief. ........................................................................................... 6

II.  Changed Conditions and the Public Interest Further Support Dissolution. ........................... 8

III. The Court Should Dissolve the Injunction Through an Indicative Ruling Under Rule 62.1.14

CONCLUSION ....................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*32 Cnty. Sovereignty Comm. v. Dep't of State*,
  292 F.3d 797 (D.C. Cir. 2002) ........................................................................................12

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  No. 25-00400 (AHA), 2025 WL 2457684 (D.D.C. Aug. 25, 2025) ...................................15

*Alton & S. Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*,
  463 F.2d 872 (D.C. Cir. 1972) ...........................................................................................6

*Am. Council of the Blind v. Mnuchin*,
  878 F.3d 360 (D.C. Cir. 2017) ...........................................................................................9

*Berrigan v. Sigler*,
  499 F.2d 514 (D.C. Cir. 1974) .........................................................................................11

*City of Chicago v. Sessions*,
  321 F. Supp. 3d 855 (N.D. Ill. 2018) ...............................................................................14

*Coastal Corp. v. Texas E. Corp.*,
  869 F.2d 817 (5th Cir. 1989) ...........................................................................................14

*Doe 2 v. Shanahan*,
  917 F.3d 694 (D.C. Cir. 2019) ...........................................................................................9

*Griggs v. Provident Consumer Disc. Co.*,
  459 U.S. 56 (1982) ...........................................................................................................14

*Han v. Lynch*,
  223 F. Supp. 3d 95 (D.D.C. 2016) ......................................................................................7

*Horne v. Flores*,
  557 U.S. 433 (2009) .......................................................................................................8, 9

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) .......................................................................................12

*Petties ex rel. Martin v. District of Columbia*,
  662 F.3d 564 (D.C. Cir. 2011) ......................................................................................9, 10

*Mullin v. Doe*,
  No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026) (Alito, J. joined by
  Roberts, Thomas, Kavanaugh, JJ.) ....................................................................................11

*Nat'l Council of Resistance of Iran v. Dep't of State*,
  251 F.3d 192 (D.C. Cir. 2001) ................................................................................12

*People's Mojahedin Org. of Iran v. Dep't of State*,
  182 F.3d 17 (D.C. Cir. 1999) ..................................................................................12

*People's Mojahedin Org. of Iran v. Dep't of State*,
  327 F.3d 1238 (D.C. Cir. 2003) ..............................................................................12

*Pinson v. U.S. Dep't of Just.*,
  177 F. Supp. 3d 474 (D.D.C. 2016) ..........................................................................7

*Sherley v. Sebelius*,
  689 F.3d 776 (D.C. Cir. 2012) ................................................................................11

*Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*,
  364 U.S. 642 (1961).................................................................................................8

*\*Tincher v. Noem*,
  No. 0:25-cv-04669, 2026 WL 622745 (D. Minn. Mar. 5, 2026) .................................1, 6, 8, 14

*\*Tincher v. Noem*,
  No. 0:25-cv-04669, 2026 WL 948946 (D. Minn. Apr. 8, 2026) .....................................1, 8, 14

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981)..................................................................................................9

**Rules**

Fed. R. Civ. P. 62.1(a) ...............................................................................2, 5, 6, 8, 14

Federal Rule of Appellate Procedure 12.1 ..................................................................2, 5, 6, 15

**Other Authorities**

Administrative Office of the U.S. Courts Caseload Statistics Data Tables, U.S.
  Courts of Appeals  - Federal Court Management Statistics-Profiles,
  https://www.uscourts.gov/sites/default/files/document/fcms_na_appprofile033
  1.2026.pdf ................................................................................................................7

*Hillel Neuer Exposes U.N. Bias at JNS International Policy Conference*, UN
  Watch (June 24, 2026), https://unwatch.org/hillel-neuer-exposes-u-n-bias-at-
  jns-international-policy-conference/ ...........................................................................3

*U.S. Sanctions UN's Francesca Albanese in Unprecedented Move After UN
  Watch Campaign*, UN Watch (July 9, 2025), https://unwatch.org/u-s-
  sanctions-uns-francesca-albanese-in-unprecedented-move-after-un-watch-
  campaign/ .................................................................................................................3

iii

**INTRODUCTION**

Plaintiffs respectfully move this Court to dissolve its May 13, 2026 preliminary injunction. Plaintiffs sought interim relief because the designation of their wife and mother under IEEPA imposed concrete, particularized economic, familial, and constitutional harms that were irreparable, getting worse by the day, and impaired their ability even to pursue this litigation. This Court granted that relief by finding, *inter alia*, that Plaintiffs were likely to succeed on the merits of their argument that the designation of Francesca Albanese violated the First Amendment. Defendants sought and obtained an emergency stay of that preliminary injunction, principally on the ground that the circuit precedent this Court applied in finding a likelihood of success should be revisited.

The emergency stay has fundamentally altered the posture of this case. For all practical purposes, the stay is indistinguishable from Defendants prevailing on their interlocutory appeal. The designation is once again in force, and the interim protection the injunction was meant to supply has been suspended. Meanwhile, this case will likely reach final judgment on its ordinary docketing schedule well before full merits briefing, argument, and a final opinion could issue in the Court of Appeals.

A preliminary injunction exists to protect a party pending a decision on the merits. Where final judgment precedes appellate resolution of whether interim relief was warranted, the injunction cannot perform that function. Maintaining it, and litigating an interlocutory appeal over it, serves no one while saddling Plaintiffs with the cost and uncertainty of dual-track litigation over provisional relief they can no longer obtain.

In the interests of justice and judicial efficiency, Plaintiffs move to dissolve the preliminary injunction. Because Defendants' appeal of that injunction remains pending, the appropriate procedural course, which the district court followed on materially identical facts in *Tincher v.*

*Noem*, No. 0:25-cv-04669 (D. Minn. Mar. 5 & Apr. 8, 2026), is for this Court to issue an indicative ruling under Federal Rule of Civil Procedure 62.1. To the extent this Court concludes it retains authority to act directly notwithstanding the pending appeal, it should dissolve the injunction now.

## FACTS AND PROCEDURAL HISTORY

Francesca Albanese ("Francesca") is an Italian citizen, legal scholar, and United Nations Special Rapporteur for Palestine. Mem. Op., (Dkt. 48) at 2. Plaintiff Massimiliano Cali ("Max") is an Italian citizen and an economist with the World Bank. *Id*. Plaintiff L.C. is their minor daughter and a United States citizen. *Id*.

In July 2025, Defendants designated Francesca under Executive Order 14203, bringing the full power of the United States sanctions machinery to bear on her family. *Id*. at 4. Defendants acknowledge that Francesca's political speech is the sole reason for the designation. *See* Pls. Reply in Supp. of Mot. for a Prelim. Inj. (Dkt. 32) at 8-9 (Describing how "Defendants' opposition [to the motion for preliminary injunction] uses no less than eleven synonyms for 'speech' . . . without ever identifying any non-speech conduct to justify Francesca's designation."); Mot. for Stay, D.C. Cir. No. 26-5172 (Doc. No. 2174442, 5/1/2026) at 9 (Defendants citing amicus brief co-signed by Francesca and two reports by Francesca as basis for sanctions).

On February 25, 2026, Plaintiffs sued and moved this Court for a preliminary injunction to prohibit enforcement of the designation because of the ongoing concrete harms to their family life, their personal finances, and their family home in this District. Compl. (Dkt. 1); Mot. and Mem. in Supp. of Pls' Mot. for a Prelim. Inj. (Dkt. 3). On May 13, 2026, this Court granted that interim relief because Plaintiffs were likely to succeed in showing that "Albanese's designation under E.O. 14203 . . . violates the First Amendment." Mem. Op. (Dkt. 48) at 21-22.

Though she is an Italian citizen, the law of this Circuit has held for three decades that foreign citizens are entitled to constitutional protection "when a foreign national 'come[s] within

2

the territory of the United States and develop[s] substantial connections with this country.' . . . Whether a foreign national has sufficient connections to the United States to garner protection under our Constitution is, in the final analysis, a 'fact-dependent, case-by-case assessment.'" Mem. Op. (Dkt. 48) at 15–16 (citations omitted). This Court therefore found that Plaintiffs were likely to succeed because, since first residing in this country nearly a decade-and-a-half ago, Francesca has maintained continuing connections that are substantial and extensive, including ownership of a home in this District. *Id.* at 16–18.

In addition to a likelihood of success, this Court found irreparable harm to the family's assets, including their home, a travel ban, and the invasion of the relationship between 12-year-old L.C., a U.S. citizen, and her mother. *Id.* at 6–7. Francesca's ideological opponents have even used the sanctions to intimidate and taunt the family. One of the very amici in this Court, a Swiss organization that claims responsibility for persuading Defendants to sanction Francesca,[1] has publicly celebrated these harms[2] and has threatened U.S. booksellers with legal action if they sell Francesca's book. Mem. in Supp. of Pls' Mot. for a Prelim. Inj. (Dkt. 3-1) at 33–34.

In its preliminary injunction ruling, this Court did not reach Plaintiffs' alternative arguments for interim relief based on the Berman Amendments and the scope of the President's sanctions authority under IEEPA. *See* Mem. in Supp. of Pls' Mot. for a Prelim. Inj. (Dkt. 3-1) at 24-32. Nor did the Court reach the other causes of action in the Complaint, including those based

---

[1] *U.S. Sanctions UN's Francesca Albanese in Unprecedented Move After UN Watch Campaign*, UN Watch (July 9, 2025), https://unwatch.org/u-s-sanctions-uns-francesca-albanese-in-unprecedented-move-after-un-watch-campaign/

[2] *Hillel Neuer Exposes U.N. Bias at JNS International Policy Conference*, UN Watch (June 24, 2026), https://unwatch.org/hillel-neuer-exposes-u-n-bias-at-jns-international-policy-conference/ (UN Watch Executive Director exclaiming to a public audience that the "devastating" effects of the sanctions are "Good. Very good.").

on due process, takings, the Fourth Amendment, and the Administrative Procedure Act. Compl. (Dkt.1) ¶¶ 75–103.

On May 15, Defendants filed a notice of appeal and moved this Court for a stay pending appeal. Not. of Appeal and Mot. to Stay (Dkt. 50, 51, 53). This Court promptly denied Defendants' motion, concluding that Defendants had not made the showing required for that extraordinary relief. Order (Dkt. 55). Defendants then moved in the D.C. Circuit for an emergency stay pending appeal. Mot. for Stay, D.C. Cir. No. 26-5172 (Doc. No. 2174442, 5/1/2026). In seeking that stay, Defendants argued for the first time that the D.C. Circuit should revisit the substantial connections test in favor of a rule under which non-citizens are entitled to First Amendment protection only for speech that occurs substantially in the United States. *See*, *e.g.*, *id.* at 3, 16. Defendants also identified, again for the first time on appeal, the three public statements that purportedly animated their designation of Francesca in the first place. *Id*. at 8–9.

Plaintiffs opposed the stay on the grounds, *inter alia*, that Defendants had forfeited their legal argument before this Court and, in any event, that this Court never had the opportunity to develop a factual record on precisely where Francesca's speech occurred. Opp'n to Mot. to Stay, D.C. Cir. No. 26-5172 (Doc. No. 2175533, 5/28/26) at 3, 13. That mattered, Plaintiffs contended, because at least one of the three statements Defendants identified was a U.N. report that Francesca delivered in New York. *Id*. at 3, 16–17.

A motions panel of the D.C. Circuit granted the stay, qualified by the condition that Defendants were enjoined from rescinding the OFAC licenses issued in the summer of 2025. Per Curiam Order, D.C. Cir. No. 26-5172 (Doc. No. 2178858, 6/15/2026). In practical effect, this stay returned the parties to the status they held when this suit commenced. In a concurring statement accompanying the per curiam order, Judge Katsas endorsed Defendants' argument that speech

4

must occur in the United States to enjoy First Amendment protection and faulted Plaintiffs for not coming forward below with facts showing where Francesca's speech occurred. Katsas J., Statement, D.C. Cir. No. 26-5172 (Doc. No. 2178858, 6/15/2026) at 5–9.

To avoid the expense of an interlocutory appeal on limited issues, on an undeveloped record, for provisional relief that is no longer meaningful, Plaintiffs asked Defendants to jointly seek vacatur of the preliminary injunction, dismissal of the appeal, and cooperation in proceeding before this Court to final judgment as expeditiously as possible. Ex. A., 6/22/2026 email between the parties. Defendants asked whether Plaintiffs would promise to forgo any further requests for interim relief from this Court, which Plaintiffs agreed to do. *Id.* Defendants nevertheless indicated that they would oppose any dismissal of their appeal. *Id.*

The D.C. Circuit has set a deadline of July 6, 2026 for the filing of dispositive motions. Order, D.C. Cir. No. 26-5172 (Doc. No. 2174302, 5/20/2026). Plaintiffs anticipate making an appropriate filing to the D.C. Circuit under Federal Rule of Appellate Procedure 12.1 (regarding indicative rulings under Rule 62.1) and seeking dismissal of the appeal as moot.

## ARGUMENT

This Court should dissolve the preliminary injunction for two related reasons, and through a well-established procedural mechanism.

*First*, the injunction can no longer provide meaningful interim relief. The value of provisional sanctions relief lay in its immediacy. When issued, the preliminary injunction afforded Plaintiffs prompt, practical relief that permitted them to resume ordinary aspects of their daily lives while this case is resolved on the merits. Because the emergency stay has suspended that relief, and final judgment is likely to precede any decision on appeal, the injunction can no longer serve its intended function.

*Second*, and relatedly, changed conditions warrant dissolution. A preliminary injunction exists to serve equity and to prevent harm to plaintiffs while a case proceeds to final decision. Leaving this injunction nominally in place affirmatively harms Plaintiffs by heightening the complexities and uncertainties of the sanctions' application, complicating the final resolution of this case, and forcing Plaintiffs to undertake an expensive appellate process to defend provisional relief that is no longer available to them. Dissolution, by contrast, prejudices no one, least of all Defendants, who appealed precisely to be free of the injunction. It also serves the public interest in the prompt and efficient resolution of this dispute.

Because Defendants' appeal remains pending, the appropriate vehicle for this relief is an indicative ruling under Rule 62.1. Notwithstanding unforeseen and unexpected circumstances, Plaintiffs disavow any intention to seek further interim relief from this Court against Francesca's designation pending final judgment.

## I.     The Preliminary Injunction Should Be Dissolved Because It Can No Longer Provide Meaningful Interim Relief.

A preliminary injunction should be dissolved when changed circumstances leave it unable to serve its purpose. A preliminary injunction is, by design, an interim measure. Its sole office is to protect the moving party from irreparable harm during the pendency of the litigation, until the merits can be decided. "If the passage of time or changing circumstances render an injunction moot, it should be dissolved." *Tincher v. Noem*, No. 0:25-cv-04669, 2026 WL 622745, at *2 (D. Minn. Mar. 5, 2026); *see also Alton & S. Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 463 F.2d 872, 877–78 (D.C. Cir. 1972) ("When events during the pendency of the appeal have eliminated any possibility that the court's order may grant meaningful relief affecting the controversy that precipitated the litigation, applicable doctrine permits, and judicial administration generally calls for, dismissal of the appeal.").

6

The only reason Plaintiffs sought interim relief was to spare them the ongoing, irreparable harms the sanctions caused while they challenged those sanctions' lawfulness on the merits. The value of that relief lay in its immediacy. The Circuit's stay has stripped the injunction of that value, and the litigation timeline has overtaken it.

As things presently stand, Defendants' responsive pleading in this Court is due on July 15, 2026, and this Court can quickly move to a final resolution in this case, which is limited and administrative in nature. The case-dispositive facts are straightforward, and under the ordinary timetables for civil litigation, this Court will be able to render a final judgment within a matter of months. The D.C. Circuit, by contrast, has not yet entered a briefing schedule. And while the Circuit may ultimately affirm this Court's decision entering a preliminary injunction, that is unlikely until well into the next calendar year.[3] The interim injunction is likely to be superseded by this Court's final judgment before the Court of Appeals can act. An interim remedy that can have no effect on the case it was intended to bridge no longer provides any meaningful relief.

Courts dissolve preliminary injunctions and treat the question of interim relief as moot when they can no longer afford the movant any meaningful relief. *See, e.g.*, *Pinson v. U.S. Dep't of Just.*, 177 F. Supp. 3d 474, 478 (D.D.C. 2016) (plaintiff's transfer to a different prison "rendered his preliminary injunction motion moot"); *Han v. Lynch*, 223 F. Supp. 3d 95, 104 (D.D.C. 2016) (a matter is moot where "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome").

---

[3] The average median time from the filing of a notice of appeal to disposition in the D.C. Circuit is over 11 months. Administrative Office of the U.S. Courts Caseload Statistics Data Tables, *U.S. Courts of Appeals  - Federal Court Management Statistics-Profiles* at 2, https://www.uscourts.gov/sites/default/files/document/fcms_na_appprofile0331.2026.pdf

The litigation in *Tincher v. Noem* is on point on both the procedure and the equities. There, plaintiffs obtained a preliminary injunction in the District Court for Minnesota, barring certain federal immigration-enforcement activities. *Tincher*, 2026 WL 622745, at \*1 (indicative ruling). The Government appealed and obtained a stay pending appeal. *Id.* Plaintiffs then sought an indicative ruling under Rule 62.1 that the injunction should be dissolved and, over the Government's objection that it should be permitted to press an appeal of interim relief the plaintiffs no longer sought, the district court indicated it would dissolve. *Id.* at \*2–4, The Eighth Circuit, in turn, remanded for that limited purpose, and the court dissolved the injunction. *Tincher v. Noem*, No. 0:25-cv-04669, 2026 WL 948946 (D. Minn. Apr. 8, 2026) (dissolution on remand). To be sure, the injunction in *Tincher* had become moot in the strictest sense because the specific enforcement operation it targeted had ended. But the governing principle is the same. When intervening events deprive a preliminary injunction of its practical effect, it should be dissolved, and the appellate machinery directed at it should not grind on. Here, the stay and the litigation timeline have together deprived the injunction of any interim utility, and the same course should follow.

Plaintiffs' only remaining interest is in resolving the merits of this case promptly. Notwithstanding any unforeseen and unexpected circumstances, they forswear any intent to seek a preliminary injunction of Francesca's designation, including on the grounds this Court did not reach in its May 13 order. The question of whether Plaintiffs are entitled to interim relief is no longer a live one, and the injunction should be dissolved.

## II.    Changed Conditions and the Public Interest Further Support Dissolution.

This Court should also dissolve the preliminary injunction as an exercise of the broad discretion and common sense that inhere in all equitable relief. *See Horne v. Flores*, 557 U.S. 433, 447 (2009). A court "cannot be required to disregard significant changes in law or facts if it is

8

satisfied that what it [was] doing has been turned through changing circumstances into an instrument of wrong." *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961) (cleaned up). That discretion applies with special force to a preliminary injunction, which is by design a provisional, interim measure where the parties "had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 396 (1981).

When this Court granted the preliminary injunction and denied Defendants' motion to stay, it did so because Plaintiffs "would face concrete, irreparable harms every day the injunction is stayed—including harms to their freedom of travel, property rights, and constitutionally protected familial relations." Order (Dkt. 55) at 3. The Circuit's grant of a stay has now made all those concrete, irreparable harms inevitable for the duration of this litigation.

Although it is ordinarily defendants, not plaintiffs, who move to dissolve a preliminary injunction, a district court always retains discretion to dissolve an injunction that has ceased to serve any practical purpose. A party seeking dissolution must make a threshold showing of "a significant change either in factual conditions or in law," *Horne*, 557 U.S. at 447; once that threshold is met, the question is whether the change "renders continued enforcement" of the injunction "detrimental to the public interest," *Petties ex rel. Martin v. District of Columbia*, 662 F.3d 564, 569 (D.C. Cir. 2011) (quoting *Horne*, 557 U.S. at 447); *see Doe 2 v. Shanahan*, 917 F.3d 694 (D.C. Cir. 2019) (applying that standard to dissolve a preliminary injunction); *accord Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017). The emergency stay fundamentally altered the practical posture of this litigation. The continued maintenance of the injunction now disserves both the parties and the public for at least six compelling reasons, any one of which warrants the dissolution of the injunction.

*First*, as explained above, the preliminary injunction can no longer serve any value as interim relief. The Circuit's stay has left Plaintiffs in the same position as if the injunction had simply been denied, except with the added, costly burden of having to litigate their entitlement to now-unavailable relief on appeal while simultaneously litigating this case to final judgment.

*Second*, the public interest favors dissolution in the current posture. The stay has produced a procedural anomaly: the parties are litigating an appeal over a preliminary injunction that no longer provides Plaintiffs meaningful relief, while the same underlying issues remain to be decided in this Court. That duplication serves no one. The public has no interest in parallel litigation that increases costs for both private parties and the government without advancing the final resolution of the dispute, nor in continued appellate litigation over the propriety of interim relief that can yield Plaintiffs no practical benefit. This is precisely the circumstance in which continued enforcement of an injunction becomes "detrimental to the public interest." *Petties*, 662 F.3d at 569.

*Third*, dissolution will cause Defendants no prejudice. Defendants appealed the preliminary injunction because they opposed it from the start. Dissolving the injunction would not impose a new restraint on the Executive; it would remove one. Having litigated vigorously to oppose the entry of the preliminary injunction and to then have that injunction stayed, having now obtained that result, Defendants can identify no cognizable harm if this Court now simplifies the litigation and proceeds expeditiously to final judgment.

*Fourth*, Defendants have no countervailing entitlement to continued appellate review that could weigh against dissolution. A litigant has no right to an advisory appellate opinion on superseded interim relief, and a party relieved of an injunction it opposed has not been deprived of anything to which it is entitled. If dissolution renders Defendants' interlocutory appeal moot,

10

they nevertheless remain free to litigate the merits to final judgment in this Court and to appeal any final judgment entered.

*Fifth*, insisting on dual-track litigation serves no legal purpose, because neither this Court's preliminary order nor the Circuit's disposition of the interlocutory appeal are binding on the merits. In granting interim relief, "a court does not make a final decision on any matter necessary to the ultimate judgment. Instead, the court makes only a predictive—not a final—decision about the outcome of the case." *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840, at \*11 (U.S. June 25, 2026) (Alito, J. joined by Roberts, Thomas, Kavanaugh, JJ.). As the D.C. Circuit has long held, therefore, "the decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute law of the case for the purpose of further proceedings and does not limit or preclude the parties from litigating the merits." *Sherley v. Sebelius*, 689 F.3d 776, 781 (D.C. Cir. 2012) (quoting *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974)). To be sure, a fully considered appellate ruling on a "fully developed factual record," rendered after "full briefing and argument without unusual time constraints," can become law of the case even when issued at the preliminary-injunction stage. *Id.* at 782. But that is the opposite of this case, where the pending appeal rests on a record that, by the motions panel's own account, was not developed on the potentially dispositive factual question of where Francesca's speech occurred. An appeal in that posture will not yield a binding merits determination of this case. It will, at most, produce a preliminary and provisional assessment of the kind that carries no law-of-the-case effect. The far more efficient course is for this Court to decide the merits in the ordinary course on a complete record, in a final judgment that is fully reviewable on appeal.

The wisdom of letting this case proceed to final judgment is given particular force by Defendants' shift in position in the Court of Appeals on what Plaintiffs must show to prevail on

11

their First Amendment claim. When litigating the preliminary injunction before this Court, Defendants argued that, "[a]lthough, in some cases, aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country," Plaintiffs' claim should fail because "a foreign national is not entitled to constitutional protection absent substantial connections to the United States," and "Albanese does not have the requisite 'substantial connections.'" Mem. in Opp'n to Pls. Mot. for a Prelim. Inj. (Dkt. 26) at 26. In the D.C. Circuit, by contrast, Defendants insisted that the substantial connections test should be revisited altogether, contending that this Court "erred in thinking that a foreign national outside the United States may claim protection under the First Amendment if she has substantial-enough connections to the United States," and that the First Amendment protects a non-citizen's speech only when the speech itself substantially occurs inside the United States. Mot. for Stay, D.C. Cir. No. 26-5172 (Doc. No. 2174442, 5/1/2026) at 16.

Plaintiffs disagree that this new position accurately states circuit precedent. This Court, and every other judge in this district, have for decades applied the law of this circuit, which holds that when aliens "have come within the territory of the United States and established 'substantial connections' with this country, . . . or 'accepted some societal obligations,' . . . [they] may be accorded protections under the Constitution." *Jifry v. FAA*, 370 F.3d 1174, 1182–83 (D.C. Cir. 2004) (citation omitted); *see also 32 Cnty. Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002) (looking to whether the alien had "any controlling interest in property located within the United States" or "any other form of presence here"); *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1241 (D.C. Cir. 2003); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 201–02 (D.C. Cir. 2001); *People's Mojahedin Org. of Iran v. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999). Judge Katsas' statement endorsing a contrary view was

based on emergency briefing in which Plaintiffs had no meaningful opportunity to address the merits of this alternative position.

That said, Defendants remain free to press their new argument fully in this Court. Plaintiffs will then have the opportunity, which the compressed posture of an emergency stay motion in the Court of Appeals did not afford, both to respond to that argument on its legal merits and to present this Court with a comprehensive factual record demonstrating that Plaintiffs prevail in any event. Indeed, in explaining his vote to grant the stay, Judge Katsas faulted Plaintiffs for not yet adducing facts establishing that at least some of Francesca's speech occurred inside the United States. Katsas J., Statement, D.C. Cir. No. 26-5172 (Doc. No. 2178858, 6/15/2026) at 5–6. In seeking a final judgment from this Court, Plaintiffs are prepared to develop the record that at least some members of the D.C. Circuit have indicated may be dispositive.

*Sixth*, this Court's order granting the preliminary injunction rested on only one of Plaintiffs' seven independent claims for relief. The Court did not reach the scope of the Berman Amendments, which do not turn on where an individual resides while engaging in expressive activity, or whether Congress's detailed regulation of the United States' relationship with the International Criminal Court forecloses E.O. 14203's resort to IEEPA. Notably, even Judge Katsas acknowledged that the Constitution imposes at least some due process and Fifth Amendment constraints on the imposition of sanctions affecting Francesca's interest in her home in this District. Katsas J., Statement, D.C. Cir. No. 26-5172 (Doc. No. 2178858, 6/15/2026) at 9.

This Court had no occasion to reach those issues, or the other alternative grounds pleaded in the Complaint, because under a straightforward application of circuit precedent, Francesca's substantial connections to the United States were more than sufficient to subject Defendants' effort to punish her protected speech to First Amendment constraints. To the extent that precedent is now

contested, Plaintiffs remain prepared to show that they prevail on the merits under both the First

Amendment and the remaining statutory and constitutional grounds asserted in their Complaint.

Should Plaintiffs obtain a final judgment on any of those alternative grounds, interlocutory

appellate litigation over the scope of the First Amendment will be wasteful and moot.

As a matter of equity, this Court should dissolve the preliminary injunction so that this case

may proceed promptly to the merits.

### III.    The Court Should Dissolve the Injunction Through an Indicative Ruling Under Rule 62.1.

The filing of a notice of appeal generally "divests the district court of its control over those

aspects of the case involved in the appeal." *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820

(5th Cir. 1989) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). While

a district court retains limited authority under Rule 62(d) to "suspend, modify, restore, or grant"

an injunction pending appeal, some courts have read that authority not to extend to outright

dissolution. *See id.* at 819–20; *but see City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill.

2018) (concluding that a district court may dissolve an injunction during the pendency of an

appeal). Rule 62.1 is designed for such a situation:

> If a timely motion is made for relief that the court lacks authority to grant because
> of an appeal that has been docketed and is pending, the court may . . . state either
> that it would grant the motion if the court of appeals remands for that purpose or
> that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a).

In *Tincher*, the district court issued an indicative ruling that it "would grant a motion to

dissolve" the injunction "if the Court of Appeals remand[ed] for that purpose." 2026 WL 622745,

at *2 (indicative ruling). The Eighth Circuit then remanded "for the limited purpose of allowing

the district court to rule on [the] motion to dissolve," *see* Fed. R. App. P. 12.1(b), and the district

court dissolved the injunction, *Tincher*, 2026 WL 948946 (dissolution on remand). The same

14

orderly sequence is warranted here, and would allow this case to proceed to the merits without the parties, the Circuit, and this Court expending further resources on an interlocutory appeal that has lost its practical significance. Recent practice in this District confirms that an indicative ruling is the appropriate avenue for addressing the status of an injunction while an appeal is pending. *See AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-00400 (AHA), 2025 WL 2457684, at *2 n.1 (D.D.C. Aug. 25, 2025)  (observing that "the proper avenue would be for the Court to address that issue through an indicative ruling").

The grounds set out above supply the basis for such a ruling: the D.C. Circuit's partial stay has materially altered the factual and procedural landscape that justified the preliminary injunction; the injunction no longer serves its intended purpose; and its continued maintenance risks unnecessary duplication of appellate and trial-level proceedings while imposing avoidable costs on the parties and the judiciary. Because Plaintiffs forswear any intention to seek to preliminarily enjoin Francesca's designation pending final judgment, an indicative ruling would also assure the Court of Appeals that Defendants' interlocutory appeal is moot and warrants prompt dismissal.

## CONCLUSION

Continued litigation over a preliminary injunction that no longer provides Plaintiffs any meaningful relief duplicates proceedings and needlessly increases the parties' costs. Dissolving the injunction would permit the parties and the Court to proceed directly to the merits. The motion should therefore be GRANTED.

Dated: June 30, 2026
Washington, D.C.

Respectfully submitted,

/s/ Michel Paradis
Michel Paradis (D.C. Bar No. 499690)
Jason Wright (D.C. Bar No. 1029983)

Patrick Fields (Texas Bar No. 24146721)*
Scott Johnston (D.C. Bar No. 90019285)*
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
mparadis@steptoe.com
jwright@steptoe.com
pfields@steptoe.com
scjohnston@steptoe.com
Telephone: (212) 506-3900
Facsimile: (202) 429-3902

Attorneys for Plaintiffs

* admitted *pro hac vice*

16